**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| CEDRICK AND TAMARA FRAZIER,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>SOUTHEAST GEORGIA HEALTH SYSTEM, INC.; COOPERATIVE HEALTHCARE SERVICES, INC. D/B/A SOUTHEAST GEORGIA PHYSICIAN ASSOCIATES – Ear, Nose & Throat; and SHERMAN A. STEVENSON, M.D.<br><br>　　　　Defendants. | CIVIL ACTION FILE NUMBER:<br><br>2:21-cv-00021-LGW-BWC |

**DEFENDANTS' MOTION TO DISMISS**
**OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT**
**AND INCORPORATED BRIEF IN SUPPORT**

Come now, Defendants SOUTHEAST GEORGIA HEALTH SYSTEM, INC. ("SGHS, Inc."), COOPERATIVE HEALTHCARE SERVICES, INC. D/B/A SOUTHEAST GEORGIA PHYSICIAN ASSOCIATES – Ear, Nose & Throat; and SHERMAN A. STEVENSON, M.D., and respectfully move this Court to dismiss this case in its entirety due to lack of complete diversity or , in the alternative, to dismiss certain claims as stated in Plaintiffs' Verified Second Amended Complaint (Doc. 77) for failure to state a claim upon which relief can be granted, respectfully showing this Honorable Court as follows:

**I.    FACTUAL BACKGROUND**

Plaintiffs, by and through their counsel, filed their original Complaint in this Court on February 25, 2021. Doc. 1. In each Answer filed in this matter, each Defendant raised the defense of lack of jurisdiction due to incomplete diversity of the parties. *See* Docs. 13-16, 30-33, 46, 49-

50 and the Answers of the Defendants filed contemporaneously with this motion (anticipated to be Docs. 79, 80, and 81). More specifically, the defense of was preserved as follows:

> Defendant preserves the defense of lack of subject matter jurisdiction, expressly noting that complete diversity may not exist given that, inter alia, on April 20, 2020, Plaintiff Cedrick Leon Frazier submitted an Authorization to Release Medical Records to Southeast Georgia Health System that was accompanied by a digital image of the front of his Georgia Driver's License, which indicates it was issued on 08/02/2016, expires on 07/13/2024 and lists his address as being in Brunswick, Georgia rather than in Florida.

*Id.* As will be detailed further herein, additional discovery in this case has revealed when the original Complaint was filed on February 25, 2021, Plaintiff Cedrick Frazier maintained in multiple ways important to this Courts' analysis that he resided in Brunswick, Georgia rather than in Jacksonville, Florida, including but not limited to: having voted in the then-recent November 2020 Presidential Election (despite maintaining that he had been living in Jacksonville at that time); having only a Georgia Driver's License with a Brunswick address and not obtaining a Florida Driver's License until June 9, 2021, well after the lack of diversity issue was first raised in this litigation; that his vehicle was registered to a Brunswick, Georgia address; that the address listed on his motor vehicle insurance was the same Brunswick, Georgia address. C. Frazier Deposition, Doc. 65-1 at pp. 10-15. Defendants submit the Court should find that, as a result, Mr. Frazier remained a citizen of the State of Georgia at the time of filing the original Complaint in this action, thus destroying diversity jurisdiction and requiring the dismissal of the case in its entirety. If the Court declines to dismiss the case entirely, Defendants respectfully submit that many of the claims in the recently filed Second Amended Complaint fail to state claims upon which relief can be granted and thus should be dismissed individually.

On November 20, 2021, Plaintiffs moved for Leave to File Verified Second Amended Complaint, seeking leave of this Court pursuant to Rule 15(a)(2) of the Federal Rules of Civil

Procedure to file a Second Amended Complaint which, inter alia, seeks to add new claims of administrative negligence, gross negligence, fraud and constructive fraud relating to medical records on 1/21/2020 and 2/6/2020, as well as claims alleging violations of the federal Health Insurance Portability and Accountability Act ("HIPAA") of 1996, and Georgia state law regarding provision of medical records (O.C.G.A. §31-33-2), and punitive damages. Doc. 70 and 70-1. That motion was granted. Doc. 76. The Plaintiffs' (Verified) Second Amended Complaint was Docketed as Doc. 77 and an email regarding same was sent via the Court's ECM system to counsel of record.

## II.   LEGAL STANDARDS OF REVIEW

### A.   Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must ... raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). To establish the plausibility of a claim, the Plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court may dismiss a complaint under Rule 12(b)(6) that fails to assert a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Id.*  While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. To the

3

extent that the Court considers the attached documents as evidence, Defendants request that the Court convert the Motion to Dismiss to one for Summary Judgment.

### B. Motion for Summary Judgment

Summary judgment is proper in any case where there is no genuine issue of material fact.[1] A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.[2] "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted to the moving party."[3]

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the...court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial."[4] A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (i) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (ii) showing there is no evidence to support an essential element of plaintiff's claim.[5]

---

[1] FED. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

[2] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[3] *Id*. at 249-50; *Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

[4] *Matsushita Elec. Ind. Co. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986); *Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 163 (5th Cir. 2006).

[5] *Celotex Corp.*, 477 U.S. at 322-25, 106 S.Ct. at 2552-54; *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc*., 76 F.3d 1245, 1251 (1st Cir. 1996).

### III.     ARGUMENT AND CITATION OF AUTHORITY

### A.     The case should be dismissed in its entirety due to lack of complete diversity at the time of filing.

Diversity of citizenship is determined at the time of filing the complaint. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016). Federal courts possess limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). District courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332.

"A district court may exercise diversity jurisdiction only if there is complete diversity between the parties, that is, no two adverse parties are citizens of the same state." *Ranbaxy Labs. Inc. v. First Databank, Inc.*, 826 F.3d 1334, 1338 (11th Cir. 2016). "The party wishing to assert diversity jurisdiction bears the burden of establishing that diversity exists." *Duff v. Beaty*, 804 F. Supp. 332, 334 (N.D. Ga. 1992) (citing *Cameron v. Hodges*, 127 U.S. 322 (1888)).

Plaintiffs, by and through their counsel, filed their original Complaint in this Court on February 25, 2021. Doc. 1. In each Answer filed in this matter, each Defendant raised the defense of lack of jurisdiction due to incomplete diversity of the parties. *See* Docs. 13-16, 30-33, 46, 49-50 and the Answers of the Defendants filed contemporaneously with this motion (anticipated to be Docs. 79, 80, and 81). More specifically, the defense of was preserved as follows:

> Defendant preserves the defense of lack of subject matter jurisdiction, expressly noting that complete diversity may not exist given that, inter alia, on April 20, 2020, Plaintiff Cedrick Leon Frazier submitted an Authorization to Release Medical Records to Southeast Georgia Health System that was accompanied by a digital image of the front of his Georgia Driver's License, which indicates it was issued on 08/02/2016, expires on 07/13/2024 and lists his address as being in Brunswick, Georgia rather than in Florida.

*Id.*

When the original Complaint was filed on February 25, 2021, Plaintiff Cedrick Frazier maintained in multiple ways outside the pleadings in this case and important to this Courts' analysis that he resided in Brunswick, Georgia rather than in Jacksonville, Florida, including but not limited to: having voted in the then-recent November 2020 Presidential Election (despite maintaining that he had been living with his wife in Jacksonville, Florida since sometime in 2017)[6]; having only a Georgia Driver's License with a Brunswick address and not obtaining a Florida Driver's License until June 9, 2021, well after the lack of diversity issue was first raised in this litigation[7]; that his vehicle was registered to a Brunswick, Georgia address[8]; that the address listed on his motor vehicle insurance was the same Brunswick, Georgia address[9]. Mr. Frazier is from Brunswick, Georgia[10], grew up here[11], graduated from Brunswick High[12], worked here well after 2017[13], and Defendants submit the Court should find that, as a result, Mr. Frazier remained a citizen of the State of Georgia at the time of filing the original Complaint in this action, thus destroying diversity jurisdiction and requiring the dismissal of the case in its entirety.

The Georgia Secretary of State recently emphasized that registering to vote in Georgia without an intention to remain in the state is considered voter fraud and is punishable as a felony under Georgia law: "Per O.C.G.A. § 21-2-561, it is a felony to register to vote in Georgia if you are not a resident of Georgia with no intention of leaving...." *See* Secretary Raffensperger

---

[6] Ex. 1 hereto, Plaintiff Cedrick Frazier's Responses to Defendant SGHS's First Interrogatories, at pp. 3-4; Ex. 2 hereto, Plaintiff Cedrick Frazier's Verification of those responses; and Doc. 65-1, C. Frazier deposition at pp. 10-11 and 13-15.

[7] Ex. 1 at 3; Ex. 2; and Doc. 65-1 at 12.

[8] Ex. 1 at 4; Ex. 2.

[9] Ex. 1 at 4; Ex. 2.

[10] Doc. 65-1 at 15.

[11] Doc. 65-1 at 15.

[12] Doc. 65-1 at 15.

[13] Doc. 65-1 at 154.

Warning: 'Moving' to Georgia Temporarily in Order to Vote in Jan. 5 Runoff is Illegal and Will Be Prosecuted, Ga. Sec'y of State, https://sos.ga.gov/index.php/elections/secretary_raffensperger_warning_moving_to_georgia_temporarily_in_order_to_vote_in_jan_5_runoff_is_illegal_and_will_be_prosecuted (last visited Dec. 17, 2021).  The same argument applies to one who votes in Georgia, knowing that he does not possess all the qualifications of an elector. O.C.G.A. § 21-2-561. Thus, one who maintains that he is not a resident of Georgia yet provides indicia to elections personnel that he is and knowingly votes here anyway arguably commits a felony.

 Voting in Georgia creates the presumption that Mr. Frazier remained a citizen of Georgia rather than of Florida. If he had been a citizen of Florida when he last voted, he would have been committing a felony when he voted in Georgia just a few months filing this civil action. *See also Bloom v. Library Corp.*, 112 F. Supp. 3d 498, 503 (N.D. W. Va. June 30, 2015) (citing *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008)).Bloom, 112 F. Supp. 3d at 503 (noting that courts have found a party's voter registration to be of particular importance in determining domicile); *Peterson for Peterson*, 2017 WL 2655854, at *3 ("Additionally, and perhaps most importantly, Peterson is registered to vote in Georgia, which raises a presumption that he is a citizen of that state.").

 A party's own declarations concerning the identity of his domicile, particularly with regard to an intent to retain or establish one, as is true of any self-serving statement, are subject to judicial skepticism. As many federal courts have made clear, they are accorded little weight by the district judge when they are in conflict with the facts or a party's actual conduct. § 3612 The Requirement and Meaning of Citizenship—Determination of a Person's Domicile, Wright & Miller, 13E FED. PRAC. & PROC. JURIS. § 3612 (3d ed.).  In *Simpson v. Fender*, 2011 WL

5105467 (11th Cir. 2011), the evidence supported the finding that the plaintiff was citizen of Georgia rather than Florida even though plaintiff testified that he had been residing in Florida continuously for two to three months and intended to remain there indefinitely because defendants presented evidence that plaintiff reported Georgia address to child support office, applied for business license in Georgia, and included Georgia address on state-issued identification.  In the instant case, Mr. Frazier's only state-issued identification at the time he filed this Complaint was his Georgia-issued driver's license which he had recently relied upon to vote and to obtain his medical records. While multiple factors go into the determination of diversity of citizenship, Defendants submit that it is clear in this case that Plaintiff Frazier had done nothing to change his citizenship from Georgia to Florida in the eyes of those states until after filing this civil action. Accordingly he should be estopped from proceeding further with this matter as complete diversity is lacking.

    **B.**    **Counts X and XI should be dismissed as they are expressly based on alleged Violations of HIPAA and O.C.G.A. §31-33-2, neither of which create a private cause of action.**

        **1.**    **HIPAA creates no private cause of action.**

As HIPAA creates no private cause of action, Plaintiffs' claims that the defendants violated HIPAA fail to state a claim upon which relief can be granted. This has been recognized in the Southern District and by the Eleventh Circuit. The Honorable Lisa Godbey Wood's opinion in *O'Neal v. Se. Georgia Health Sys.* Includes the following:

> Plaintiff also claims Defendant "truly violated HIPPA [sic]," the Heath Insurance Portability and Accountability Act ("HIPAA"), by accessing the medical records within her Colonial Life account. Dkt. No. 1 at 5. However, the Eleventh Circuit has "decline[d] to hold that HIPAA creates a private cause of action." *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Plaintiff therefore may not proceed on her HIPAA claim against Defendant.

8

*O'Neal v. Se. Georgia Health Sys.*, 2:19-CV-067, 2021 WL 141236, at *14 (S.D. Ga. Jan. 14, 2021). Magistrate Judge Cheesbro of this Honorable Court has likewise recognized that HIPAA provides no private cause of action for individuals and, thus, such claims should be dismissed as a matter of law:

> Plaintiff also cites to the Health Insurance Portability and Accountability Act ("HIPAA"), but he has not described any breach of his healthcare privacy. *Id.* Additionally, HIPAA does not create a private cause of action for individuals. *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011). Plaintiff has not stated sufficient factual matter to state a plausible due process or HIPAA claim. *Ashcroft*, 556 U.S. at 678. Therefore, I **RECOMMEND** the Court **DISMISS** Plaintiff's Fifth, Fourteenth Amendment, and HIPAA claims.

*Brown v. Jump*, 2:20-CV-68, 2021 WL 1705216, at *2 (S.D. Ga. Apr. 6, 2021)(Hon. BENJAMIN W. CHEESBRO, UNITED STATES MAGISTRATE JUDGE), *report and recommendation adopted,* 2:20-CV-68, 2021 WL 1700052 (S.D. Ga. Apr. 29, 2021).

The Eleventh Circuit has not only recognized that HIPAA does not create a private cause of action for individuals, it recently recognized that every circuit that has considered the issue has so held:

> … [E]very circuit to have considered the issue has also held that no private right of action exists under HIPAA. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020); *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596–97 (6th Cir. 2019); *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 570–71 (5th Cir. 2006). HIPAA generally prohibits the disclosure of medical records without a patient's consent. *See* 42 U.S.C. §§ 1320d-1 to 1320d-7. While it provides civil penalties for improper disclosures of medical information, it does not expressly create a private cause of action to enforce the prohibition on disclosure. Instead, it limits enforcement of the statute to the Secretary of the Department of Health and Human Services. *See* 42 U.S.C. § 1320d-5. For that reason, no private right of action can be implied. "By delegating enforcement authority to the Secretary of the Department of Health and Human Services, the statute clearly reflects that Congress did not intend for HIPAA to create a private remedy." *Meadows*, 963 F.3d at 244; *see Alexander*, 532 U.S. at 290, 121 S.Ct. 1511 ("The express provision of one method of enforcing a substantive rule suggests that Congress

9

> intended to preclude others."). Accordingly, Laster cannot state a claim to reliefunder HIPAA.

*Laster v. CareConnect Health Inc.*, 852 Fed. Appx. 476, 478 (11th Cir. 2021).

Even more specifically, the Eleventh Circuit in 2020 affirmed a district court's dismissal of the claim that individuals who were clearly state actors violated a plaintiff's rights under HIPAA for failing to remove allegedly incorrect and private information from certain records:

> In his complaint, Freeze alleged that FCCC employees—including facility administrators and his therapist—violated his constitutional rights and the UDHR by failing to remove the HIPAA-protected information from his ICP. He argued that the employees were deliberately indifferent and "deliberately decepti[ve]," in violation of the Eighth and Fourteenth Amendments. *Id.* at 6. He also asserted that the FCCC employees intentionally discriminated against and defamed him, in violation of the UDHR. In support of his complaint, he attached the challenged portion of his ICP and his grievance forms.
>
> The district court sua sponte dismissed Freeze's complaint under 28 U.S.C. § 1915(e)(2)(B)(ii). The court noted that Freeze had attached his ICP and grievances to the complaint. Construing the complaint liberally, the court concluded that Freeze could not maintain a § 1983 action. **The court concluded that, to the extent that Freeze attempted to raise his claims under HIPAA, that law did not provide a private cause of action.** Additionally, the court determined that the UDHR did not supply a federal right enforceable under § 1983. Therefore, the court concluded that Freeze failed to state a claim upon which relief could be granted and dismissed his complaint without prejudice.

*Freeze v. Sawyer*, 808 Fed. Appx. 860, 862–63 (11th Cir. 2020)(emphasis added). The Eleventh Circuit Court of Appeals affirmed. *Id.*

In light of the foregoing, Counts X and XI should be dismissed as they fail to statue a claim as a matter of law.

### 2. O.C.G.A. § 31-33-2 creates no private cause of action.

As Georgia's Health Records Act, of which O.C.G.A. § 31-33-2 is a part, creates no private cause of action, Plaintiffs' claims that the defendants violated it fail to state a claim upon which relief can be granted. It is well-established that a plaintiff cannot create a private right of action

10

based upon a penal statute, unless that statute expressly imposes both criminal and civil penalties. *Anthony v. Am. Gen. Fin. Servs.*, 697 S.E.2d 166, 175 (287 Ga. 448, 459)(2010) (violation of penal statute for notary public fees did not create private right of action); *Murphy v. Bajjani*, 647 S.E.2d 54, 58 (282 Ga. 197, 201)(2007) (rejecting private action because "nothing in the provisions of the statute creates a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute" (citations omitted)).[14] Indeed, "the public policy advanced by a penal statute, no matter how strong, cannot support the implication of a private civil cause of action that is not based on the actual provisions of the relevant statute." *Anthony*, 697 S.E.2d at 172 (287 Ga. at 456).

Here, the Health Records Act is plainly a penal statute, because any person who violates it "shall be guilty of a misdemeanor . . . ." O.C.G.A. § 31-5-8. There is also nothing in the text of the Health Records Act to indicate that the legislature meant to create or " 'impose a civil as well as criminal penalty.' " *Anthony*, 697 S.E.2d at 172 (287 Ga. at 455) (quoting *Murphy v. Bajjani*, 647 S.E.2d at 58, 282 Ga. at 201).

More recent legislation further prohibits creating an implied cause of action in this case. Specifically, in 2010 the Georgia legislature enacted a statute which states: "No private right of action shall arise from any Act enacted after the effective date of this Code section unless such right is expressly provided therein." O.C.G.A. § 9-2-8(a). As shown by similar statutes involving medical records fees, if the Georgia Legislature had intended to provide a private right of action, it would have done so. *See* O.C.G.A. § 31-8-136 (providing private right of action should a

---

[14] See also *Smith v. Chemtura Corp.*, 676 S.E.2d 756, 763 (297 Ga. App. 287, 294-95)(2009) (no private cause of action created by violation of criminal statutes); *Chisolm v. Tippens*, 658 SE2d 147, 152-53 (289 Ga. App. 757, 761,)(2008) (violation of O.C.G.A. § 16-5-70, does not create a private cause of action); *Jastram v. Williams*, 623 S.E.2d 686, 687 (276 Ga. App. 475, 476,)(2005) (violations of O.C.G.A. §§ 16-10-26 and 16-10-24 do not create a private cause of action); *Doyle Dickerson Co. v. Durden*, 461 S.E.2d 902, 903 (218 Ga. App. 426, 428,)(1995) (no private cause of action based on violation of O.C.G.A. § 16-8-15).

11

personal care home or its governing body violate a patient's right to receive copies of medical records for "a reasonable fee" not to "exceed actual cost," as required in O.C.G.A. § 31-8-108(b)(6)). Because no similar private right of action lies for an alleged breach of the Health Records Act, Plaintiffs' claims pursuant to same fail as a matter of law. It is clear on the face of O.C.G.A. § 31-33-2 that the Legislature did not authorize a private cause of action to enforce that statute. As a result of the foregoing, Plaintiffs' Counts X and XI fail to state claims upon which relief can be granted and should, therefore, be dismissed.

### 2.     O.C.G.A. § 31-33-5 provides immunity from civil liability.

While there is no private cause of action for alleged violations of the Health Records Act, the Act itself provides immunity from civil liability from any other source. O.C.G.A. § 31-33-5 provides as follows: "Any provider releasing information in good faith pursuant to the provisions of this chapter shall not be civilly or criminally liable to the patient, guardian, parent, or any other person for such release."  As addressed in the Affidavit of Shannon Webb, attached as Exhibit 3 hereto, requests for Defendants' medical records from patients like Mr. Frazier are all handled through her department, and while it is alleged in Counts X and XI that records produced the responses to Mr. Frazier's requests dated April 20, 2020 and October 26, 2020 included an incorrect date of service, the responses thereto were in good faith as no written request for correction in compliance with the Health System's polices regarding same had been received by the Medical Records Department prior to the December 2, 2020 date of its last response to these requests.  Accordingly, to the extent Counts X and XI could be read to seek civil remedy for purported violation of O.C.G.A. § 31-33-2 from any other source, that claim fails based on the immunity provided in O.C.G.A. § 31-33-5.

### C. Counts X and XI should be dismissed because of the immunity provided by the Georgia COVID-19 Pandemic Business Safety Act.

Defendants are also immune from liability regarding Plaintiffs' claims involving Mr. Frazier's pre-suit records requests and the responses thereto because of the Georgia COVID-19 Pandemic Business Safety Act. Pursuant the Georgia COVID-19 Pandemic Business Safety Act, OCGA § 51-16-1, *et seq.*, a "Covid-19 liability claim" includes a cause of action for "[a]cts or omissions by a healthcare facility or healthcare provider in arranging for or providing healthcare services or medical care to the claimant … where the response to COVID-19 reasonably interfered with the arranging for or the providing of healthcare services or medical care at issue to the claimant." OCGA § 51-16-1(3)(B). In such a case, "[n]o healthcare facility, healthcare provider, entity, or individual, shall be held liable for damages in an action involving a COVID-19 liability claim against such healthcare facility, healthcare provider, entity, or individual, unless the claimant proves that the actions of the healthcare facility, healthcare provider, entity, or individual, showed: gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm." OCGA § 51-16-2. Providing patients copies of their medical records is clearly a healthcare service.

In Counts X and XI, Plaintiffs allege that the "defendants" failed to provide complete medical records within 30 days of receipt of written requests on April 20, 2020 and on October 26, 2020. Doc. 77 at pp. 25-26, ¶¶ 126 and 132, respectively. Those claims include that written requests for certain records were made by Mr. Cedrick Frazier on April 20, 2020 and October 26, 2020 and that the responses to the requests allegedly violated O.C.G.A. § 31-33-2 because "complete medical records" were not provided within 30 days of receipt of Mr. Frazier's written requests. *Id.* It is not alleged in the Second Amended Complaint in Counts X or XI or elsewhere that any alleged failure to provide complete medical records within 30 days showed gross

13

negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm. Doc. 77 at Counts X and XI and *passim.* While it is alleged in Counts X and XI that records produced the responses to Mr. Frazier's requests dated April 20, 2020 and October 26, 2020 included an incorrect date of service, the responses thereto were in good faith as no written request for correction in compliance with the Health System's polices regarding same had been received by the Medical Records Department prior to the December 2, 2020 date of its last response to these requests. *Id.* and Affidavit of Shannon Webb, Director, Medical Records & Resource Management.

Ms. Webb's Affidavit also establishes that: she is familiar with the adverse impact Covid-19 had on the release of information process had on the Medical Records Department and the Health System's response to same; that the Covid-19 pandemic and the required response to same caused increased demands on the Medical Records Department and the release of information process; that fewer individuals were available to process requests for records and perform the quality review before records were released; and that she has reviewed in detail the Health System's responses to Mr. Frazier's requests dated April 20, 2020 and October 26, 2020 and testifies that to the extent that any portion of those responses could be considered untimely, incomplete, or containing any incorrect information, Covid-19 and the Health System's response thereto interfered with arranging for and providing that healthcare service. Accordingly, Defendants are immune from liability pursuant to the Georgia COVID-19 Pandemic Business Safety Act and Counts X and XI of the Second Amended Complaint should be dismissed.

### D. The punitive damages fail to state a claim as they are not permitted under Georgia law against publicly funded hospitals or health systems.

Plaintiffs' claims for punitive damages against the Defendant Health System and Cooperative Healthcare Services, Inc. d/b/a Southeast Georgia Physician Associates – Ear, Nose

& Throat fail to state claims upon which relief can be granted as punitive damages against publicly funded hospitals and health systems are not permitted under Georgia law.

Per *Hospital Authority of Clarke County v. Martin*, 210 Ga. App. 893 (1993), as affirmed by *Martin v. Hospital Authority of Clarke County*, 264 Ga. 626 (1994), a hospital authority is not liable for punitive damages. *Hospital Authority of Clarke County*, 210 Ga. App. at 895. This is because "the Hospital Authority is a public funded governmental entity created pursuant to the Hospital Authorities Act (O.C.G.A. § 31-7-70 et seq.)." *Id.* at 293. The Supreme Court of Georgia explained "that punitive damages are not appropriate against governmental entities because neither of the twin purposes behind punitive damages – punishment and deterrence – is served by an assessment of those damages against such entities." *Martin*, 264 Ga. at 626. "Since a government entity can have no malice independent of its officials, damages for punitive purposes are not sensibly assessed against the entity itself." *Id.* at 627. "The other purpose behind punitive damages, the prevention of future misconduct, is likewise not served by allowing those damages against a governmental entity because 'the impact on the individual tortfeasor of this deterrence in the air is at best uncertain.'" *Id.*

Similarly, in *Crisp Regional Nursing & Rehabilitation Center v. Johnson*, 258 Ga. App. 540 (2002), the Georgia Court of Appeals held that the trial court erred by denying Crisp Regional Nursing & Rehabilitation Center's ("Crisp Regional") motion for summary judgment on the plaintiffs' punitive damages claim. *Johnson*, 258 Ga. App. at 545. There, "Crisp Regional's administrator testified that the Hospital Authority of Crisp County does business as Crisp Regional Health Care Systems, Inc., and that Crisp Regional Nursing & Rehabilitation Center is part of Crisp Regional Health Care Systems." *Id.* Therefore, citing *Hospital Authority of Clarke County*

15

*v. Martin*, 210 Ga. App. 893 (1993), explained above, the Court of Appeals held that Crisp Regional was entitled to summary judgment on the plaintiffs' punitive damages claims. *Id.*

As in *Johnson*, Defendants SGHS and Cooperative are related entities through which the Hospital Authority does business. See, e.g., Doc. 46, 48, and 49.  Accordingly, as the punitive damages claims against these Defendants fail to state claims upon which relief can be granted and, as a result, should be dismissed.

### IV.   CONCLUSION

Accordingly, Defendants respectfully request that this Honorable Court dismiss the case in its entirety due to lack of jurisdiction or, in the alternative, dismiss the claims based on purported violations of HIPAA and the Georgia Health Records Act as neither provides a private cause of action and the Georgia COVID-19 Pandemic Business Safety Act provides Defendants immunity from those attempted claims. Finally, as punitive damages are not recoverable from publicly funded hospitals and health systems, the punitive damages must be dismissed as well.

Respectfully submitted, this the 17th day of December, 2021.

HALL BOOTH SMITH, P.C.

/s/ *Steven P. Bristol*

| | |
|---|---|
| 3528 Darien Highway, Suite 300 | N. DANIEL LOVEIN |
| Brunswick, Georgia 31525 | Georgia Bar No. 459329 |
| PH:    (912) 554-0093 | STEVEN P. BRISTOL |
| Fax:    (912) 554-1973 | Georgia Bar No. 083135 |
| dlovein@hallboothsmith.com | *Attorneys for Defendants* |
| sbristol@hallboothsmith.com | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CEDRICK AND TAMARA FRAZIER, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHEAST GEORGIA HEALTH SYSTEM, INC.; COOPERATIVE HEALTHCARE SERVICES, INC. D/B/A SOUTHEAST GEORGIA PHYSICIAN ASSOCIATES – Ear, Nose & Throat; and SHERMAN A. STEVENSON, M.D. <br><br> Defendants. | CIVIL ACTION FILE NUMBER: <br><br> 2:21-cv-00021-LGW-BWC |

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT AND INCORPORATED BRIEF IN SUPPORT via electronic service on all parties to this action to the following counsel of record:

M. James Thomas, Esq.
1050 Glenbrook Way, Suite 480, #195
Hendersonville, TN 37075
mj@marcusjamesthomas.com
*Attorney for Plaintiffs*

This 17th day of December, 2021.

HALL BOOTH SMITH, P.C.

3528 Darien Highway, Suite 300        /s/ *Steven P. Bristol*
Brunswick, Georgia 31525              N. DANIEL LOVEIN
PH:   (912) 554-0093                  Georgia Bar No. 459329
Fax:  (912) 554-1973                  STEVEN P. BRISTOL
dlovein@hallboothsmith.com            Georgia Bar No. 083135
sbristol@hallboothsmith.com           *Attorneys for Defendants*

17