# In the United States District Court for the Southern District of Georgia Brunswick Division

```
CEDRICK FRAZIER and
TAMARA FRAZIER

     Plaintiffs,
                                      CV 221-021
     v.

SOUTHEAST GEORGIA HEALTH
SYSTEM, INC.,
COOPERATIVE HEALTHCARE
SERVICES, INC. d/b/a
SOUTHEAST GEORGIA PHYSICIAN
ASSOCIATES—EAR, NOSE, AND
THROAT, and
SHERMAN A. STEVENSON,

     Defendants.
```

## ORDER

Before the Court is a motion to dismiss filed by Defendants Southeast Georgia Health System, Inc., Cooperative Healthcare Services, Inc. d/b/a Southeast Georgia Physician Associates—Ear, Nose, and Throat, and Sherman A. Stevenson (collectively "Defendants"). Dkt. No. 83. For the reasons below, Defendants' motion is **DENIED**.

### BACKGROUND

This medical malpractice case comes to federal court by way of diversity jurisdiction. Dkt. No. 77 ¶¶ 11-12; 28 U.S.C. § 1332.


Defendants are Georgia citizens, based in Brunswick, Georgia, and Plaintiffs Cedrick and Tamara Frazier ("Plaintiffs") allege they are Florida citizens. Id. ¶¶ 1-5. Plaintiffs filed the original complaint on February 25, 2021. See Dkt. No. 1.

Defendants then brought a motion to dismiss, seeking dismissal of this case in its entirety due to lack of diversity jurisdiction or, in the alternative, to dismiss certain of Plaintiffs' claims. Dkt. No. 83. The Court converted Defendants' motion to dismiss into a motion for summary judgment and deferred ruling on the merits pending determination of subject matter jurisdiction. Dkt. No. 87. The parties have fully briefed the issue, see dkt. nos. 83, 89, 91, the Court held a hearing, dkt. no. 120, and the matter is ripe for review.

The parties agree Defendants are domiciled in Georgia and are thus Georgia citizens for the purpose of subject matter jurisdiction. See Dkt. No. 77 ¶¶ 1-5. The parties also agree that Plaintiff Tamara Frazier is a Florida citizen. Id. ¶ 1. However, the parties contest the domicile of Plaintiff Cedrick Frazier. See Dkt. Nos. 83 at 2, 89 at 3.

In support of their argument that Frazier is a Georgia resident, Defendants point to several facts:

- Mr. Frazier's federal and state tax returns from 2017 through 2020 show a Brunswick, Georgia address. See dkt. no. 118; see especially dkt. nos. 118-9 at 2 (2019

federal tax return), 118-10 at 2, 6 (2019 Georgia tax return, filed February 4, 2020), 118-11 at 2 (2020 federal tax return), 118-12 at 2, 6 (2020 Georgia tax return, filed February 5, 2021);

- Mr. Frazier voted in Georgia in the November 2020 presidential election, dkt. no. 65-1 at 14:1-15:6; dkt. no. 83-1 at 3-4;
- Mr. Frazier possessed only a Georgia driver's license at the time he filed the original complaint, and did not obtain a Florida license until June 9, 2021, dkt. no. 83-1 at 3;
- Mr. Frazier owned a vehicle registered to a Brunswick, Georgia address, id. at 4;
- At the time of filing this lawsuit, the address listed on Mr. Frazier's motor vehicle insurance policy was the same Brunswick address to which the vehicle was registered, id.;
- Mr. Frazier is from Brunswick, Georgia, where he grew up, graduated high school, and worked until October 2020, dkt. no. 65-1 at 15:12-18, dkt. no. 89-7 at 21-22;
- Mr. Frazier maintains a Georgia telephone number, dkt. no. 91 at 13.

In support of their argument that Mr. Frazier is a Florida resident, Plaintiffs point to several facts of their own:

- Mr. Frazier never owned real estate in Georgia and, after marrying his wife in June 2017, he relocated to his current home in Jacksonville, Florida, dkt. no. 89-4 at 3-5;
- Mr. Frazier's last Georgia residence was a property he rented until June 2017, and water and sewer service were stopped there in September 2017, dkt. no. 89-6 at 6;
- Mr. Frazier's vehicle registered to a Georgia address became inoperable in the first quarter of 2018, was parked at the Florida home since then, and had "not been on the road or moved in years," dkt. no. 89 at 5; dkt. no. 89-4 at 10 (showing an esurance policy for 2021 effective December 27, 2020);
- Mr. Frazier's direct deposits from his Georgia employer were made to a checking account at VyStar Credit Union in Jacksonville, Florida since September 2019; dkt. no. 89-4, dkt. no. 89-7 at 1, 4, 8-9, 12, 15;
- Mr. Frazier shared with his wife a Florida checking account, which was used for daily expenses since they got married in 2017, dkt. no. 89-7 at 8-15;

- Mr. and Mrs. Frazier both make payments on their Florida home mortgage, id. at 3, 6-8;

- Mr. Frazier had life insurance policies and AIG retirement account information sent to the Florida home "as early as June 2018 and July 2020," id. at 18-20;

- Mr. Frazier was terminated from his Georgia job with the Glynn County Sheriff's Office on October 2, 2020, dkt. no. 89-7 at 21-22;

- In requests for medical records made in April 2020, October 2020 and January 2021, Mr. Frazier listed his Florida home as his address, dkt. no. 89-8 at 1-4; and

- Mr. Frazier's W-2 forms from 2017-2019 listed his address in Jacksonville, Florida, see dkt. no 115-1 at 1-3.

**LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). As relevant here, federal courts have "diversity jurisdiction" in "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  This requires "complete diversity" of citizenship between opposing parties, meaning no two adversarial parties may be citizens of the same state. Ranbaxy

5

Labs. Inc. v. First Databank, Inc., 826 F.3d 1334, 1338 (11th Cir. 2016). Citizenship, in this context, is determined by domicile—which requires 1) physical presence and 2) an intent to remain indefinitely. McCormick v. Aderholdt, 293 F.3d 1254, 1257-58 (11th Cir. 2002). The party asserting jurisdiction must prove, by preponderance of the evidence, that jurisdiction existed at the time the complaint was filed. Id. at 1257.

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980), cert. denied, 449 U.S. 953 (1980) (citation omitted). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981). But when the attack is factual,

6

>    the trial court may proceed as it never could under
>    12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a
>    factual 12(b)(1) motion is the trial court's
>    jurisdiction—its very power to hear the case—there is
>    substantial authority that the trial court is free to
>    weigh the evidence and satisfy itself as to the existence
>    of its power to hear the case. In short, no presumptive
>    truthfulness attaches to plaintiff's allegations, and
>    the existence of disputed material facts will not
>    preclude the trial court from evaluating for itself the
>    merits of jurisdictional claims.

Id. at 412–13 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Defendants' attack on subject matter jurisdiction in this case is factual.

## ANALYSIS

Defendants argue that Mr. Frazier, like Defendants, was actually a Georgia resident at the time he filed the complaint—which would defeat diversity jurisdiction. Dkt. No. 83 at 1. Because the totality of the circumstances weigh in favor of finding Mr. Frazier is a Florida citizen, Defendants' motion for summary judgment is **DENIED**.

### I.  Domicile Generally

Courts determine domicile under a "totality of the circumstances" approach. In the Eleventh Circuit, this standard "weigh[s] a constellation of objective facts, no single one of which is entitled to controlling weight." Alberto v. Progressive Ins. Co., No. 2:11-CV-203, 2013 WL 750290, at *3 (S.D. Ga. Feb. 27, 2013) (citing Slate v. Shell Oil Co., 444 F. Supp. 2d 1210, 1216 (N.D. Ala. 2006)). Courts consider factors such as:

> state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business and employment are located, and where memberships in local professional, civil, religious or social organizations are established.

Slate, 444 F. Supp. 2d at 1215. Timing is also vital in evaluating jurisdictional disputes, as domicile changes when the relevant criteria are met. See, e.g., Angel v. Reed, No. 1:18-CV-211, 2019 WL 6037714, at *2 (M.D. Ga. Jan. 24, 2019) (emphasizing importance of timing and holding the defendant did not change his domicile from Georgia to Florida until at least four days after the complaint was filed). Courts may consider a party's statements regarding his domicile, but "these declarations are often self-serving," so they carry little weight. Molinos, 633 F.3d at 1342 (quoting 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3612, at 549 (3d ed. 2009)).

In evaluating these factors, there are two presumptions. See id. First, a person's current residence is presumed to be their domicile. Muhammad v. Rice, No. 2:16-cv-01206, 2018 WL 5084854, at *3 (N.D. Ala. Oct. 18, 2018) (citing Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1300, 1342 (11th Cir. 2011)). Second, when a person has established a domicile, they are presumed to maintain that domicile until they clearly establish domicile in

8

another state. Id. (citing Mitchell v. United States, 88 U.S. 350, 353 (1874) and Audi Performance & Racing, LLC v. Kasberger, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003)). Both of those presumptions are rebuttable. See id.

A party seeking to overcome these two presumptions must present evidence clearly establishing a need for departure. See, e.g., Muhammad, 2018 WL 5084854, at *3-4 (finding state probate court's determination of domicile not dispositive when ties to previous state were still strong); Slate, 444 F. Supp. 2d at 1216-17 (stressing the need to demonstrate plaintiff's meaningful intent to establish domicile in Louisiana when he maintained ties to his previous home in Alabama); Combs v. T.J. Samson Cmty. Hosp., No. 1:05-CV-190, 2006 WL 1895460, at *1-2, 4 (W.D. Ky. July 7, 2006) (determining evidence of intent to establish a Florida domicile did not overcome retained connections with previous domicile in Kentucky).

## II. Physical Presence

As an initial matter, Mr. Frazier presents strong evidence that he is physically present in Florida. He has shown he never owned any real property in Georgia, and he has not rented property in Georgia since 2017. Dkt. Nos. 89-1 at 2 (testifying that he moved from his Brunswick, Georgia rental address in September 2017); 89-6 at 1 (showing owners of the rental property). After his marriage in 2017, Mr. Frazier relocated to Jacksonville,

9

Florida to live with his wife, Mrs. Frazier. Dkt. No. 89-4 at 3. As part of this relocation, Mr. Frazier moved all his belongings to Florida and cut off utilities at his former Brunswick residence. Dkt. No. 89-1 at 2. As such, it is clear Mr. Frazier is physically present in Florida.

### III. Intent to Remain

The question of Mr. Frazier's intent to remain, while a closer question, still weighs in favor of Mr. Frazier being a Florida citizen for domicile purposes.

On top of the clear demonstration of Mr. Frazier's physical presence in Florida, discussed above, Mr. Frazier has demonstrated consistent ties to Florida beginning as early as 2017 and no later than 2019. He had a joint bank account with his wife in Florida, dkt. no. 89-7 at 1, 8-9, 12, 15, out of which he paid mortgage payments, id. at 3, 6-8, and other daily expenses, id. at 4-8, 11-14. He received direct deposits from his employer into that account, id. at 1, 8-9, 12, 15, and listed his Florida bank account on his W-2, id. at 1, see also dkt. no. 115-1 at 1-3.

Defendants look past this evidence and argue that two key pieces of evidence show Mr. Frazier did not intend to remain in Florida at the time the complaint was filed. Dkt. No. 91 at 17-18.

They point, first, to Mr. Frazier's voting in Georgia in the November 2020 election. Id. at 17; see also Dkt. No. 83 at 6-7.

Noting that voting in a state where one is not a citizen is voter fraud, dkt. no. 83 at 6-7 (citing O.C.G.A. § 21-2-561), Defendants argue that Mr. Frazier's vote establishes, at least as of November 3, 2020, that he still considered himself a Georgia citizen. Typically, voting in Georgia would be a powerful indicator that Frazier was a Georgia domiciliary as of that date—since he would presumably deny that he committed a felony. Then, having established a domicile in Georgia as of November 2020, it would be Frazier's burden to show a clear shift in his domicile from Georgia to Florida *after* that date but *before* the filing of this lawsuit. See Muhammad, 2018 WL 5084854, at *3 (a plaintiff must clearly establish a change in their previous domicile). If that were so, then the conclusion here may well be different. Mr. Frazier's testimony, however, suggests a different explanation. Mr. Frazier explained in his deposition that he in fact resided in Florida and considered himself a Florida resident at the time, and that he voted in Georgia because he believed "it was really important to vote as opposed to not voting." Dkt. No. 65-1 at 14:14-20. And when asked why he did not change his voter registration to Florida, he explained that he did not have the time to change his registration before the voter registration deadline would have passed.  Id. at 14:21-15:5.  Indeed, Mr. Frazier's counsel confirmed that position at the hearing, explaining that Mr. Frazier considered himself a Florida citizen since September 2017, up

11

through the time he voted in Georgia's 2020 election, and that his residence "has not changed" since then. In short, Mr. Frazier maintains his conviction that he was a Florida resident in 2020 and 2021, even in the face of the reality that having voted for President in Georgia as a Florida resident may subject him to possible conviction of another sort.

The second key piece of evidence Defendants point to in support of Georgia domicile is Mr. Frazier's 2017-2020 federal and state tax returns. See Dkt. No. 118. The tax returns all show Mr. Frazier's Brunswick, Georgia rental address, and the Georgia returns indicate that Mr. Frazier was a full-year resident of Georgia. See, e.g., Dkt. Nos. 118-9 at 2 (2019 federal tax return), 118-10 at 2, 6 (2019 Georgia tax return, filed February 4, 2020), 118-11 at 2 (2020 federal tax return), 118-12 at 2, 6 (2020 Georgia tax return, filed February 5, 2021). Again, that would normally be a strong indicator that Frazier was a Georgia resident at those times—since he would presumably deny making false statements in sworn documents. But again, Frazier—for better or worse—resists that inference.

Plaintiffs filed affidavits explaining that these tax returns do not contradict Mr. Frazier's intent to remain in Florida. See Dkt. No. 119. Mr. Frazier explains that his tax returns for 2017-2021 (for tax years 2016-20) were prepared by a Mr. Greg Remson, who came to Mr. Frazier's house in Georgia in 2017 to prepare the

12

2016 tax return. Id. at 3-4. After moving to Florida, Mr. Frazier continued to have Mr. Remson prepare his tax returns, and Mr. Remson met Mr. & Mrs. Frazier at their home in Florida beginning in 2018, when they were filing taxes for the first time as a married couple. Id. Mr. Frazier states that he never checked his tax returns after receiving them, and therefore noticed "the inconsistencies involving [their] address and other discrepancies" on his tax returns only after being advised by his attorney that he may have to produce his tax returns in discovery. Id. at 4-5. Mr. Remson also prepared Mrs. Frazier's tax returns, and she states in her affidavit she is currently being audited by the IRS for issues with her tax returns. Id. at 7.

Defendants argue that Mr. Frazier's statements are self-serving and should not carry much weight. See Dkt. No. 83 at 7; see also Wright & Miller, supra ("A party's own declarations concerning the identity of his domicile, particularly with regard to an intent to retain or establish one, as is true of any self-serving statement, are subject to judicial skepticism.").

However, Mr. Frazier's arguments are not self-serving in important ways. First, Mr. Frazier's statements might serve him well in this lawsuit, but they might prove to be non-self-serving overall, as his statements may indicate that he violated both voting and tax laws. Second, Mr. Frazier's statements are entirely in accordance with the facts overall. Mr. Frazier lived

13

with his wife in Florida since 2017, received direct deposits in Florida, paid for his mortgage and daily expenses in Florida, and owned a car which he stored in Florida.

On balance, therefore, Mr. Frazier's voting behavior and tax returns do not fatally undermine the otherwise-strong indications that he resides and intends to remain in Florida, not Georgia.

## CONCLUSION

Having shown that 1) he physically resides in Florida and 2) he intends to remain there, Mr. Frazier has demonstrated he is a Florida citizen for subject matter jurisdiction purposes. Therefore, since both Plaintiffs are citizens of a different state (Florida) than Defendants (Georgia), diversity jurisdiction exists. Defendants' motion for summary judgment based upon lack of subject matter jurisdiction, dkt. no. 83, is thus **DENIED**. The motion is also **DENIED at this time** as to Defendants' argument that certain of Plaintiffs' claims should be dismissed on the merits. In accordance with the Court's May 3, 2022 scheduling order, dkt. no. 113, the parties may continue to engage in discovery. Should Defendants wish to renew their motion for summary judgment, they are permitted to do so by the deadline set forth in the scheduling order.

**SO ORDERED** this 22nd day of July, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA