IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CEDRICK FRAZIER; and TAMARA FRAZIER,       Plaintiffs,    v. SOUTHEAST GEORGIA HEALTH SYSTEM, INC., et al.,       Defendants. | CIVIL ACTION NO.: 2:21-cv-21 |

**O R D E R**

This matter is before the Court on Defendants' Motion to Exclude Expert Testimony. Doc. 185. Defendants also filed an Amended Motion to Exclude Expert Testimony. Doc. 190. Plaintiffs filed a Response in opposition. Doc. 196. Defendants filed a Reply. Doc. 210. For the reasons described below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Exclude Expert Testimony. Doc. 185. The Court **DENIES** Defendants' Amended Motion to Exclude Expert Testimony because it is untimely and was filed without justification. Doc. 190. A summary of the Court's rulings is as follows:

1. The Court **DENIES** the portion of Defendants' motion concerning Dr. Mikula's testimony. Dr. Mikula is permitted to testify about the opinions in her disclosure under Federal Rule of Civil Procedure 26(a)(2).

2. The Court **DENIES** the portion of Defendants' motion concerning Dr. Armstrong's testimony. Dr. Armstrong is permitted to testify about the opinions in his disclosure under Federal Rule of Civil Procedure 26(a)(2).

3. The Court **GRANTS** the portion of Defendants' motion concerning Dr. Aktas's testimony. Plaintiff has not provided a written report of Dr. Aktas's testimony under Federal Rule of Civil Procedure (a)(2) and the

time to do so has passed, so Dr. Aktas is prohibited from offering expert opinion testimony.

**BACKGROUND**

In this suit, Plaintiffs allege Defendants committed professional negligence, failed to obtain informed consent, committed fraud, altered some of Plaintiff C. Frazier's medical records, and fabricated some portions of C. Frazier's medical records. Doc. 77. Plaintiffs' allegations arise from a surgical procedure Defendant Dr. Stevenson, an employee of Defendant Southeast Georgia Health System, Inc. ("SGHS"), performed on C. Frazier on January 21, 2020. Id. at 4. Plaintiffs allege Defendants failed to exercise the required degree of care because, among other things, Dr. Stevenson left gauze or packing in C. Frazier's nasal cavity after the procedure. Id. Plaintiffs also allege Defendants failed to obtain C. Frazier's informed consent before the procedure. Id. at 5–7. Additionally, Plaintiffs claim Defendants fraudulently altered and fabricated medical records to reflect Dr. Stevenson obtained informed consent and to misrepresent C. Frazier's post-operative care. Id. at 20–24.

A significant piece of evidence in this case is a video Plaintiffs purport to have recorded in Dr. Stevenson's office on February 25, 2020. Plaintiffs say the video shows gauze packing and blood clots Dr. Stevenson removed from C. Frazier's nasal cavity and placed in a medical "kidney basin." See id. at 9. Defendants contend Plaintiffs fraudulently manufactured this video. See, e.g., Doc. 184 at 4–7 (Defendants' motion for sanctions based on fabricated evidence). The video and the phone with which C. Frazier used to record it have been subject to a motion to compel and forensic investigations by both parties. See Docs. 58, 62. Defendants frequently raise the results of their forensic investigation, raising doubts as to the video's authenticity, and the motion now before the Court is no exception. See, e.g., Docs. 124, 149, 164, 180, 184.

In their motion, Defendants ask the Court to exclude the testimony of three of Plaintiffs' expert witnesses: Dr. Suzette Mikula; Dr. Michael Armstrong; and Dr. Elvan Aktas. Defendants move to exclude Dr. Mikula's testimony because her "fact gathering and methodology are insufficient and [] her opinions . . . are based solely on her experience and rank speculation." Doc. 185 at 4. Defendants move to exclude Dr. Armstrong's testimony for the same reasons. Doc. 185 at 2 n.1. Defendants move to exclude Dr. Aktas's testimony because Plaintiffs did not timely disclose him and Plaintiffs still have not provided his expert report. Id.

## LEGAL STANDARD

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony. Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In this Circuit, courts routinely look to three elements to determine if expert testimony is admissible under Daubert and Rule 702. As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326

F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education."  Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010).  The expert need not have experience precisely mirroring the case at bar in order to be qualified.  Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate."  Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third element, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case."  Kennedy v. Elec. Ins. Co., Case No. 4:18-cv-148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579, 591 (1993)); Frazier, 387 F.3d at 1262–63.  Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions

must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person." Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)). Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)). Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002). However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

## DISCUSSION

### I. Timeliness of Defendants' Motions

Defendants filed their Motion to Exclude and their Amended Motion to Exclude after the applicable deadline. The deadline for all civil motions, including Daubert motions, was Friday, March 31, 2023. Doc. 141 at 2 (Fifth Amended Scheduling Order). Defendants filed their initial Motion to Exclude on April 1, 2023. Doc. 185. Defendants filed their Amended Motion to

Exclude on April 3, 2023. Doc. 190. Defendants acknowledge their motions were late. Because Defendants' motions were late, consideration of the motions would require the Court to amend the schedule in this case and deem the motions timely filed.

Ordinarily, "[a] party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect." Payne v. C.R. Bard, Inc., 606 F. App'x 940, 944 (11th Cir. 2015) (citing Fed. R. Civ. P. 6(b) 1, 16(b)(4)). However, in the Fifth Amended Scheduling Order, the Court stated clearly: "The parties are forewarned the schedule will not be extended again except upon the showing of the most exceptional circumstances."[1] Doc. 141 at 2. Where good cause is required, the party seeking the extension must demonstrate diligence. Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1232 (11th Cir. 2008). When considering whether a party has shown excusable neglect, the Court considers the following factors: (1) prejudice to the nonmovant, (2) length of the delay and impact on the proceedings, (3) reason for the delay, and (4) whether the movant acted in good faith. Payne, 606 F. App'x at 944.

Defendants use their amended motion, doc. 190, to explain why their initial motion, doc. 185, was late. Counsel for Defendants "declares that he experienced unforeseen technical difficulties in getting the original motion properly converted to the proper searchable '.pdf' format," and that he had additional technical difficulties filing the brief to the Court's CM/ECF system. Doc. 190 at 1 n.1.

Defendants make a sufficient showing of good cause and excusable neglect for filing their initial motion after the deadline. The electronic time stamp for the initial motion shows

---

[1] The undersigned imposed this heightened standard for requesting extensions in this case because of the parties' numerous requests for extensions and frequent delays in the case.

6

Defendants filed the motion only three minutes after midnight on Saturday, April 1, 2023, meaning the document was filed only a few minutes after the deadline.  Counsel's representations about technical difficulties are a sufficient showing of good cause, given the short nature of the delay.  Further, Defendants show excusable neglect because of the short length of delay, the lack of prejudice the short delay causes Plaintiffs, and Defendants' plausible explanation for the delay.  Finally, the Court finds Defendants have shown "exceptional circumstances" for the extension, as required in the Court's Fifth Amended Scheduling Order.

However, Defendants fail to provide any explanation or justification for filing an amended motion.  The amended motion was filed at 6:25 p.m. on Monday, April 3, 2023—a full three days after the deadline, not three minutes.  The amended motion provides new legal authority, new citations to the record, and new arguments.  Defendants explain the initial motion was late because of technical difficulties, but Defendants offer no explanation or justification for filing a revised and expanded version of the initial motion days later, after the expiration of the deadline.  Defendants did not request permission to file the revised, amended motion.  Put simply, Defendants have not demonstrated good cause or excusable neglect to justify the filing of their amended motion, nor have they demonstrated exceptional circumstances.  As it stands, Defendants' amended motion is an improper attempt to supplement their initial motion.  Accordingly, the Court **DENIES** Defendants' Amended Motion to Exclude Expert Testimony and will not consider it or any arguments raised in the amended motion that were not asserted in the initial motion.

II.    **Dr. Mikula**

Dr. Mikula is a physician licensed to practice medicine in Washington, D.C. and Virginia.  Doc. 184-3 at 51.  She is certified in otolaryngology and sleep medicine, and she has

practiced otolaryngology for over 20 years.[2]  Id.  Dr. Mikula based her opinions on a review of Plaintiff C. Frazier's medical records and the video Plaintiffs purportedly recorded on February 25, 2020.  Id. at 51.  Dr. Mikula opines Defendant Dr. Stevenson's treatment of C. Frazier failed to meet the standard of care, and Dr. Stevenson's failure to meet the standard of care resulted in injuries to C. Frazier.  Id. at 53–54.  Thus, Dr. Mikula testifies as to both breach and causation.

Plaintiffs produced an affidavit by Dr. Mikula containing her opinions.  Id. at 51–55.  Dr. Mikula opined Dr. Stevenson breached the standard of care because he: (1) failed to "resolve and reconcile the sponge count" after during the January 21, 2020 surgery; (2) failed to inform C. Frazier "that the sponge count was not reconciled at the end of the surgery"; (3) "inadvertently [left] sponges and/or packing in the nose for over 30 days as identified in the video of Mr. Frazier's office visit"; (4) failed to obtain Plaintiff C. Frazier's consent before surgery; (5) failed to "identify and inform Mr. Frazier of a small posterior septal perforation which was seen on the patient's head CT done on April 3, 2020"; and (6) falsified records by creating an office note on April 10, 2020 and backdating it to February 6, 2020.  Id. at 53.  Dr. Mikula also opined "the unnecessary surgery and prolonged nasal packing without antibiotics led to inflammation, nerve damage, septal perforation and chronic pain."  Id. at 54.

Defendants argue Dr. Mikula's opinions should be excluded because they are based solely her on experience.  Doc. 185 at 4.  However, "[e]xperience alone—or along with skill, training, education, or other knowledge—may provide a sufficient basis for expert testimony." US Nitrogen, LLC v. Weatherly, Inc., No. 1:16-CV-00462, 2019 WL 13168887, at *4 (N.D. Ga. June 18, 2019) (citing FED. R. EVID. 702, advisory committee notes; Frazier, 387 F.3d 1244,

---

[2]  Defendants do not challenge Dr. Mikula's qualifications, and the Court expresses no view on whether Dr. Mikula is qualified.  This information is provided as background.

1296 (11th Cir. 2004)). Indeed, a court may conclude nonscientific expert testimony is reliable based upon the expert's personal knowledge or experience. Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)). For the opinion to be deemed reliable under this rubric, Dr. Mikula "must explain *how* [her] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (emphasis in original) (citation omitted). In other words, to admit Dr. Mikula's opinion, she must be able to demonstrate a sufficient connection between her experience and the opinion she offers.

Dr. Mikula establishes a sufficient connection between her experience and her standard-of-care opinion. Dr. Mikula opines on the standard of care for a septoplasty and inferior turbinate reduction, which Defendant Dr. Stevenson performed on Plaintiff C. Frazier. Doc. 184-3 at 51–55. Dr. Mikula demonstrates she is familiar with this standard of care through her work assessing and diagnosing nasal septal deviation and inferior turbinate hypertrophy and through her work rendering treatment and performing surgery for this condition. Id. at 51. Defendants do not dispute Dr. Mikula's familiarity with the standard of care. In Dr. Mikula's affidavit, she provides details about Dr. Stevenson's treatment, taken from C. Frazier's medical records, and evaluates the treatment using the standard of care with which she is familiar. Id. at 52–55. This analysis provides a sufficient connection between Dr. Mikula's experience and her standard of care opinion.

Defendants argue Dr. Mikula's opinion relies on faulty information, specifically, a video Defendants contend Plaintiffs falsified.[3]  Doc. 210 at 3, 8.  Expert witness testimony must be "based on sufficient facts or data[.]"  Fed. R. Evid. 702(b).  However, the information experts rely on generally goes to weight, not admissibility.  Vincent v. Am. Honda Motor Co., No. CV 108-067, 2010 WL 11537726, at *7 (S.D. Ga. July 1, 2010) (citing Bazemore v. Friday, 478 U.S. 385, 400 (1986)).  "Expert testimony must amount to more than 'guess or speculation,' but 'where the expert testimony has a reasonable factual basis, a court should not exclude it.  Rather, it is for opposing counsel to inquire into the expert's factual basis.'"  Eastep v. Newman, No. 1:12-CV-102, 2013 WL 6835197, at *2 (M.D. Ga. Dec. 20, 2013) (quoting United States v. 0.161 Acres of Land, 837 F.2d 1036, 1040 (11th Cir. 1988).  "[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination." McGarity v. FM Carriers Inc., No. CV410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) (citing Daubert, 509 U.S. at 596; Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345–46 (11th Cir. 2003)).

Defendants' argument about the facts and evidence upon which Dr. Mikula relies goes to the weight of Dr. Mikula's testimony, not its admissibility.  The Court has not, at this time, made any factual determination about the veracity of the video.  Consequently, the Court cannot say, at this time, Dr. Mikula's reliance on that video requires the exclusion of her opinion testimony.  Without a conclusive determination the video was fabricated, the persuasiveness of Dr. Mikula's standard-of-care opinion depends on whether the factfinder believes Plaintiffs' video evidence is

---

[3]  In their Amended Motion to Exclude, Defendants also argue Dr. Mikula failed to properly evaluate Dr. Stevenson's deposition testimony, and her opinion relies on reports published after Plaintiff C. Frazier's surgery and care by Defendants.  Doc. 190 at 6–8.  The Court does not consider those arguments here because the Court rejects the amended motion as untimely.

credible. Dr. Mikula's reliance on C. Frazier's medical records and on Plaintiffs' disputed video evidence is reasonable and her reliance on these items does not render her opinion unreliable.[4] Accordingly, the Court **DENIES** Defendants' request to exclude Dr. Mikula's testimony.

**III.   Dr. Armstrong**

Dr. Armstrong is a physician licensed to practice medicine in Virginia. Doc. 53-6 at 1. He is certified in otolaryngology and has practiced otolaryngology for over 25 years.[5] Id. Dr. Armstrong based his opinions on a review of Plaintiff C. Frazier's medical records, the video Plaintiffs purportedly recorded on February 25, 2020, and an interview he conducted with C. Frazier. Id. In an affidavit, Dr. Armstrong provides an opinion describing "the standard of care exercised generally by otolaryngologist under circumstances the same or similar to those existing with regard to Dr. Sherman Stevenson's care and treatment of Mr. Frazier . . . ." Id. at 4. Dr. Armstrong opines that the following conduct falls below the standard of care: "[failing] to resolve and reconcile the sponge count during the 1/21/2020 surgery;" "inadvertently [leaving] sponges and/or packing in the nose for over 30 days as identified in the video of the office visit on 2/25/2020;" and "[failing] to document informed consent before the surgery . . . ." Id. Dr. Armstrong also opines "the prolonged nasal packing from the surgical procedure . . . proximately caused inflammation, pain and nasal discharge that persisted for several weeks after the packing was removed . . . ." Id.

---

[4]   In their Amended Motion to Exclude, Defendants argue Dr. Mikula's opinion about the cause of Plaintiff's C. Frazier's injuries should be excluded because it is based only on a temporal relationship between the injuries and Defendants' treatment. Doc. 190 at 8. The Court does not consider this argument here because the Court rejects the Amended Motion.

[5]   Defendants do not challenge Dr. Armstrong's qualifications, and the Court expresses no view on whether Dr. Armstrong is qualified. This information is provided as background.

11

In their initial motion, Defendants argue Dr. Armstrong's opinion should be excluded for the same reasons Dr. Mikula's opinions should be excluded, but Defendants provided no particularized argument as to Dr. Armstrong. Doc. 185 at 1 n.1. In their Reply, Defendants elaborate some. Defendants argue Dr. Armstrong relied on Plaintiffs' video evidence without questioning its credibility. Doc. 210 at 3. Defendants also argue Dr. Armstrong did not review all the medical records and depositions available, and his opinion relies too much on his experience. Id. at 6–8. Defendants state they found other cases in a Westlaw search where Dr. Armstrong offered expert opinions based on consideration of more extensive medical records than the records he considered in this case. Id. at 5–7.

Defendants' arguments are unconvincing. For the reasons explained above as to Dr. Mikula, Dr. Armstrong's reliance on the evidence is reasonable. As with Dr. Mikula, Defendants may probe the factual bases of Dr. Armstrong's opinion at trial. Like Dr. Mikula, Dr. Armstrong sufficiently explains how his experience as an otolaryngologist supports his opinions on the standard of care, and he sufficiently matches his experience with the facts and data he gathered to form reliable opinions. Finally, Defendants' argument that Dr. Armstrong relied on more extensive medical records in other cases fails to show the records he relied on in this case are so inadequate as to render his opinions inadmissible.[6] Accordingly, the Court **DENIES** Defendants' request to exclude Dr. Armstrong's testimony.

---

[6] In their Reply, Defendants challenge the helpfulness of Dr. Armstrong's opinion in a conclusory fashion without providing any substantive argument in support of the challenge. Doc. 210 at 7–8. Defendants refer the Court to "the filings regarding Defendant's Motion regarding the Informed Consent claims, docs. 181 through 181-24." Docket Numbers 181 through 181-24 contains Defendants' Partial Motion for Summary Judgment and exhibits, which is before the District Judge and consists of 1,348 pages of briefing and attachments. Defendants' superficial assertion of a helpfulness challenge is insufficient, particularly when the challenged testimony concerns breach and causation—core issues in this case. Furthermore, Defendants failed to challenge the helpfulness of Dr. Armstrong's testimony in their initial motion, mentioning the issue for the first time in their reply brief. Accordingly, the Court rejects Defendants' helpfulness challenge to Dr. Armstrong's testimony.

IV.     **Dr. Aktas**

Dr. Aktas is a professor of finance at Valdosta State University. Doc. 196-3 at 1. He is Plaintiffs' net worth damages expert. Doc. 196 at 1. Plaintiffs say Dr. Aktas "can testify about damages based on Defendant Sherman Stevenson and defendant parties named in [this] lawsuit." Doc. 210 at 2 n.1. Plaintiffs have given Dr. Aktas discovery responses from Dr. Stevenson about his net worth, which Dr. Aktas will ostensibly rely on when forming his opinions. Doc. 196 at 6–7.

Plaintiffs provided Defendants with Dr. Aktas's curriculum vitae on December 30, 2022. Doc. 196 at 6. Plaintiffs identified Dr. Aktas to Defendants as a damages expert in a supplemental disclosure on February 28, 2023. Doc. 210 at 9. Plaintiffs have not provided any expert witness report for Dr. Aktas. Doc. 185 at 2 n.1.

Defendants argue the Court should exclude Dr. Atkas's testimony because Plaintiffs did not properly disclose Dr. Atkas and his opinions before August 3, 2022, the deadline set in the Scheduling Order. Doc. 210 at 9. On the other hand, Plaintiffs argue Dr. Aktas was unable to complete his report by the deadline because Defendants did not disclose the relevant discovery—Dr. Stevenson's net worth information—until compelled to do so by Court Order on February 14, 2023. Doc. 196 at 6–7. Plaintiffs state they have now provided those discovery responses to Dr. Aktas, and they "request a reasonable time for him to provide an affidavit . . . ." Id. at 7.

As an initial matter, the deadline for the disclosure of Plaintiffs' expert witness reports was March 1, 2023, not August 3, 2022, as Defendants argue. The Court did set August 3, 2022 as the deadline for service of Plaintiffs' expert witness reports in the Fourth Amended Scheduling Order. Doc. 113. However, on August 2, 2022, Plaintiffs requested a 120-day extension of this and all other deadlines. Doc. 134. The Court granted Plaintiffs' request, in

part, in the Fifth Amended Scheduling Order, setting a deadline for the close of all discovery on March 1, 2023, without setting deadlines for intermediate discovery tasks. Doc. 141. In other words, the Court ordered all discovery tasks—including service of Plaintiffs' expert witness reports—to be completed no later than March 1, 2023.

Plaintiffs did not disclose the required expert report before the March 1, 2023 deadline, and they may not have more time do so. Their request for more time to disclose Dr. Atkas's report, included in their Response on April 17, 2023, is effectively a request to amend the schedule. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Further, in the Fifth Amended Scheduling Order, the parties were "forewarned the schedule will not be extended again except upon the most exceptional of circumstances." Doc. 141 at 2. Plaintiffs knew or should have known Dr. Aktas would require Dr. Stevenson's discovery responses well before the close of discovery on March 1, 2023.[7] A request for more time to prepare a report was due before then. Instead, Plaintiffs make the request now, only in response to Defendants' Motion to exclude, after the close of discovery, and after the civil motions deadline. Because Plaintiffs have not disclosed Dr. Aktas's expert report, and because they have not shown good cause for more time to do so—and have certainly not shown exceptional circumstances—Defendants' request to exclude the testimony of Dr. Aktas is **GRANTED.**

---

[7] Notably, the Court ordered Defendants to produce Dr. Stevenson's net worth information two weeks before the March 1, 2023 deadline. Even if the information was not produced by March 1, 2023 (and no party has informed the Court as to the date the information was actually provided), Plaintiffs were aware of the deadline and the need for additional time to provide Dr. Aktas's report. However, Plaintiffs still did not request any extension until their April 17, 2023 response. Furthermore, there is no indication Plaintiffs have provided an expert report for Dr. Aktas since filing their response. Allowing a late disclosure now would significantly delay resolution of this matter, and Plaintiffs have not demonstrated any justification for extending the schedule further.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Exclude Expert Testimony. Doc. 185. The Court **DENIES** Defendants' Amended Motion to Exclude Expert Testimony because it is untimely. Doc. 190.

A summary of the Court's rulings is as follows:

1. The Court **DENIES** the portion of Defendants' motion concerning Dr. Mikula's testimony. Dr. Mikula is permitted to testify about the opinions in her disclosure under Federal Rule of Civil Procedure 26(a)(2).

2. The Court **DENIES** the portion of Defendants' motion concerning Dr. Armstrong's testimony. Dr. Armstrong is permitted to testify about the opinions in his disclosure under Federal Rule of Civil Procedure 26(a)(2).

3. The Court **GRANTS** the portion of Defendants' motion concerning Dr. Aktas's testimony. Plaintiff has not provided a written report of Dr. Aktas's testimony under Federal Rule of Civil Procedure (a)(2) and the time to do so has passed, so Dr. Aktas is prohibited from offering expert opinion testimony.

**SO ORDERED**, this 22nd day of June, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA