# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CEDRICK FRAZIER and TAMARA
FRAZIER,

    Plaintiffs,

    v.

SOUTHEAST GEORGIA HEALTH
SYSTEM, INC., SHERMAN A.
STEVENSON, M.D., and
COOPERATIVE HEALTHCARE
SERVICES, INC. d/b/a
Southeast Georgia Physician
Associates—Ear, Nose and
Throat,

    Defendants.

2:21-CV-21

**ORDER**

Before the Court are Plaintiffs' objections to the Magistrate Judge's November 8, 2023, report and recommendations (hereinafter "the Report"). Dkt. No. 272. In the Report, the Magistrate Judge recommends that the Court grant Defendants' motion for dismissal sanctions, dkt. no. 184, and dismiss Plaintiffs' complaint with prejudice. Dkt. No. 268. Plaintiffs timely filed objections to the Magistrate Judge's findings, and those objections are now properly before the Court. Dkt. No. 272. After a *de novo* review of the Report, the Court **OVERRULES** Plaintiffs' objections and **ADOPTS** the Magistrate Judge's Report as supplemented herein. Defendants'

motion for dismissal sanctions, dkt. no. 184, is **GRANTED**, and Plaintiffs' complaint is **DISMISSED with prejudice.**

### BACKGROUND[1]

This is a medical malpractice suit arising out of Plaintiff Cedrick Frazier's (hereinafter "Mr. Frazier") septoplasty performed by Defendant-Doctor Sherman Stevenson (hereinafter "Dr. Stevenson"). Mr. Frazier and his wife, Tamara Frazier, (collectively "Plaintiffs") seek damages based on claims of professional negligence, negligence per se, and loss of consortium. See generally Dkt. No. 77. Specifically, Plaintiffs allege that, following the septoplasty, Dr. Stevenson left gauze or packing in Mr. Frazier's nasal cavity, and those foreign items remained there until Dr. Stevenson removed them weeks later. Id. ¶ 41. Plaintiffs claim Dr. Stevenson's failure to remove the foreign objects caused Mr. Frazier serious pain and injury. Id. ¶ 15. Defendants deny that Dr. Stevenson left anything in Mr. Frazier's nasal cavity. See, e.g., Dkt. No. 82 ¶ 15.

The issue before the Magistrate Judge, and now before the undersigned, centers around a video produced by Plaintiffs, which shows a mound of bloody materials in a kidney-shaped dish. Plaintiffs claim Mr. Frazier took the video (hereinafter "the

---

[1] The background provided here is a summary of the relevant facts. For a detailed recitation of the facts, see generally dkt. no. 268.

YouCut Video") during his follow-up visit in Dr. Stevenson's office, the Southeast Georgia Physician Associates—Ear Nose and Throat ("SGPA-ENT") office suite (hereinafter "Suite 480"),[2] on February 25, 2020. Dkt. No. 77 ¶ 42. The title, "YouCut Video," is used because the video was created when Mr. Frazier combined two separate, original videos (which he allegedly recorded on his cell phone) in the YouCut video editing app. "At the hearing on Defendants' Motion, the parties generally referred to the video as the 'YouCut Video.' The Court uses the same term here." Dkt. No. 268 at 3 n.1. The original videos used to create the YouCut Video were requested, but Plaintiffs never produced them.

The YouCut Video allegedly shows Mr. Frazier shortly after Dr. Stevenson had removed the foreign objects from his nasal cavity and "gauze packing and blood clots that were removed from his nasal cavity and placed in a kidney basin." Id. After Plaintiffs produced the YouCut Video, they filed a second amended complaint, and therein, Plaintiffs rely on the video as support for their allegations.[3] See id. ¶¶ 42, 116. As part of an initial challenge to the YouCut Video's authenticity, Defendants requested the

---

[2] Suite 480 is Dr. Stevenson's office suite located in the Southeast Georgia Physician Associates building on the Southeast Georgia Health Systems Brunswick Campus. It houses several exam rooms, including exam rooms 1, 2, and 3, which are relevant to this case.
[3] Plaintiffs neither mentioned nor relied upon the YouCut Video in their initial complaint or their first amended complaint. See generally Dkt. Nos. 1, 36.

3

original video files, along with the associated metadata, recorded on Mr. Frazier's phone. Plaintiffs did not produce the original videos, but they did provide a screenshot of an original video that purportedly shows some of the video's metadata. See Dkt. No. 53 at 2. Ultimately, the Magistrate Judge ordered Plaintiffs to provide Defendants' expert, Vicente Rosado, with Mr. Frazier's phone. Dkt. No. 58. Even the expert was unable to locate the original video files and could not determine whether the YouCut Video was authentic. See generally Dkt. No. 184-1. Following that initial dispute, Plaintiffs requested to inspect Suite 480 and have a videographer record the inspection. Dkt. No. 55. The Magistrate Judge granted their request, and on October 5, 2021, Plaintiffs conducted their walkthrough of Suite 480. Dkt. No. 64. "Plaintiffs and Defendants both had their own videographers present for the inspection." Dkt. No. 268 at 6. The inspection revealed significant discrepancies between the features of the room in the YouCut Video and the room where the exam occurred.

Thereafter, Defendants filed the motion presently before the Court, a motion to dismiss Plaintiffs' suit as a sanction for fabricating the YouCut Video. Dkt. No. 184. Defendants argue that the YouCut Video could not have been recorded in Suite 480 during Mr. Frazier's February 25, 2020, follow-up visit because the room shown in the YouCut Video is visibly inconsistent with the exam rooms in Suite 480. Plaintiffs, on the other hand, maintain that

Mr. Frazier recorded the YouCut Video in Suite 480 immediately following his appointment with Dr. Stevenson. After an evidentiary hearing on the motion, the Magistrate Judge issued the Report, finding that the YouCut Video was indeed fabricated. Dkt. No. 268. He ultimately recommended the Court dismiss Plaintiffs' suit with prejudice. Id. Plaintiffs filed timely objections to the Magistrate Judge's factual findings and legal conclusions. Dkt. No. 272.

## STANDARD OF REVIEW

District courts have a duty to conduct a "careful and complete" review of a Magistrate Judge's report and recommendation. Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (quotations omitted). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the [Magistrate Judge]." 28 U.S.C. § 636(b)(1). "A timely objection to a Magistrate Judge's Report . . . requires a district court to review the objected-to findings or recommendations de novo." Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1308 (11th Cir. 2016) (citing 28 U.S.C. § 636(b)(1)). During an evidentiary hearing, like the one conducted in this case, the Magistrate Judge "sits as both factfinder and assessor of credibility." Castellano Cosm. Surgery Ctr., P.A. v. Rashae Doyle, P.A., No. 8:21-cv-1088, 2021 WL 3188432, at *4 (M.D. Fla. July 28, 2021) (citing Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d

5

1205, 1211 (11th Cir. 2003)). Thus, the Court "should defer to the magistrate judge's [credibility] determinations unless his understanding of the facts appears to be unbelievable." <u>United States v. McGregor</u>, No. 18-cr-20584, 2018 WL 5778235, at *1 (S.D. Fla. Nov. 2, 2018) (citing <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749 (11th Cir. 2002)).

## DISCUSSION

The Court first addresses Plaintiffs' request for oral argument on this matter. <u>See</u> Dkt. No. 272 at 1 ("Plaintiffs request oral argument . . . under Local Rule 7.2 remotely via Zoom due to distance as counsel is based out of Middle Tennessee."). On September 18, 2023, the Magistrate Judge conducted an evidentiary hearing that lasted nearly four hours—the hearing began at 2:03 P.M. and ended at 5:52 P.M. <u>See generally</u> Dkt. No. 269. The Court's stenographer has since produced a transcript of the proceedings, during which the parties had the opportunity to make extensive arguments.[4] Based on the transcript, ample record evidence, and the parties' exhaustive briefing on both Defendants' motion and

---

[4] The Magistrate Judge gave each side one and one-half hours to make their arguments during the hearing. Dkt. No. 269 at 2:22–2:23 ("Each side will have one and a half hours to present."). During that time, each side called witnesses and were allowed extensive cross-examination of each witness. At the conclusion of Plaintiffs' time, the Magistrate Judge even allowed Plaintiffs' counsel extra time to make additional argument. <u>Id.</u> at 127:4–127:6.

Plaintiffs' objections,[5] the Court finds additional oral argument would be duplicative and unnecessary. See United States v. Raddatz, 447 U.S. 667, 674-84 (1980) (finding that a district court is neither constitutionally nor statutorily required to hold a hearing when conducting its review of a magistrate judge's report and recommendations); see also S.D. Ga. LR 7.2 (stating the Court has discretion in granting a party's request for a hearing, as the Court "*may* allow oral argument" (emphasis added)). Therefore, Plaintiffs' request for oral argument is **DENIED.**

Before turning to Plaintiffs' actual objections to the Report, the Court next handles Plaintiffs' complaints about the nature of the September 18, 2023, evidentiary hearing before the Magistrate Judge. Plaintiffs maintain that the September 18, 2023, hearing was not an "evidentiary hearing." See, e.g., Dkt. No. 275 at 2. Additionally, they argue that they lacked "sufficient notice" of the allegations against them before appearing at the hearing. Id. at 4 (Plaintiffs "did not have sufficient notice of the fabrication, false testimony, perjury[,] and bad faith as alleged by [] [D]efendants in their [response to Plaintiffs' objections]." (citing Dkt. No. 273)). They are wrong on both counts.

---

[5] Following Plaintiffs' objections, Defendants filed a response, dkt. no. 273, Plaintiffs filed a reply, dkt. no. 275, Defendants filed a sur-reply, dkt. no. 277, and Plaintiffs filed a sur-sur-reply, dkt. no. 279.

The September 18, 2023, hearing before the Magistrate Judge was an evidentiary hearing. Not only was each side aware that evidence could be presented, but each side proceeded to present evidence. Each party presented documentary evidence and questioned witnesses. See Evidentiary Hearing, Black's Law Dictionary (11th ed. 2019) (An evidentiary hearing is "[a] hearing at which evidence is presented, as opposed to a hearing at which only legal argument is presented."). No credible argument can be made that the September 18, 2023, hearing was not an evidentiary hearing. Nor can it be asserted that Plaintiffs were unaware that they would have an opportunity to present evidence at the evidentiary hearing. Nine days before the hearing was to commence, the Magistrate Judge clarified, "at the August 30, 2023, hearing, the parties will be permitted to present evidence and argument related to Defendants' motion." Dkt. No. 234 at 1. Hurricane Idalia necessitated a postponement of the hearing, giving the parties even longer to prepare. See generally Dkt. No. 239.

The Court can dispose of any "lack of notice" argument with similar ease. Plaintiffs certainly had notice of Defendants' allegation that Mr. Frazier fabricated the YouCut Video. See, e.g., Dkt. No. 184 at 4 ("Mr. Frazier fraudulently manufactured evidence."). Plaintiffs had notice that Defendants were seeking dismissal of this case as a sanction. Defendants requested just that in writing. See generally id. To hammer home the consequential

nature of the hearing, the Magistrate Judge denied Plaintiffs'
motion to appear remotely. <u>See</u> Dkt. No. 234 at 1 ("Given the issues
raised in Defendants' motion and the potential consequences,
counsel and the parties must appear in person."). The authenticity
of the YouCut Video was properly before the Magistrate Judge, and
Plaintiffs had sufficient opportunity to refute Defendants'
allegations.

Plaintiffs' initial objections about the nature of the
proceedings are without merit. The Court now turns to Plaintiffs'
objections to the Report. Plaintiffs offer objections to the
Magistrate Judge's factual findings as well as his legal
conclusions. As with the quibbles about the nature of the
proceedings, the actual objections to the Report lack merit. The
Court first addresses Plaintiffs' factual objections.

**I.  Plaintiffs' objections to the Magistrate Judge's factual
findings**

The Report lists nine proposed findings of fact. <u>See</u> Dkt. No.
268 at 33. Before arriving at those findings, however, the
Magistrate Judge completed an exhaustive review of the record
evidence and identified any relevant factual disputes. <u>See id.</u> at
23–33. Plaintiffs object to proposed findings 2, 3, 4, 5, 6, 7, 8,
and 9. Dkt. No. 272 at 6–8.

a.  **Proposed Findings 2, 6, and 8**

As a threshold matter, the Court first addresses Plaintiffs' objections to proposed findings 2, 6, and 8. Plaintiffs argue that these three facts are simply "not supported by clear and convincing evidence." See id. at 6–8.  The Court finds that the Magistrate Judge's review of the record was more than adequate, and moreover, all nine proposed findings of fact are supported by clear and convincing evidence in the record. For that reason, Plaintiffs' bare-bones objections to proposed findings 2, 6, and 8 are **OVERRULED**. Plaintiffs object to proposed findings 3, 4, 5, 7, and 9 for more detailed reasons.

b.  **Proposed Finding 3**

Proposed finding 3 states: "Plaintiffs produced the YouCut Video to Defendants during discovery on July 15, 2021." Dkt. No. 268 at 33. Plaintiffs "object" to this finding, stating that they "produced the 8-second mp4/video and the 5/27/2020 audio recording on July 15, 2021." Dkt. No. 272 at 7. This is more of a semantic fight than an objection. Throughout the Report, the Magistrate Judge refers to the "8-second mp4/video" as "the YouCut Video." See Dkt. No. 268 at 3 ("The disputed video (the 'YouCut Video') is eight seconds long."); Id. at 3 n.1 ("At the hearing on Defendants' Motion, the parties generally referred to the video as the 'YouCut Video.' The Court uses the same term here."). So Plaintiffs' statement—that they produced the "8-second mp4/video" on July 15,

2021—actually supports the Magistrate Judge's proposed finding. Plaintiffs may prefer their own nomenclature over that of the Magistrate Judge, but the naming of the disputed video provides no grounds to disturb the Magistrate Judge's factual finding. Plaintiffs' objection to proposed finding 3 is **OVERRULED**.

### c. Proposed Finding 4

In their objection to proposed finding 4, Plaintiffs again object based on semantics. Proposed finding 4 provides: "The YouCut Video is an electronic file created using the YouCut video editing application." Id. at 33. Plaintiffs object to this finding, arguing that, according to their forensics expert, Mr. Stafford, "[t]he YouCut Video is 'an original YouCut file.'" Dkt. No. 272 at 7 (quoting Dkt. No. 272-8 at 87:8). Well, yes, but that does not undermine the Magistrate Judge's proposed finding that the YouCut Video was created using the YouCut video application. In fact, Mr. Stafford's testimony supports the Magistrate Judge's proposed finding because his theory is that Mr. Frazier took two video files originally recorded on Mr. Frazier's cellphone and "put them together in YouCut."[6] Dkt. No. 272-8 at 87:16-17. Too, the Magistrate Judge noted that "[t]he parties all agree Mr. Frazier

_____

[6] Mr. Stafford further theorizes that the YouCut Video "could very well be the representation of exactly those two components." Dkt. No. 272-8 at 87:19-20. This is also not inconsistent with proposed finding 4, which merely states that the YouCut Video file was created using the YouCut application.

created the YouCut Video using an editing application named
YouCut." Dkt. No. 268 at 4. This is evidenced by Plaintiffs' own
acknowledgement that the YouCut Video is not the "original" video
recorded on Mr. Frazier's phone. See, e.g., Dkt. No. 54 at 6
("Plaintiffs went on a search to locate the *original* 13-second
video file once it was brought to their attention, and recently
discovered and have produced a 3-second *original* file of the kidney
basin clip . . . . Mr. Frazier advised and will testify under oath
that various *original* files may have been corrupted and [are] now
unable to be located." (emphasis added)). Even in their very next
objection to the Report's proposed findings, Plaintiffs accept
that the YouCut Video is not an original recording. See Dkt. No.
272 at 7 ("Portions of the original YouCut file were produced—8
seconds out of the 13 seconds."). Plaintiffs' objection to proposed
finding 4 is **OVERRULED**.

   d.  **Proposed Finding 5**

   Next, Plaintiffs object to proposed finding 5, which states:
"The original video file or files used to create the YouCut Video
were not produced by Plaintiffs in discovery. The original video
file or files were deleted from Mr. Frazier's electronic device
and are unrecoverable." Dkt. No. 268 at 33. Plaintiffs contend,
without citing to the record, that "[p]ortions of the original

YouCut file were produced—8 seconds out of the 13 seconds."[7] Dkt. No. 272 at 7. To the extent Plaintiffs argue that they produced an original video file, their argument is not supported by the record. Besides the YouCut Video, Plaintiffs produced only one other video—another 8-second version of the YouCut Video. See Dkt. No. 53 ("Plaintiffs' counsel provided [] Defendants' counsel with . . . another version of the video."). As of the date of this Order, Plaintiffs have never produced the two original videos used to make the one they created and produced. Plaintiffs' objection to proposed finding 5 is **OVERRULED**.

**e. Proposed Finding 7**

Proposed finding 7 provides, in relevant part: "On October 5, 2021, Suite 480 exam rooms 1, 2, and 3 each had . . . blue-green walls."[8] Dkt. No. 268 at 33. Plaintiffs object to this proposed

---

[7] Plaintiffs also assert that "[m]etadata of Jpg images from the video was recovered by Plaintiffs' expert Jim Stafford and admitted as exhibits during the 9/18/2023 hearing." Dkt. No. 272 at 7. But like many other objections offered by Plaintiffs, this does not actually dispute proposed finding 5. Proposed finding 5 states that Plaintiffs did not produce "original *video* file or files used to create the YouCut Video." Dkt. No. 268 at 33 (emphasis added). Metadata and images are not video files. The Magistrate Judge recognized this distinction, acknowledging that "Plaintiffs produced a screenshot image from Mr. Frazier's cellphone . . . [that] contain[ed] information . . . about one of the original video files used to create the YouCut video." Id. at 5. But the Magistrate Judge noted that "the original video described in [that screenshot] was not produced." Id.

[8] As previously mentioned, Plaintiffs conducted a walkthrough inspection of Suite 480 on October 5, 2021. Proposed finding 7 is based on the video produced from that inspection.

finding because they claim the exam rooms had "[v]isibly, fresh painted blue-green walls." Dkt. No. 7 at 7. To support their argument, Plaintiffs rely on testimony of their forensics expert, Mr. Stafford. See Dkt. No. 272-8 at 73-80, 88-90. There are multiple problems with Plaintiffs' argument, none more devastating than the fact that the record in no way supports it. Mr. Stafford never states that the blue-green walls in Suite 480 were "visibly, fresh painted." His actual testimony is markedly different. His only assertion regarding paint color is that "the colors in [the YouCut Video] are really unreliable" because "[t]here's obviously color distortion present." Dkt. No. 269 at 75:4-6. This does not support Plaintiffs' objection to the wall color of the actual room on October 5, 2021. Mr. Stafford is discussing potential issues with the wall coloring not in the inspection video but in the YouCut Video, which was allegedly recorded nearly eight months before. Moreover, Mr. Stafford is Plaintiffs' forensic expert. He is not an expert regarding paint properties such as color and age. Even if his opinion was that the walls were freshly painted on October 5, 2021—which he decidedly does not express—the Court would be unable to find it persuasive. And lastly, ample evidence that actually is in the record supports proposed finding 7 and refutes Plaintiffs' assertion that the walls were freshly painted. For

example, Shawn Crosby's[9] affidavit and testimony provide that "the paint color in the exam rooms in Suite 480 . . . has been the same since its build-out," and it is "a blue-green or greenish-blue color." Dkt. No. 184-2 at 171; see also Dkt. No. 272-8 at 55:22–56:2 (Mr. Crosby's testimony). Aside from Plaintiffs' wishful yet inaccurate assertion, there is nothing in the record to support a finding that the walls were "visibly, fresh painted." Plaintiffs' objection to proposed finding 7 is **OVERRULED**.

### f.  Proposed Finding 9

Finally, Plaintiffs object to proposed finding 9, which states: "Mr. Frazier did not record the YouCut Video or the videos used to make the YouCut Video in Suite 480 [during his follow-up visit] on February 25, 2020." Dkt. No. 268 at 33. Plaintiffs object to this proposed finding for three reasons: (1) because it is "[n]ot shown by clear and convincing evidence;" (2) because it is "[c]onclusory;" and (3) because it "is a genuine issue of material fact that goes to credibility to be determined by the jury." Dkt. No. 272 at 8. As previously discussed, the Court finds that all nine proposed findings are supported by clear and convincing evidence, so Plaintiffs' first argument fails.

---

[9] "Shawn Crosby is the project manager and former 'environment of care manager'" for Southeast Georgia Health System. Dkt. No. 268 at 14. He was "involved in the original build-out" of Suite 480 in 2012, and he has "been involved in maintenance of the suite ever since." Id. (citing Dkt. No. 184-2 at 170).

As to Plaintiffs' second reason—that proposed finding 9 is "conclusory"-Plaintiffs rely on a Ninth Circuit decision for support. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) ("The court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Sprewell is wholly unpersuasive to Plaintiffs' argument because, in that case, the Ninth Circuit was determining whether a complaint failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Id. Proposed finding 9 is not an "allegation" in a complaint. It is a finding made by a Federal Magistrate Judge. Sprewell does not apply.

In the event Plaintiffs are arguing that proposed finding 9 is "conclusory" because it is not supported by evidence, Plaintiffs are wrong. See Batista v. S. Fla. Woman's Health Assocs., 844 F. App'x 146, 159 (11th Cir. 2021) ("[T]o withstand challenge, a factual finding by a court has to be supported by evidence."). It is not necessary to re-hash the Magistrate Judge's entire analysis of the relevant evidence, but to ensure Plaintiffs' objection is adequately considered, the Court will point out some key considerations that are sufficient to support proposed finding 9. First, the follow-up appointment, where Dr. Stevenson allegedly removed foreign objects from Mr. Frazier's nose, occurred in one of three exam rooms in Suite 480. Plaintiffs testified that the appointment occurred in Suite 480 and that Mr. Frazier recorded

16

the YouCut Video in one of the exam rooms. Dkt. No. 65-1 at 9, 35-38. In all fairness to Plaintiffs, they both claim they cannot remember *which* exam room was utilized. But again, they "reject any notion" that the follow-up appointment occurred anywhere other than Suite 480. Dkt. No. 268 at 27 (relying on both Plaintiffs' deposition testimony and statements made at the evidentiary hearing). Dr. Stevenson testified that he only sees patients in one of the three exam rooms in Suite 480 and has only seen patients there for a number of years. See Dkt. No. 269 at 24:6-8, 33:9-34:10. Plus, "[t]here is no contrary evidence suggesting Dr. Stevenson ever used any other exam room in Suite 480" to see patients. Dkt. No. 268 at 27-28. It follows that "Dr. Stevenson examined Mr. Frazier on February 25, 2020, in Exam Room 1, 2, or 3 in Suite 480."[10] Id. at 28. Second, the appearance of Suite 480 (and its exam rooms) did not materially change between Mr. Frazier's follow-up appointment on February 25, 2020, and the walkthrough inspection on October 5, 2021. Both Dr. Stevenson and Mr. Crosby testified that the rooms had not changed in appearance. See Dkt. No. 269 at 24:11-28:22 (Dr. Stevenson); Id. at 54:9-61:1 (Mr. Crosby). Crucially, Mr. Crosby provided maintenance records

---

[10] Even if the follow-up exam occurred in an exam room other than 1, 2, or 3 in Suite 480, the ultimate conclusion that Mr. Frazier did not record the YouCut Video in Suite 480 would remain the same. Dkt. No. 268 at 29 ("[T]here are other exam rooms in Suite 480 other than exam rooms 1, 2, and 3, but those other exam rooms are materially identical to exam rooms 1, 2, and 3.").

to support this conclusion. Dkt. No. 184-2 at 178-83. In response, "Plaintiffs offer only unsupported speculation about the sufficiency of the evidence Defendants presented to the Court." Dkt. No. 268 at 30. Put another way, there is no actual evidence to support finding the exam rooms' appearance had changed following Mr. Frazier's follow-up appointment.

Notably, the exam room shown in the YouCut video is materially different from Exam Rooms 1, 2, and 3 in Suite 480 in important respects. The Report painstakingly details the differences, but briefly, the ceiling configurations, wall colors, drawer pulls, cabinet colors, and medical supply containers shown in the YouCut Video are all visibly different from those of the exam rooms in Suite 480.[11] Based on the foregoing, ample record evidence supports proposed finding 9. Indeed, this is exhibited by the Magistrate Judge's exhaustive review of all evidence. Proposed finding 9 is not conclusory in any sense of the word.

Plaintiffs' third reason for objecting to proposed finding 9 is also unpersuasive. Plaintiffs argue that proposed finding 9 "[i]mproperly relies on findings as to the credibility of parties and witnesses which must be reserved for the jury." Dkt. No. 272 at 8. This argument is more thoroughly addressed in Section III

---

[11] The Court has reviewed both the YouCut Video and the video of Plaintiffs' walkthrough of Suite 480, and the referenced material differences are visible for all to see upon comparing both videos.

infra. But suffice it to say at this point that the assertion that credibility determinations cannot be made by a magistrate judge during evidentiary hearings is incorrect. In the proper context, courts "should defer to the magistrate judge's determinations unless his understanding of the facts appears to be unbelievable." McGregor, 2018 WL 5778235, at *1 (citing Ramirez-Chilil, 289 F.3d at 749). In the present case, the Magistrate Judge's understanding of the facts is not unbelievable and his determinations, including any of credibility, are well-founded. Thus, the Court **ADOPTS** any credibility determinations he made. At bottom, the Court is not persuaded by any of Plaintiffs' arguments against proposed finding 9. Their objections are therefore **OVERRULED**.

### g. Request to Add Findings

In addition to their objections to the Report's proposed findings of facts, Plaintiffs ask the Court to adopt eight additional proposed findings of fact.[12] Dkt. No. 272 at 8. The

---

[12] The additional findings of fact proposed by Plaintiffs are:

1. There was no final sponge count verification by [Defendants] on 1/21/2020, according to the surgery record.
2. The surgical operative report on 1/21/2020 shows that pledgets were used during the surgery, but do not show that they were taken out.
3. Dr. Mikula testified at her deposition that she recognized a pledget in the kidney basin from the video and/or still images.
4. There is [] metadata from two JPEG images taken from the video showing they were created on 2/25/2020 at 3:29:53 p.m. and another at 3:26:50 p.m. [The Report] talks about

Court hereby **OVERRULES** that request. All eight additional proposed findings offered by Plaintiffs are based on evidence that was squarely before the Magistrate Judge and sufficiently analyzed within the Report. The Court has access to the entire record in ruling on Plaintiffs' objections, and therefore, it may consider that evidence if necessary to reach its conclusion. It is unnecessary to adopt Plaintiffs' additional proposed findings.[13]

---

[a] thumbnail in Screenshot 1 depicting Mr. Frazier reaching for his nose, but he does not do so in the YouCut. Missing portions of video would likely show Mr. Frazier reaching for his nose.

5. There are a total of 13 exam rooms identified on the Buildout of the CHSI/SGPA-ENT Suite.

6. Out of up to 10 suites in the same building as [Suite 480], half or 50% are off-beige in color. When asked this question, Mr. Crosby stated, "I'm sure."

7. Mr. Crosby, defense fact witness, has no idea of the date that he went back to Suite 480 and removed the light switch plate in Exam Rooms 1, 2, and 3 to see if there was a different color paint underneath; has no idea when he wrote his own affidavit; he is not sure when he "got brought in" to start dealing with this case; and he took no picture at the time he removed the light switch plate to memorialize his allegation in his sworn statement.

8. [Defendants] did not show the Court what each of the 13 exam rooms looked like, especially the ceiling and lights in each room before and/or on 2/25/2020. The defendants have the burden of proving bad faith, which clearly embraces fabricating or destroying evidence and then lying about doing so. The defendants did not prove that [Plaintiffs] fabricated or destroyed evidence and then that they lied about doing so by clear and convincing evidence. There are no proposed findings of fact that support the conclusory allegations made against [Plaintiffs].

Dkt. No. 272 at 8-10 (internal citations omitted).
[13] Even if the Court did adopt Plaintiffs' additional proposed findings of fact, most would not have any effect on the Court's

## II.  Plaintiffs' objections to the Magistrate Judge's legal conclusions

Having discussed Plaintiffs' objections to the Report's factual findings, the Court now turns to Plaintiffs' objections to the Magistrate Judge's legal conclusions. The Magistrate Judge's ultimate recommendation is to dismiss Plaintiffs' suit with prejudice as a sanction for fabricating the YouCut Video. Dkt. No. 268 at 45.  In reaching that conclusion, the Magistrate Judge found: (1) Plaintiffs "willfully fabricated video evidence in bad faith to bolster a pivotal claim in this case," and (2) "other, lesser sanctions" were "inadequate." Id. at 41, 45.

### a.  Legal Standard

It is within a court's inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); see also Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d

---

decision. For example, Plaintiffs' first additional proposed finding has absolutely no bearing on the Court's determination of whether to levy sanctions. As discussed later in this Order, evidence that goes to the veracity of Plaintiffs' claims in general is not relevant to the Court's decision on the specific matter of whether Plaintiffs fabricated the YouCut Video. See infra p. 42-43. Likewise, Plaintiffs' sixth proposed finding is extraneous. Plaintiffs maintain that Mr. Frazier recorded the YouCut Video in Suite 480. See Dkt. No. 268 at 37. The paint color of other suites is unimportant. In fact, the only additional proposed finding that would have any bearing on the Court's decision is proposed finding 8, which directly contradicts the Magistrate Judge's proposed finding 9. For the same reasons the Court adopts the Magistrate Judge's proposed finding 9, the Court declines to adopt Plaintiffs' eighth additional proposed finding. See supra pp. 15-19.

1332, 1335 (11th Cir. 2002) ("Courts have the inherent authority to control the proceedings before them, which includes the authority to impose reasonable and appropriate sanctions." (citations omitted)). "To exercise its inherent power a court must find that the party acted in bad faith." Id. (citations omitted). "Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." Quantum Commc'ns Corp. v. Star Broad, Inc., 473 F. Supp. 2d 1249, 1268-69 (S.D. Fla. 2007) (quoting Allapattah Servs. v. Exxon Corp., 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005)). As it pertains to this case, "the concept of bad faith clearly embraces fabricating or destroying evidence and then lying about doing so." Oniha v. Delta Airlines, Inc., No. 1:19-CV-5272, 2021 WL 4930127, at *4 (N.D. Ga. Sept. 13, 2021), aff'd, No. 21-13532, 2022 WL 580933 (11th Cir. Feb. 25, 2022); see also Quantum Commc'ns, 473 F. Supp. 2d at 1269 ("[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." (citations omitted)).

Even though "outright dismissal of a law suit . . . is a particularly severe sanction, [it] is within the court's discretion." Chambers, 501 U.S. at 45 (citations omitted); see also Martin, 307 F.3d at 1335 (affirming a district court's

sanction of dismissal with prejudice). To determine whether outright dismissal is an appropriate sanction, the Eleventh Circuit requires a lower court to make two findings: "There must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate." Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006) (citing Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1339 (11th Cir. 2005)). Because "the need for sanctions is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case," courts have often dismissed suits with prejudice where a party destroys or fabricates evidence that was offered in support of their substantive claims. Quantum Commc'ns, 473 F. Supp. 2d at 1269 (collecting cases).

### b. Plaintiffs' Objections

Plaintiffs may be objecting to the Magistrate Judge's recommendations in their entirety, as their objections do not specifically identify which legal conclusions they find objectionable.[14] See Dkt. No. 272 at 10–24. In general, Plaintiffs'

---

[14] In offering non-specific objections, Plaintiffs ignore the Eleventh Circuit's specificity requirement: "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). The Magistrate Judge also reminded Plaintiffs of this requirement in the Report. See Dkt. No. 268 at 46 ("Objections not meeting the specificity requirement set out above will not be considered by a District Judge."). Yet, Plaintiffs still filed non-specific, and frankly unclear, objections. Nevertheless, because Defendants' motion for dismissal sanctions is a dispositive motion that could result in

objections appear to be centered around three of the Magistrate Judge's findings. First, Plaintiffs object to the Magistrate Judge's finding that this case warrants the Court's exercise of its inherent power. Second, they object to the Magistrate Judge's finding that Plaintiffs willfully fabricated the YouCut video. And third, they object to the Magistrate Judge's finding that dismissal is the proper sanction. The Court **OVERRULES** all Plaintiffs' objections[15] and independently addresses the reasons for each below.

1. **This case warrants exercise of the Court's inherent authority.**

A Court's inherent authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious

---

a dismissal of the case with prejudice, the Court has endeavored to identify Plaintiffs' specific objections.

[15] The Court notes one other issue not framed as an objection. No party has requested recusal of the undersigned or the Magistrate Judge. And that is understandable, as no grounds for recusal exist. Nevertheless, in the conclusion of Plaintiffs' sur-sur-reply, they "request" that the Court "consider" the Eleventh Circuit decision in Szanto v. Bistritz, 743 F. App'x 940 (11th Cir. 2018). Dkt. No. 279 at 21. In Szanto, the Eleventh Circuit held that the trial court erred by dismissing with prejudice a case without finding that lesser sanctions were inadequate. Id. at 942. The Eleventh Circuit then outlined the factors it considers in deciding whether to reassign a case upon remand and found no cause for reassignment. Id. at 943. Szanto does not apply here because the Court has carefully and explicitly found both willful conduct and that lesser sanctions are inadequate. Further, it is not the place of a district court to decide reassignment should it ever be considered. But to be clear, the Court is aware of no factor that would support either recusal or reassignment.

disposition of cases." <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 630−31 (1962). As part of that authority, courts may "fashion an appropriate sanction for conduct which abuses the judicial process." <u>Chambers</u>, 501 U.S. at 44−45. Before exercising its inherent power, though, "a court must find that the party acted in bad faith." <u>Martin</u>, 307 F.3d at 1335 (citing <u>In re Mroz</u>, 65 F.3d 1567, 1575 (11th Cir. 1995)). Here, the Magistrate Judge found that Plaintiffs fabricated the YouCut Video in bad faith, and thus, he recommended the Court impose sanctions based upon its inherent power. Plaintiffs offer two objections to that recommendation. First, they argue that exercise of the Court's inherent power is improper without finding that Plaintiffs violated a court order or procedural rule. And second, Plaintiffs argue that their conduct constituted neither an abuse of the judicial process nor a fraud upon the Court. Both objections are **OVERRULED**.

### A. Exercise of the Court's inherent authority does not require a finding that Plaintiffs violated a court order or procedural rule.

Plaintiffs initially argue that a court may "exercise [] its inherent sanctioning powers" only upon a finding that a party violated a "court order or procedural rule." Dkt. No. 272 at 10. And because the Magistrate Judge "did not make a finding of disobedience," Plaintiffs contend any sanctions based on the Court's inherent power would be improper. <u>Id.</u> Plaintiffs' argument in this respect is wrong. "The key to unlocking a court's inherent

power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing Mroz, 65 F.3d at 1575). And "[a] party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation *or* hampering enforcement of a court order." Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (emphasis added). Bad faith does not require a finding of a party's disobedience of a court order or procedural rule. Still, Plaintiffs argue otherwise, relying on Eleventh Circuit guidance regarding sanctions under a court's inherent power: "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017). But in relying on that language, Plaintiffs ignore the Eleventh Circuit's most relevant pronouncement in that very same opinion: "A court may exercise [its inherent] power to sanction the willful disobedience of a court order[] *and* to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 851 F.3d at 1223 (emphasis added) (internal quotations omitted). Too, district courts routinely invoke their inherent power to sanction parties where no court order or procedural rule has been violated. See, e.g., Quantum Commc'ns, 473 F. Supp. 2d at 1269 (collecting cases) ("[T]he inherent powers doctrine is most

26

often invoked where a party commits perjury or destroys or doctors evidence.").

In summary, "the inherent-powers standard is a subjective bad-faith standard" that does not require a finding of a party's disobedience. <u>Purchasing Power</u>, 851 F.3d at 1223. And because "the concept of bad faith clearly embraces fabricating or destroying evidence and then lying about doing so," exercise of the Court's inherent power is warranted in this case. <u>Oniha</u>, 2021 WL 4930127, at *4. Contrary to Plaintiffs' argument, the conduct in this case—doctoring evidence—is "most often" the cause for invoking the inherent powers doctrine. Thankfully, standards of conduct have not deteriorated so far that an order warning litigants not to doctor evidence is required before a court can impose sanctions for doctoring evidence.

**B. Plaintiffs abused the judicial process and committed fraud upon the court.**

Next, Plaintiffs argue that the Court's use of its inherent power is improper because Plaintiffs did not abuse the judicial process and did not commit fraud upon the court. Plaintiffs argue that, regardless of the YouCut video's authenticity, the Court cannot exercise its inherent power because: the conduct at issue occurred before the instant litigation; Plaintiffs produced the YouCut video to Defendants during discovery; and Plaintiffs "turned over their cell phone in compliance with this Court's

Order." Dkt. No. 272 at 13–14. Each argument is specious, but given the Court's ultimate conclusion, it is nonetheless appropriate to address all of it.

In their objections, Plaintiffs ostensibly treat abuse of the judicial process and fraud upon the court as two additional requirements for a court's use of its inherent power. But that is wrong. Under Eleventh Circuit precedent, "[t]he key to unlocking a court's inherent power is a finding of bad faith." Barnes, 158 F.3d at 1214 (citations omitted); see also Oniha v. Delta Air Lines, Inc., No. 21-13532, 2022 WL 580933, at *2 n.4 (11th Cir. Feb. 25, 2022) ("[T]he 'fraud on the court' standard comes from our precedents interpreting the requirements for a motion for relief from judgment, not the conditions under which a court may exercise its inherent power to dismiss a pending case."). Regardless of the method, the conclusion remains the same: The Magistrate Judge found Plaintiffs' conduct warranted use of the Court's inherent power because Plaintiffs acted in bad faith. In fabricating evidence presented to the Court, Plaintiffs abused the judicial process and committed a fraud upon the court. See, e.g., Quantum Commc'ns, 473 F. Supp. 2d at 1268–69 ("Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the

28

enforcement of a court order." (quoting <u>Allapattah Servs.</u>, 372 F. Supp. 2d at 1373)). In the event an explicit finding of judicial abuse and fraud upon the court is necessary, the Court emphatically makes that finding now. Plaintiffs abused the judicial process and committed fraud upon the court when they fabricated the YouCut video and submitted it to Defendants during discovery. <u>See</u> Dkt. No. 268 at 39 ("[Plaintiffs] deliberately staged the YouCut Video scene and created fake, bloody foreign items, all for the purpose of manufacturing evidence to use in this case against Defendants.").

The YouCut Video was hardly a minor sidepiece. As shown by Plaintiffs' reliance on the YouCut Video in multiple filings with the Court, the YouCut Video was a centerpiece of Plaintiffs' case. For example, Plaintiffs relied upon the YouCut Video in their second amended complaint. <u>See, e.g.</u>, Dkt. No. 77 ¶ 42 ("During the [follow-up] office visit, Mr. Frazier video recorded with his cell phone the gauze packing and blood clots that were removed from his nasal cavity and placed in a kidney basin."); <u>Id.</u> ¶ 116 (same). This conduct alone is enough to justify the Court's use of its inherent authority to sanction Plaintiffs. <u>See, e.g.</u>, <u>McDowell v. Seaboard Farms of Athens, Inc.</u>, No. 95-609-CIV-ORL-19, 1996 WL 684140, at *2 (M.D. Fla. Nov. 4, 1996) ("When a party fabricates evidence purporting to substantiate its claims, federal case law

is well established that dismissal is appropriate." (citations omitted)).

Plaintiffs' contention that any surreptitious conduct—presumably manufacturing the YouCut Video—occurred before this litigation began is not only unpersuasive but also unsubstantiated. Plaintiffs fabricated evidence, provided it to Defendants during discovery, referenced and relied upon the fabricated evidence in pleadings filed in this Court, and fraudulently testified to its authenticity under oath. Plaintiffs abused the judicial process. They committed fraud upon the court. Accordingly, the Court affirms the Magistrate Judge's finding of bad faith conduct and **OVERRULES** Plaintiffs' relevant objections. Exercise of the Court's inherent power to sanction Plaintiffs is appropriate.

**2. Plaintiffs willfully fabricated the YouCut video.**

Once a court unlocks use of its inherent power by finding a party has acted in bad faith, the next step is to determine the appropriate sanction. "[O]utright dismissal of a law suit . . . is a particularly severe sanction," but it is "within the court's discretion." Chambers, 501 U.S. at 45 (citations omitted). When determining whether an action should be dismissed with prejudice as a sanction, a court must conduct a two-part analysis: "There must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate." Zocaras, 465 F.3d at 483 (citing

Betty K, 432 F.3d at 1339). The Magistrate Judge made separate conclusions as to each part of this analysis, and Plaintiffs object to both. The Court will first analyze Plaintiffs' objections to the Magistrate Judge's finding of willful conduct, i.e., that Plaintiffs willfully fabricated the YouCut Video.[16] Dkt. No. 268 at 41 (Plaintiffs "willfully fabricated video evidence in bad faith to bolster a pivotal claim in this case.").

"[W]illfulness generally connotes intentional action taken with at least callous indifference for the consequences." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996) (quoting Sizzler Fam. Steak Houses v. W. Sizzlin Steak House, Inc., 793 F.2d 1529, 1535 (11th Cir. 1986)). The Magistrate Judge concluded that Mr. Frazier did not record the YouCut video in Suite 480 on February 25, 2020. Dkt. No. 268 at 38. The Magistrate Judge further found "the YouCut Video could not have been created by accident" and "Mr. Frazier deliberately recorded himself and the purported bloody, foreign materials at some unknown location on some unknown date." Id. at 39. Plaintiffs object to this finding because, they

---

[16] A finding of bad faith is a requirement for invocation of a court's inherent power, and a finding of willfulness is a requirement for dismissing a case as a sanction. Normally, these two requirements are analyzed separately. In the Report, however, the Magistrate Judge found that "the bad faith and willful inquiries are largely coextensive." Dkt. No. 268 at 27 n.16. Put another way, "[i]f Plaintiffs fabricated the YouCut video, then they did so both willfully and in bad faith." Id. The Court agrees. There is no evidence that any of this was accidental.

argue, Defendants have not met their burden in proving Plaintiffs willfully fabricated evidence. Dkt. No. 272 at 18. The Court disagrees.

It is Defendants' burden to prove Plaintiffs fabricated the YouCut Video. See, e.g., JTR Enters., LLC v. Colombian Emeralds, 697 F. App'x 976, 987 (11th Cir. 2017) (upholding denial of sanctions because the movant had not "prove[n] that any basis existed for sanctions"); Geiger v. Carnival Corp., No. 16-24753-cv, 2017 WL 9362844, at *7 (S.D. Fla. Oct. 4, 2017) (denying motion to dismiss suit because the movant "failed to meet its burden of showing both a clear record of . . . willful conduct and that lesser sanctions are inadequate" (citing Zocaras, 465 F.3d at 483)), report and recommendation adopted, 2017 WL 9362843 (Oct. 31, 2017). The evidentiary standard for imposing a sanction of dismissal is less clear, but courts in the Eleventh Circuit normally require clear and convincing evidence of the offending party's willful misconduct. Roche Diagnostics Corp. v. Priority Healthcare Corp., No. 2:18-cv-1479, 2020 WL 2308319, at *4 (N.D. Ala. May 8, 2020) (collecting cases); Zocaras, 465 F.3d at 483 (requiring a "*clear* record of willful conduct" before imposing a sanction of dismissal (emphasis added) (citations omitted)); In re Brican Am. LLC Equip. Lease Litig., 977 F. Supp. 2d 1287, 1293 n.6 (S.D. Fla. 2013) (applying a "clear and convincing evidence standard to the request for dispositive sanctions" such as

32

dismissal), <u>report and recommendation adopted</u>, 2013 WL 12092311
(Nov. 15, 2013). Thus, the Court adopts the Magistrate Judge's
application of a clear and convincing evidentiary standard.
Applying that standard, the Magistrate Judge found Defendants, by
providing clear and convincing evidence, met their burden to prove
Plaintiffs willfully fabricated the YouCut Video.

Plaintiffs object to that finding. <u>See</u> Dkt. No. 272 at 20
("[T]here is no clear and convincing evidence provided by []
[D]efendants to prove when the [YouCut Video] was created.").
Specifically, Plaintiffs note that Defendants' forensic expert,
Mr. Rosado, never offered "definite findings" as to when the YouCut
Video was created. <u>See</u> <u>id.</u> ("Mr. Rosado discussed many
possibilities in his affidavit[] but no definite finding of when
the [YouCut Video] was created."). Plaintiffs also argue that,
even if Mr. Rosado had made a definite finding, that finding would
be refuted by Plaintiffs' forensic expert, Mr. Stafford. <u>Id.</u> at
20-21. Plaintiffs' arguments are unpersuasive.

As an initial note, Plaintiffs' assertion that Defendants
must prove when the YouCut Video was recorded neglects an important
fact: Plaintiffs have failed to produce the original videos used
to create the YouCut Video. <u>See</u> Dkt. No. 268 at 33 ("The original
video file or files used to create the YouCut Video were not
produced by Plaintiffs in discovery. The original video file or
files were deleted from Mr. Frazier's electronic device and are

unrecoverable.") . Without those original videos and the associated metadata, Defendants cannot prove when Mr. Frazier recorded the original videos. Indeed, *both* parties' forensic experts, Mr. Rosado and Mr. Stafford, noted the impossibility of determining when the original videos were recorded based on their absence. See Dkt. No. 184-1 (Mr. Rosado's affidavit); Dkt. No. 269 at 80:6-98:1 (Mr. Stafford's testimony). The only affirmative conclusion that Mr. Stafford could reach was when the two original videos were edited together in the YouCut video editing app. See id.

Even if Defendants could somehow prove when the original videos were recorded, it is not their burden to do so. Instead, Defendants' burden is to prove Plaintiffs fabricated the YouCut Video and, more specifically, to prove Mr. Frazier did not record the YouCut Video in Suite 480 on February 25, 2020. See, e.g., Vargas v. Peltz, 901 F. Supp. 1572, 1580 (S.D. Fla. 1995) (requiring clear and convincing evidence that plaintiff fabricated a pair of panties); Pope v. F. Express Corp., 138 F.R.D. 675 (W.D. Mo. 1990), aff'd in relevant part, 974 F.2d 982 (8th Cir. 1992). Pope is particularly instructive in this regard. There, the defendant moved to dismiss as a sanction the plaintiff's sexual harassment suit because the plaintiff fabricated a handwritten note, which she alleged the defendant wrote to her. Id. at 677. Upon review of the evidence, the court found: "Clear and convincing evidence has been presented that plaintiff knowingly advanced a

34

document which she knew was not what she represented it to be."
Id. at 683. Notably, it was not clear from the record whether the
plaintiff manufactured the note or someone else manufactured it at
her direction. Id. But in finding that dismissal was warranted,
the court relied upon visible indications that the note was
fabricated. Id. at 678 (reflecting the analysis of the note,
showing it was manufactured—not handwritten by the defendant). Put
plainly, the court required the defendant to prove that the
plaintiff was responsible for the note's fabrication. The court
did not, however, require the defendant to prove who wrote the
note, how the note was manufactured, or when/where the
manufacturing occurred.

Like the defendant in Pope, Defendants must prove that
Plaintiffs fabricated the YouCut Video. They do not have to prove
when or where the YouCut Video was recorded. And as the Magistrate
Judge found, Defendants have proven that Plaintiffs fabricated the
YouCut Video because they have proven Mr. Frazier did not record
the YouCut Video in Suite 480 on February 25, 2020. The material
differences[17] between the exam rooms in Suite 480 and the room in
the YouCut Video provide the necessary clear and convincing
foundation of evidence. See Dkt. No. 268 at 38 ("Based solely on
the physical appearance of the various rooms, I would find by clear

---

[17] The Report exhibits an in-depth analysis of the evidence showing
the material differences. See Dkt. No. 268 at 23–26.

and convincing evidence Mr. Frazier did not record the videos used to make the YouCut Video in Suite 480 on February 25, 2020.").

Not only have Defendants provided clear and convincing evidence proving Plaintiffs' fabrication, but Plaintiffs, even when afforded numerous opportunities,[18] have failed to provide any appropriate evidence to refute the overwhelming evidence against them. See id. at 40 ("In defense to the allegations of misconduct, Plaintiffs generally question the sufficiency of the evidence of their misconduct but offer little in the way of their own explanation or evidence."). When Plaintiffs did attempt to refute Defendants' evidence, they provided two unsubstantiated theories: (a) "Dr. Stevenson examined Mr. Frazier in a different location with a different appearance than his exam rooms 1, 2, or 3," and (b) "the appearance of the Suite 480 exam rooms materially changed between February 25, 2020 and October 5, 2021, when Plaintiffs conducted their inspection." Id. But to date, Plaintiffs have provided no real evidence to support these theories—only mere speculation. And speculation will not do.

---

[18] Plaintiffs did not provide any evidence in their response to Defendants' motion for dismissal sanctions. See generally Dkt. No. 194. Plaintiffs, even when specifically asked to do so, did not provide any relevant evidence during the evidentiary hearing before the Magistrate Judge. See Dkt. No. 269 at 131:11-134:17. Finally, Plaintiffs have failed to provide any relevant evidence in their objections, reply, and sur-reply. See generally Dkt. Nos. 272, 275, 279.

Defendants have met their burden in proving Plaintiffs willfully fabricated the YouCut Video, and there is no evidence refuting that conclusion in the record. Plaintiffs' objection to the Magistrate Judge's legal conclusion as to willfulness is **OVERRULED**.

**3. Lesser sanctions than dismissal are inadequate.**

Next, the Court considers the second requirement for dismissing a case with prejudice—"a finding that lesser sanctions are inadequate." Zocaras, 465 F.3d at 483 (citing Betty K, 432 F.3d at 1339). Put plainly, "a district court must consider the possibility of alternative, lesser sanctions," but "such consideration need not be explicit." Id. at 484 (citations omitted); see also Gratton, 178 F.3d at 1374 ("Dismissal . . . is appropriate where there is . . . an implicit or explicit finding that lesser sanctions would not suffice."). The Magistrate Judge found lesser sanctions were inadequate, but Plaintiffs object to that conclusion.

Plaintiffs initially argue that the Magistrate Judge did not explicitly "find[] that lesser sanctions are inadequate." Dkt. No. 272 at 15-16. As with so many of Plaintiffs' objections, this one is demonstrably wrong. The Report provides considerable analysis of the adequacy of several lesser sanctions in this case. See Dkt. No. 268 at 42-45 (considering the lesser sanctions of "monetary sanctions, exclusion of the YouCut Video, adverse jury

instructions, striking Plaintiffs' Complaint, [and] dismissal without prejudice"). The blunt truth is it is difficult to reconcile Plaintiffs' contention that the Magistrate Judge did not find lesser sanctions inadequate with the actual wording of the Report explicitly concluding: "In sum, I have considered other, lesser sanctions, but I find them inadequate. Plaintiffs willfully fabricated video evidence in bad faith, and dismissal with prejudice is the only adequate remedy."[19] Id. at 45. Accordingly, Plaintiffs' objection that the Magistrate Judge did not consider lesser sanctions is both puzzling and **OVERRULED**.

The Court **ADOPTS** the Magistrate Judge's conclusions that Plaintiffs' conduct was willful and lesser sanctions are inadequate—the two findings required before dismissing a case as a sanction. See Zocaras, 465 F.3d at 483 (citing Betty K, 432 F.3d at 1339). At this point, the Court is within its authority to sign the dismissal and conclude the case. See Gratton, 178 F.3d at 1374.

---

[19] The Court also notes that, during the proceedings before the Magistrate Judge, "[t]he parties [took] an all-or-nothing approach to sanctions." Dkt. No. 268 at 42. While Defendants argued that dismissal with prejudice was the *only* appropriate sanction, Plaintiffs argued this case warranted *no* sanction. Id. "Even when Plaintiffs' counsel was pressed to assume for argument's sake Plaintiffs engaged in willful, bad faith conduct, counsel did not propose any sanction short of dismissal with prejudice." Id.; see also Dkt. No. 269 at 135:24-139:9. Indeed, Plaintiffs continue to argue no sanction is warranted in this case, and although they additionally argue dismissal is too severe, they offer no alternative for the Court to consider. See generally Dkt. Nos. 272, 275, 279.

However, given the nature of the sanction and to assure thoroughness, the Court will discuss Plaintiffs' remaining disagreements with the Magistrate Judge's finding that dismissal with prejudice is the appropriate sanction.

**4. Fabricating critical evidence warrants dismissal.**

"The dismissal of a party's complaint . . . is a heavy punishment." Eagle Hosp. Physicians, 561 F.3d at 1306 (11th Cir. 2009) (internal quotations omitted); see also Zocaras, 465 F.3d at 483 ("[D]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." (quoting Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985))). Thus, a court must exercise its inherent power cautiously when choosing to dismiss a case with prejudice. Nevertheless, "federal case law is well established that dismissal is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims." Vargas, 901 F. Supp. at 1581 (collecting cases); see also Access Innovators, LLC v. Usha Martin, LLC, No. 1:09-cv-2893, 2010 WL 11508119, at *3 (N.D. Ga. Apr. 28, 2010) ("When a party fabricates a document or provides false evidence relating to a key issue in a case, courts have made clear that the appropriate sanction is . . . dismissal." (citations omitted)). Plaintiffs argue dismissal is inappropriate because they say their conduct was not "egregious" enough to warrant

dismissal and the YouCut Video is not an integral piece of evidence. Dkt. No. 272 at 16–18. Both arguments are unpersuasive.

In arguing their conduct is not egregious enough to warrant dismissal, Plaintiffs posit that this case lacks key indicators that are normally present in other cases where courts determined dismissal as a sanction was appropriate. Dkt. No. 272 at 16. For example, Plaintiffs argue "admission of the wrongdoing [is a] frequent feature[] of cases that result in dismissal." Id. at 11. And because Plaintiffs' "testimony has been substantially the same," they argue dismissal with prejudice is inappropriate here. Id. at 16. Plaintiffs further state that dismissal is inappropriate because there have been no "flagrant obstructions of the discovery process, unjustified and extreme delay, [or] egregious misrepresentations by [Plaintiffs]." Id. at 15. And in Plaintiffs' view, these are all important features of cases where dismissal is appropriate. Plaintiffs proceed to cite a few factually distinct cases, point out differences between those cases and this one, and then summarily argue dismissal is not appropriate here. But in making that argument, Plaintiffs ignore the record evidence which squarely supports dismissal here.

One common understanding underlies all cases, including those proffered by Plaintiffs, where a court is asked to dismiss a suit: Courts have the authority to sanction litigants that present fabricated evidence and then falsely testify as to its

40

authenticity. See Roche Diagnostics Corp., 2020 WL 2308319, at *1
("The American judicial system depends on the integrity of the
participants, who seek the truth through the adversarial but good-
faith presentation of arguments and evidence."). While the
features discussed by Plaintiffs may be relevant in some cases,
they are not *required* before a court can dismiss a case. Plaintiffs
fabricated the YouCut Video, offered it as evidence of their
substantive claims, and lied about their misconduct in open court.
"Even after being confronted with glaring contradictory evidence,
Plaintiffs did not attempt to withdraw the video or provide a
plausible explanation for" its inauthenticity. Dkt. No. 268 at 43.
This conduct is "egregious" enough to warrant dismissal with
prejudice. See Vargas, 901 F. Supp. at 1581.

Dismissal with prejudice is the appropriate sanction to
address the prejudice Plaintiffs' conduct caused Defendants, to
protect the Court's integrity, and to deter others from engaging
in similar misconduct. See Chemtall Inc. v. Citi-Chem, Inc., 992
F. Supp. 1390, 1409 (S.D. Ga. 1998) (Dismissal with prejudice
"addresses not only prejudice suffered by the opposing litigants,
but also vindicates the judicial system as a whole, for such
misconduct threatens the very integrity of courts, which otherwise
cannot command respect if they cannot maintain a level playing
field amongst participants." (internal quotations omitted));
Vargas, 901 F. Supp. at 1582 ("Litigants would infer they have

everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means." (quotations omitted)); see also Dkt. No. 268 at 43–45 (discussing how dismissal with prejudice addresses those wrongs). Any objection otherwise is **OVERRULED**.

Furthermore, dismissal with prejudice is warranted because the YouCut Video was offered as key support for a pivotal claim in Plaintiffs' case. See Quantum Commc'ns, 473 F. Supp. 2d at 1269 ("[T]he need for sanctions is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case." (citations omitted)). Plaintiffs object to the Magistrate Judge's corresponding conclusion because the YouCut Video "was not relied upon exclusively to establish [a] breach of the standard of care, causation[, or] damages." Dkt. No. 272 at 17. In support of their argument, Plaintiffs point to multiple pieces of evidence that they assert also substantiate their underlying negligence claims. Id. at 17–18. But in doing so, Plaintiffs misinterpret the Magistrate Judge's conclusion and the relevant case law. The Magistrate Judge did *not* conclude the YouCut Video was Plaintiffs' only evidence to support their claims. Rather, he found the YouCut Video was offered as support for a "pivotal claim." Dkt. No. 268 at 41; see also, e.g., Quantum Commc'ns, 473 F. Supp. 2d at 1270 (finding the need for sanctions was heightened where the

plaintiff's misconduct related to purchase negotiations between the parties because the plaintiff's claims turned on those negotiations). The rule Plaintiffs urge—that fabricated evidence cannot result in dismissal so long as it is not a party's only evidence—is not the law and, for obvious reasons, never should be. Thus, Plaintiffs' objection is **OVERRULED**.

**III. Plaintiffs are not entitled to a jury trial.**

Having failed to convince the Court on all other grounds, Plaintiffs seek to wrap themselves and their clearly fabricated video in the solemn cloak of the Seventh Amendment. That cloak will not cover the conduct here.

To review, the clear and convincing evidence of fabrication consists of:

- The nature of the YouCut Video—the YouCut Video was created by combining two separate, original videos in a video editing app, and Plaintiffs have not produced the original videos;

- The timing of the YouCut Video's production—even though Mr. Frazier allegedly recorded the YouCut Video a year before this suit began, Plaintiffs did not produce the YouCut Video until six months after initiating this suit, and Plaintiffs did not mention the YouCut Video in pleadings before the Court until their *second* amended

complaint, which was filed about ten months after the initial complaint;

- The visible inconsistencies between the YouCut Video and Suite 480, including: different configuration of ceiling tiles, lights, and air vents, different wall color, different cabinet hardware, different cabinet color, and different medical supply containers;

- Sworn testimony and voluminous maintenance records regarding the upkeep and any alterations of Suite 480, showing that no alterations or changes to Suite 480 occurred between the time Plaintiffs allege Mr. Frazier recorded the video and the time the walk through occurred;

- Sworn testimony that Dr. Stevenson uses only Suite 480.

To counter that evidence and, Plaintiffs propose, reach the jury, Plaintiffs offer speculation that these discrepancies could be explained if it is shown that someone made surreptitious changes to Suite 480's wall color, ceiling configuration, drawer pulls, and cabinets—that is, if undocumented renovations were uncovered. Yet in all the time this case has been pending, Plaintiffs have provided no evidence to support that speculation. Not one doctor, nurse, administrator, maintenance worker, contractor, patient, or other person has come forward with any evidence that it was the *room* that had been altered and not the video evidence. To the contrary, extensive evidence shows that Suite 480's rooms have not

been altered. Still, Plaintiffs maintain their case should be submitted to a jury because the YouCut Video's authenticity is a question of fact not appropriate for the Court to determine, and the Court's determination would violate Plaintiffs' Seventh Amendment rights.

### a. The Court is authorized to make factual determinations when considering whether to impose sanctions under its inherent power.

Plaintiffs contend that whether Mr. Frazier recorded the YouCut Video in Suite 480 on February 25, 2020, "is an issue of credibility for the jury and not a question of law."[20] Id. at 16. This argument is based on Plaintiffs' assertion that a judge—be it the Magistrate Judge or otherwise—may only ever make legal conclusions. Under Plaintiffs' view, even if a judge were to determine that evidence submitted in an effort to defeat summary judgment was clearly fraudulent, the Court would have to convene a jury to make a determination of fraud on the court before the defrauded court could act. That cannot be. To begin with, during an evidentiary hearing, "the Court sits as both factfinder and assessor of credibility." Castellano Cosm. Surgery, 2021 WL 3188432, at *4 (citing Four Seasons, 320 F.3d at 1211). Thus, any contention that a judge may *never* serve as a factfinder is wrong.

---

[20] Plaintiffs offered the same argument in their objection to the Magistrate Judge's proposed finding of fact 9, and the Court's analysis of both arguments is largely the same. See supra p. 17.

But in addition to their erroneous assertion that the Court *must* leave all factual determinations to the jury, Plaintiffs argue that, in this case, the Court *should* leave the determination to the jury. Dkt. No. 272 at 18–19. In so doing, Plaintiffs rely on a few cases that are factually distinct from this one. See generally Geiger, 2017 WL 9362844; Hughes v. Matchless Metal Polish Co., No. 2:04-cv-485, 2007 WL 2774214 (M.D. Fla. Sept. 24, 2007); Idearc Media Corp. v. Kimsey & Assocs., P.A., No. 8:07-cv-1024, 2009 WL 928556 (M.D. Fla. Mar. 31, 2009). Because of the distinctions explained below, these cases are unpersuasive and—if anything—bolster the Magistrate Judge's conclusion.

In both Geiger and Hughes, the court was asked to dismiss the plaintiffs' suits because, during discovery, plaintiffs had failed to disclose relevant information to the defendants. Geiger, 2017 WL 9362844, at *1; Hughes, 2007 WL 2774214, at *1. In both instances, the court found dismissal inappropriate because the plaintiffs' failure to disclose was neither in bad faith nor willful. Geiger, 2017 WL 9362844, at *7; Hughes, 2007 WL 2774214, at *4. Both courts noted, "in the absence of a 'clear showing of *egregious conduct* . . . allegations of inconsistency, non-disclosure, even falseness, can be brought to the jury's attention through cross-examination or impeachment.'" Geiger, 2017 WL 9362844, at *7 (quoting Hughes, 2007 WL 2774214, at *3) (emphasis added). In short, both courts determined: (1) exercise of inherent

46

authority was improper without a finding of bad faith; (2) dismissal of the case was improper because the plaintiffs had not acted willfully; and (3) because of those two findings, the issue should be left to the jury. The dispositive distinctions are obvious here. In Geiger and Hughes, the issues were ones of failure to disclose, not fabrication of evidence. Too, bad faith and volition are clear here yet absent in the cited cases. As previously discussed, the Magistrate Judge found, and the Court agrees, that Plaintiffs acted in bad faith *and* acted willfully when they fabricated the YouCut Video. See Dkt. No. 268 at 37-42 (Magistrate Judge's finding of bad faith and willful conduct); see also infra pp. 18-24 (finding bad faith); pp. 24-30 (finding willfulness). Neither Geiger nor Hughes is persuasive.

Idearc Media is also unpersuasive. There, the court was asked to dismiss a plaintiff's counterclaim because the defendant alleged the plaintiff had committed fraud upon the court. 2009 WL 928556, at *1. To that end, the defendant alleged the plaintiff coerced a third party to fabricate exhibits later produced in discovery. Id. The court denied the defendant's motion to dismiss because, based on the evidence presented, it could not "*definitively* state that the[] exhibits were fabricated." Id. at *4 (emphasis added). For reference, the evidence before the court included competing fact witnesses and an "anonymous tip" that the evidence was fabricated. Id. The third parties, who were allegedly

coerced to fabricate evidence at the plaintiff's direction, sought to corroborate the anonymous tip, but their allegedly corroborating testimony was "tenuous" and countered by credible evidence from the plaintiff. Id. Moreover, the plaintiff offered credible evidence showing that, even if the exhibits were fabricated, the fabrication occurred "without his knowledge." Id. at *5. The court reiterated that a finding of bad faith—not mere negligence—is required before invoking the inherent powers doctrine. Id. And because "there [was] not enough evidence of bad faith," the court concluded it could not dismiss the suit. Id. But even though the Idearc Media court ultimately decided the evidence neither proved the exhibits were fabricated nor supported a finding of bad faith, the court recognized that, "[i]n the Middle District [of Florida], 'there  is no question that a trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud upon the court.'" Id. at *3 (quoting Hughes, 2007 WL 2774214, at *3). Simply put, the court determined it would not be an exercise of sound judicial discretion to dismiss the plaintiff's counterclaim where the credible evidence did not support a finding of fabrication or bad faith.

The Idearc Media court's ultimate conclusion does not follow here for two reasons. First, the evidence presented in this case is so very much more than just an "anonymous tip" and competing

48

fact witnesses. Id. at *4. Before the Court are multiple visible discrepancies between the YouCut Video and the walk-through video of Suite 480, extensive documentary evidence of maintenance in Suite 480, and credible testimony from key witnesses that support a finding of fabrication. See infra pp. 43–44. Besides Plaintiffs' speculation that Defendants are lying to cover up large-scale renovations of Suite 480, Plaintiffs have offered no credible evidence to dispute the credible evidence submitted by Defendants. Second, "[t]here is no indication Plaintiffs are mistaken about where or when the [YouCut Video] was recorded," and "the parties do not offer any other plausible explanation" other than "one side is being dishonest" about the YouCut Video's authenticity. Dkt. No. 268 at 2. Unlike the alleged offending party in Idearc Media, Plaintiffs have offered no evidence showing the YouCut Video was fabricated unintentionally or negligently. They simply maintain the YouCut Video was not fabricated. And because the Magistrate Judge correctly concluded that Plaintiffs fabricated the YouCut Video, the Court agrees that they did so willfully.

By encouraging the Court to rely on Geiger, Hughes, and Idearc Media, Plaintiffs are essentially asking the Court to force the proverbial square peg into a round hole. That does not work. Instead, the Court looks to more factually similar cases in making its decision. See, e.g., Rossbach v. Montefiore Med. Ctr., No. 19-cv-5758, 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021), aff'd in relevant

part, 81 F.4th 124 (2d Cir. 2023); Stonecreek — AAA, LLC v. Wells Fargo Bank N.A., No. 1:12-cv-23850, 2014 WL 12514900, at *2-4 (S.D. Fla. May 13, 2014) (dismissing plaintiff's suit as a sanction based on the court's factual finding that plaintiff had submitted fabricated evidence); Neal v. IMC Holdings, Inc., No. 1:06-cv-3138, 2008 WL 11334050, at *3-4, *7 (N.D. Ga. Oct. 20, 2008) (recommending dismissal of defendant's counterclaim as a sanction based on magistrate judge's factual finding that defendant fabricated e-mails to support her claim), report and recommendation adopted, 2009 WL 10669622 (Mar. 31, 2009). These cases represent the square hole in which the present case correctly fits, and Rossbach is particularly illustrative.

In Rossbach, the court was asked to dismiss the plaintiff's suit as a sanction for her intentional, bad-faith fabrication of key evidence. 2021 WL 3421569, at *1. At issue was an image purporting to depict a series of text messages proving the defendant sexually harassed the plaintiff. Id. at *2. Throughout the entire dispute regarding the image's authenticity, the plaintiff maintained that the image was not fabricated. Id. To determine whether the image was fabricated, the court held an evidentiary hearing, during which both parties presented evidence. Id. at *3. Ultimately, the court determined the plaintiff fabricated the image and outlined the evidentiary support for doing so, noting that the evidence supporting fabrication was

"overwhelming." Id. The court's reasons for finding the image was fabricated included: the image "lacked characteristic metadata" normally found with original iPhone images; "analysis of the image's color characteristics, as well as a visual assessment of the image," indicated that the image was not authentic; and the image contained characteristics—e.g., the icon depicting the phone's battery level, the font size and style of the header, the design of emojis in the messages—that were inconsistent with an iPhone's normal display. Id. at *3-4. In the end, the court found the defendants had submitted clear and convincing evidence proving the image was fabricated and dismissal was an appropriate sanction. Id. at *6-7.

The present case shares pivotal similarities with Rossbach. Most importantly, the Rossbach court determined the image was fabricated largely based on visible indicators, and as previously discussed, the Magistrate Judge found the visible differences between the YouCut Video and the walk-through video to be crucial in his analysis. Id. at *4. Just as the Rossbach court hinged its analysis on the image being visibly different from an iPhone's normal style, the Court hinges its analysis on the YouCut Video depicting visibly different room characteristics than those shown in the walk-through video recorded in Suite 480. Id. Moreover, determination of the YouCut Video's authenticity relies, at least in some part, on the absence of characteristic metadata proving

51

its authenticity. And the Rossbach court noted the same absence as a part of the clear and convincing evidence proving the image was fabricated. Id. Finally, like the plaintiff in Rossbach, Plaintiffs argue their consistent position that the YouCut Video was not fabricated bars the Court from making any factual determination. But like the evidentiary hearing conducted in Rossbach, the evidentiary hearing before the Magistrate Judge gave both parties ample opportunity to present evidence and make arguments as to their position, and as a result, the Magistrate Judge was within his authority to make factual determinations. Id. at *3; see also Stonecreek, 2014 WL 12514900, at *2-4 (finding evidence was fabricated even where the responsible party disputed fabrication); Neal, 2008 WL 11334050, at *3-4 (same).

At bottom, Plaintiffs' argument that a jury should make factual determinations regarding the YouCut Video's authenticity is unpersuasive. Where other courts have allowed a jury to make similar determinations, they have done so for reasons not present in this case. This case more closely resembles those where courts have concluded that evidence was fabricated and ordered dismissal sanctions without the assistance of the jury.

**b. Dismissal does not violate Plaintiffs' Seventh Amendment right to a trial by jury.**

On a related note, Plaintiffs argue dismissal of their case would violate their Seventh Amendment right to a trial by jury.

See, e.g., Dkt. No. 272 at 1 ("[Plaintiffs] were denied their right to a jury trial under [t]he Seventh Amendment."); Dkt. No. 275 at 8 (The Magistrate Judge "usurped the function of the jury to determine credibility on an issue involving a battle of both lay witness and expert testimony."); Dkt. No. 279 at 20 ("There are allegations of falsified/fabricated evidence on both sides—which shows further that these topics are genuine issues of material fact to be heard by the jury."). As worthy as the Seventh Amendment is, it does not immunize fraud.

Plaintiffs' objection on Seventh Amendment grounds "conflates [their] entitlement to a jury trial on [their] claims with the question of whether [they] engaged in sanctionable conduct." Rossbach, 81 F.4th at 138. And determining whether Plaintiffs committed sanctionable conduct—i.e., fabricated the YouCut Video— "is an exercise of the district court's equitable power, for which a party is generally not entitled to a jury determination on the question." Id. (internal quotations omitted); see also Chambers, 501 U.S. at 46 (A court's power to impose sanctions "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself."). In determining whether to exercise its inherent power and impose sanctions, "a court has the power to conduct an independent investigation" where it acts as factfinder. Id. at 44; see also Universal Oil Prods. Co. v. Root Refin. Co., 328 U.S. 575, 580

(1946) ("The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question."); Rossbach, 81 F.4th at 139 ("[O]ne of the district court's roles in resolving a motion for sanctions is to act as factfinder."). In fact, the First, Second, Sixth, Eighth, and Ninth Circuits have held that "a motion for sanctions, when premised on a party's fraud . . . does not implicate the Seventh Amendment's jury trial guarantee." Rossbach, 81 F.4th at 138 n.8 (collecting cases).

While the Eleventh Circuit has not explicitly joined those other circuits, the undersigned has no reason to anticipate that the Eleventh Circuit will be any more indulgent with those who fabricate evidence than its sister circuits have been. Indeed, the Eleventh Circuit has reiterated that "[a] court [] has the power to conduct an independent investigation to determine whether it has been the victim of fraud." Martin, 307 F.3d at 1335 (citations omitted) (affirming district court's finding that a party had committed fraud on the court); see also In re E.I. DuPont De Nemours & Co.—Benlate Litig., 99 F.3d 363, 367 (11th Cir. 1996) (concluding district court had jurisdiction to conduct an independent civil action for sanctions based upon allegations of fraud in another case). Plaintiffs conclude that the Seventh Amendment would be illusory if they have no right to present the clearly fabricated YouCut Video to a jury. If Plaintiffs are right and the Court has no power to protect its docket, its process, and

its jurors from exposure to clearly fabricated evidence, then it is the inherent power of the Court which is illusory.

Accordingly, the Court finds it is authorized to make factual findings in determining whether Plaintiffs have engaged in sanctionable conduct. Specifically, the Court can make a factual determination as to whether Plaintiffs fabricated the YouCut Video. To do so, the Court has conducted an independent investigation that included an evidentiary hearing before the Magistrate Judge, submission of a constellation of evidence by both parties, and the voluminous briefing currently before the Court. Dismissal of Plaintiffs' case based on the Court's findings of fact does not violate Plaintiffs' right to a jury trial. See Rossbach, 81 F.4th at 138–39 ("[T]he district court's findings of fact at the evidentiary hearing, and dismissal of the remainder of Rossbach's case based upon them, did not violate Rossbach's right to a jury trial."). Plaintiffs' objections are therefore **OVERRULED**.

## CONCLUSION

Plaintiffs acted in bad faith, abused the judicial process, and committed a fraud upon the Court by fabricating video evidence, submitting it to the Court, and relying on that evidence during litigation. Because their conduct was willful and egregious, sanctions other than outright dismissal with prejudice are inadequate. Dismissal of Plaintiffs' complaint with prejudice is

the appropriate sanction to "vindicate judicial authority . . . and to make [Defendants] whole." Purchasing Power, 851 F.3d at 1223. Therefore, Plaintiffs' objections to the Report, dkt. no. 272, are **OVERRULED**, and the Magistrate Judge's report and recommendation, dkt. no. 268, is **ADOPTED** as augmented herein. Defendants' motion to dismiss Plaintiffs' second amended complaint as a sanction for fabricating evidence, dkt. no. 184, is **GRANTED**, and this case is **DISMISSED with prejudice**.  The Clerk is **DIRECTED** to terminate all pending motions, close this case, and enter the appropriate judgment of dismissal.

      **SO ORDERED** this 1st day of March, 2024.

```
_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
```