# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CEDRICK FRAZIER and TAMARA
FRAZIER,

    Plaintiffs,

    v.

2:21-CV-21

SOUTHEAST GEORGIA HEALTH
SYSTEM, INC., SHERMAN A.
STEVENSON, M.D., and
COOPERATIVE HEALTHCARE
SERVICES, INC. d/b/a
Southeast Georgia Physician
Associates—Ear, Nose and
Throat,

    Defendants.

## ORDER

    Before the Court are Plaintiffs' motions for relief from the order of dismissal and judgment, dkt. no. 304, and for judicial notice of adjudicative facts of certified medical records, dkt. no. 318. Also before the Court are Defendants' motions to tax costs against Plaintiffs, dkt. no. 302, and for attorney's fees and other nontaxable costs, dkt. no. 303. The motions have been fully briefed and are ripe for review. Dkt. Nos. 302-06, 309-11, 314-16, 318, 319, 322. For the reasons discussed below, Plaintiffs' motions are

**DENIED**, dkt. nos. 304, 318, and Defendants' motions are **GRANTED with modification**, dkt. nos. 302, 303.

BACKGROUND[1]

This is a medical malpractice suit arising out of Plaintiff Cedrick Frazier's (hereinafter "Mr. Frazier") septoplasty performed by Defendant-Doctor Sherman Stevenson (hereinafter "Dr. Stevenson"). Mr. Frazier and his wife, Tamara Frazier (collectively "Plaintiffs"), brought claims against Defendants for professional negligence, negligence per se, and loss of consortium. See generally Dkt. No. 77. Specifically, Plaintiffs alleged that, following the septoplasty, Dr. Stevenson left gauze or packing in Mr. Frazier's nasal cavity, and those foreign items remained in his nose until Dr. Stevenson removed them weeks later. Id. ¶ 41. Plaintiffs claimed Dr. Stevenson's failure to remove the foreign objects caused Mr. Frazier serious pain and injury. Id. ¶ 15. Defendants denied that Dr. Stevenson left anything in Mr. Frazier's nasal cavity. See, e.g., Dkt. No. 82 ¶ 15.

Plaintiffs' suit was dismissed when it became clear that a video produced by Plaintiffs, which shows a sizeable mound of bloody materials in a kidney-shaped dish, was fraudulent. Plaintiffs had claimed that Mr. Frazier took the video (hereinafter

---

[1] The background provided here is a general overview of the relevant facts. For a detailed recitation of the facts, see generally dkt. no. 268.

"the YouCut Video")[2] during his follow-up visit in Dr. Stevenson's office, the Southeast Georgia Physician Associates—Ear Nose and Throat ("SGPA-ENT") office suite (hereinafter "Suite 480"),[3] on February 25, 2020. Dkt. No. 77 ¶ 42. The YouCut Video allegedly shows Mr. Frazier shortly after Dr. Stevenson had removed the foreign objects from his nasal cavity and "gauze packing and blood clots that were removed from his nasal cavity and placed in a kidney basin." Id. After Plaintiffs produced the YouCut Video, they filed a second amended complaint, and therein, Plaintiffs relied on the video as support for their allegations.[4] See id. ¶¶ 42, 116. As part of an initial challenge to the YouCut Video's authenticity, Defendants requested the original video files, along with the associated metadata, recorded on Mr. Frazier's phone. Plaintiffs did not produce the original videos, but they did provide a screenshot of an original video that purportedly shows some of the video's metadata. See Dkt. No. 53 at 2. Ultimately, under Court order, Plaintiffs provided Defendants' expert, Vicente

---

[2] The title "YouCut Video" is used because the video was created when Mr. Frazier combined two separate, original videos (which he allegedly recorded on his cell phone) in the YouCut video editing app. Dkt. No. 268 at 3 n.1.

[3] Suite 480 is Dr. Stevenson's office suite located in the Southeast Georgia Physician Associates building on the Southeast Georgia Health Systems' Brunswick, Georgia, campus. It houses several exam rooms, including exam rooms 1, 2, and 3, which are relevant to this case.

[4] Plaintiffs neither mentioned nor relied upon the YouCut Video in their initial complaint or their first amended complaint. See generally Dkt. Nos. 1, 36.

Rosado, with Mr. Frazier's phone. Dkt. No. 58. Even the expert was unable to locate the original video files and could not determine whether the YouCut Video was authentic. See generally Dkt. No. 184-1.

Following that initial dispute, Plaintiffs requested an inspection of Suite 480. Dkt. No. 55. A videographer recorded the inspection. The Magistrate Judge granted this request. Dkt. No. 64. "Plaintiffs and Defendants both had their own videographers present for the inspection." Dkt. No. 268 at 6. The inspection revealed significant discrepancies between the features of the room in the YouCut Video and the room where the exam occurred. Thereafter, Defendants moved to dismiss Plaintiffs' suit as a sanction for fabricating the YouCut Video, arguing that the video could not have been recorded in Suite 480 because the room in the YouCut Video is visibly inconsistent with the exam rooms in Suite 480. Dkt. No. 184. Plaintiffs maintained that the video was not fabricated. Dkt. No. 194.

After an evidentiary hearing on the motion, the Magistrate Judge found that the YouCut Video was indeed fabricated and recommended the Court dismiss Plaintiffs' suit with prejudice. Dkt. No. 268. Plaintiffs filed timely objections to the Magistrate Judge's factual findings and legal conclusions. Dkt. No. 272. On March 1, 2024, the undersigned conducted a *de novo* review of the evidence and issued an Order dismissing the case with prejudice as

the Court adopted the Magistrate Judge's report as a sanction for fabricating evidence. Dkt. No. 280. Plaintiffs subsequently appealed to the U.S. Court of Appeals for the Eleventh Circuit. Dkt. No. 291. The Eleventh Circuit affirmed the Court's decision to dismiss Plaintiffs' suit. Dkt. No. 299.

Following the Court of Appeals' decision in Plaintiffs' appeal, on December 30, 2024, Defendants filed motions to tax costs against Plaintiffs, dkt. no. 302, and for attorney's fees and other nontaxable costs, dkt. no. 303. Plaintiffs responded, dkt. nos. 305, 306, Defendants replied, dkt. nos. 309, 310, and Plaintiffs, without leave of Court, filed surreplies, dkt. nos. 315, 316. Next, Plaintiffs initiated a round of motions. On January 11, 2025, Plaintiffs moved under Federal Rule of Civil Procedure 60(b) for relief from the Court's judgment. Dkt. No. 304. Defendants responded in opposition, dkt. no. 311, and Plaintiffs replied, dkt. no. 314. On February 25, 2025, Plaintiffs filed a "Motion for Judicial Notice of Adjudicative Facts of Certified Medical Records Produced by the Defendants . . . and Notice of Filing of Documents Proving Admitted Felonies and Modification of Records by Defendants During the Pendency of this Litigation." Dkt. No. 318. Defendants responded, dkt. no. 319, and Plaintiffs replied, dkt. no. 322.

**DISCUSSION**

**I.   Plaintiffs' Rule 60(b) Motion for Relief from Judgment**

**A. Legal Authority**

Federal Rule of Civil Procedure 60(b) provides, in relevant part:

> Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1)  mistake, inadvertence, surprise, or excusable neglect;
>
> (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4)  the judgment is void;
>
> (5)  the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6)  any other reason that justifies relief.

"Federal Rule of Civil Procedure 60(b)(1) allows a party to seek relief from a final judgment based on, among other things, a 'mistake.'" Kemp v. United States, 596 U.S. 528, 533–34 (2022). The Supreme Court recently concluded "that a judge's errors of law are indeed 'mistake[s]' under Rule 60(b)(1)." Id. Rule 60(b)(2)

requires a plaintiff to show "(1) the evidence is newly discovered since the trial; (2) she exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." Terrell v. Sec'y, Dep't of Veterans Affs., 98 F.4th 1343, 1358 (11th Cir. 2024) (citation and quotation omitted) (alterations adopted). Further, relief under Rule 60(b)(3) requires the plaintiff to "prove by clear and convincing evidence that [the defendant] obtained the verdict through fraud, misrepresentation, or other misconduct." Id. (citation and quotations omitted).

Relief under Rule 60(b)(4) requires that the judgment is void, but "relief under this rule is appropriate 'only in the rare instance' where the court lacked jurisdiction or the losing party was denied due process." Joe Hand Promotions, Inc. v. Barber, No. 22-13276, 2024 WL 3236634, at *2 (11th Cir. June 28, 2024) (quoting United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271-72 (2010)). The judgment in this case is certainly not void, so Rule 60(b)(4) has no application here.

Relief pursuant to Rule 60(b)(5) is available "in ordinary civil litigation where there is a judgment granting continuing prospective relief, such as an injunction," but that is not at issue here. Griffin v. Sec'y, Fla. Dep't of Corr., 787 F.3d 1086, 1089 (11th Cir. 2015). "'The section of Rule 60(b)(5) which

provides relief when judgments are satisfied applies when damages are paid before trial or a tortfeasor or obligor has paid the judgment debt.'" Hunt v. Nationstar Mortgage, LLC, 782 F. App'x 762, 767-68 (11th Cir. 2019) (alterations adopted) (quoting Gibbs v. Maxwell House, A Div. of General Foods Corp., 738 F.2d 1153, 1155 (11th Cir. 1984)); Hunt v. Nationstar Mortgage, LLC, 779 F. App'x 669, 671 (11th Cir. 2019) (same). As such, this portion of Rule 60(b)(5) is also inapplicable here.

The final provision, Rule 60(b)(6), "provides a catch-all, authorizing a court to grant relief from a judgment for 'any other reason that justifies relief.'" Aldana v. Del Monte Fresh Produce N.A., Inc., 741 F.3d 1349, 1355 (11th Cir. 2014) (quoting Fed. R. Civ. P. 60(b)(6)). To prevail under Rule 60(b)(6), however, a party "must demonstrate that the circumstances are sufficiently extraordinary to warrant relief." Id. (internal quotations and citations omitted); see also Doe v. Drummond Co., 782 F.3d 576, 612 (11th Cir. 2015) ("To warrant relief under Rule 60(b)(6), not only must Plaintiffs show 'sufficiently extraordinary' circumstances, but also 'that absent such relief, an extreme and unexpected hardship will result.'" (quoting Galbert v. W. Caribbean Airways, 715 F.3d 1290, 1294-95 (11th Cir. 2013))); United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993) (explaining that while "the timeliness of a Rule 60(b)(6) motion depends on the facts of each case, relief may not

be had where the party seeking reconsideration has ignored normal legal recourses" and that "Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests"). Ultimately, "Rule 60(b) motions are directed to the sound discretion of the district court." Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 849 n.2 (11th Cir. 1996).

**B. Analysis**

Plaintiffs seek relief pursuant to Rule 60(b) from the Court's March 2024 Order and Judgment dismissing Plaintiff's second amended complaint with prejudice as a sanction for fabricating evidence ("the Order"). Dkt. Nos. 280, 281, 304. Plaintiffs contend that the Order is based on mistakes of law and fact, inadvertence, surprise, fraud, and extraordinary circumstances. Dkt. No. 304. Defendants argue that Plaintiffs' motion seeks to improperly relitigate matters that have already been settled both by this Court and the Eleventh Circuit. Dkt. No. 311 at 5.[5]

---

[5] Plaintiffs also assert that they "should have been afforded criminal protections, including a 'beyond a reasonable doubt' standard or at least, direct or conclusive evidence of fabrication—instead of by implication." Dkt. No. 304 at 11 (quoting Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108 (2017)). This is not the holding of Goodyear. Rather, the Supreme Court in Goodyear held that to impose a punitive fee award, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof. When (as in this case) those criminal-type protections are missing, a court's

"[A] Rule 60(b) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." <u>Terrell</u>, 98 F.4th at 1357 (citations and quotations omitted). Put differently, Rule 60(b) motions are "not an appeal." <u>Dial HD, Inc. v. Clearone Comms., Inc.</u>, No. CV 109-100, 2024 WL 2802976, at *5 (S.D. Ga. May 31, 2024) (alterations adopted) (citation and quotations omitted), <u>aff'd</u>, No. 24-11829, 2024 WL 4903934 (11th Cir. Nov. 27, 2024). Thus, it is "improper" for parties "to ask the Court to rethink what the Court has already thought through—rightly or wrongly." <u>Id.</u> Moreover, "[i]t is well established that additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." <u>Id.</u> (citation and quotations omitted); <u>see also</u> <u>Falkowski v. United States</u>, No. 6:16-CR-00224, 2024 WL 4564209, at *1 (M.D. Fla. June 28, 2024) ("This prohibition includes new arguments that were previously available, but not pressed." (quoting <u>Wilchombe v. TeeVee Toons, Inc.</u>, 555 F.3d 949, 957 (11th Cir. 2009))).

Plaintiffs' Rule 60(b) motion fails because they attempt to re-assert arguments that the Court has already resolved or that should have been raised previously. In other words, Plaintiffs

---

shifting of fees is limited to reimbursing the victim." 581 U.S. at 108. Here, the Court had awarded no fees at the time Plaintiffs filed their Rule 60(b) motion, dkt. no. 304, and the Court does not shift fees as a punitive measure herein.

cannot ask for a second bite of the proverbial apple.[6] For instance, Plaintiffs' motion begins by asserting that relief is proper because of "plain error, miscarriage of justice, irreparable harm and manifest injustice" affecting their Fifth and Seventh Amendment rights. Dkt. No. 304 at 1. Yet, Plaintiffs raised this argument in their objections to the Magistrate Judge's R&R, dkt. no. 272 at 1, as well as in their briefs before this Court and the Eleventh Circuit, dkt. nos. 272, 275, 279, 311-1 at 20, 23-30, 311-3 at 11. Indeed, this Court took care to explain why Plaintiffs are not entitled to a jury trial under the Seventh Amendment, dkt. no. 280 at 43, and the Eleventh Circuit rejected as "frivolous" Plaintiffs' argument that they had "insufficient notice" of the hearing, dkt. no. 299 at 5 n.3. Similarly, Plaintiffs dedicate pages of their Rule 60(b) motion to assert that the Court ignored or misunderstood relevant evidence therefore amounting to a legal

---

[6] Indeed, in a November 2024 filing with the Eleventh Circuit, Plaintiffs explained the "same issues involving the 2/6/2020 medical record and errors of law and fact," which Plaintiffs raise in this motion and which Plaintiffs raised at a prior hearing and in "several other motions prior to judgment being filed," including Plaintiffs' objection to the R&R, a reply brief, and surreply. Dkt. No. 311-7 at 5; see also Dkt. Nos. 272, 275, 279. Further, Plaintiffs also re-raise arguments that they were "surprised" by the dismissal Order and that it violated their Fifth Amendment rights because Defendants' motion for sanctions "did not allege 'fraud on/upon the court,'" did not contain "proposed findings of fact or undisputed conduct" by the Plaintiffs to support that they fabricated the video, and did not contain a standard of review for sanctions dismissal. Id. at 6 (citing to Plaintiffs' Court of Appeals filings containing these arguments).

error. Dkt. No. 304 at 17–23. However, both the Magistrate Judge and the undersigned engaged in a thorough review of the evidence Plaintiffs offered and deemed it insufficient to rebut the "clear and convincing evidence" that Plaintiffs fabricated the video. Dkt. Nos. 268 at 37–41, 280 at 32–37. Moreover, this conclusion was affirmed by the Eleventh Circuit's holding that "the evidence amply supports the district court's findings." Dkt. No. 299 at 5.

Plaintiffs also argue that the Court erred by never making "a finding of 'willful contempt' or a 'clear pattern of delay.'" Dkt. No. 304 at 15. But Plaintiffs have already raised, and lost, this argument. See Dkt. No. 299 at 6 (In Plaintiff's appeal, the Eleventh Circuit held that, "based upon ample evidence," the district court "properly found" Plaintiffs' conduct "show[ed] a clear pattern of willful contempt."). So, too, have Plaintiffs proffered and lost their argument that the Court erred by "assum[ing]" Plaintiffs fabricated the video.[7] Dkt. No. 304 at 16; see also Dkt. Nos. 299 (Based on the evidence "discussed in great detail" by the district judge and magistrate judge, the Eleventh

---

[7] Plaintiffs also argue that the Court "improperly" placed the burden on them to show "clear and convincing evidence" without notice. Dkt. No. 304 at 15–16. This is not so. As discussed above, the Court noted that *Defendants* proved by clear and convincing evidence that Plaintiffs fabricated the video, and Plaintiffs were unable to refute that evidence. Dkt. No. 280 at 36; see also Dkt. No. 268 at 37–41 (discussing the same). This, too, is an argument that Plaintiffs have previously, and unsuccessfully, propounded. Dkt. No. 279 at 18.

Circuit rejected Plaintiffs' argument that the district court erred in finding that Plaintiffs fabricated the video evidence.), 280 at 33–36 (explaining that "Defendants provided clear and convincing evidence proving Plaintiffs' fabrication" and that, despite "numerous opportunities," Plaintiffs "have failed to provide any appropriate evidence to refute the overwhelming evidence against them"), 268 at 37–41 (detailing the "clear and convincing evidence" that Plaintiffs fabricated the video and that Plaintiffs' alternative theories lack "any compelling evidence" to support them).

Plaintiffs contend that the Court incorrectly "combine[d]" the concept of contempt power and bad faith. Dkt. No. 304 at 16. To the extent this contention can be construed as not merely "relitigating" a previous argument, it also fails.[8] Terrell, 98 F.4th at 1357. Specifically, Plaintiffs take issue with the Court's reliance on the definition of "willfulness" set forth in Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996), because that case involved statutory contempt power. Dkt. No. 304 at 16. Yet, Plaintiffs provide no explanation as to why a finding that "willfulness generally connotes intentional action taken with

---

[8] Plaintiffs argue that the Court "failed to unlock inherent authority" because it used "an incorrect standard based on 'willful conduct' to establish fabrication instead of subjective bad-faith." Dkt. No. 311-6 at 8. Thus, Plaintiffs have already tried to assert a version of this argument.

at least callous indifference for the consequences" does not apply to the circumstances of this case.[9] Id. Furthermore, though Plaintiffs wish to distinguish contempt power from the Court's power to issue sanctions against parties acting in bad faith, both stem from a court's inherent authority. See Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) (explaining that a federal court's inherent authority "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" (citation omitted)); Chambers v. NASCO, Inc., 501 U.S. 32, 44 ("[I]t is firmly established that the power to punish for contempts is inherent in all courts." (alterations adopted) (citation and quotation omitted)).

Plaintiffs are attempting to "relitigate old matters" or ask the Court to readdress matters that have already been decided both by this Court and the Eleventh Circuit.[10] Terrell, 98 F.4th at 1357

---

[9] Though Plaintiffs wish to distinguish contempt power from the Court's power to issue sanctions against parties acting in bad faith, both stem from a court's inherent authority. See Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1541 n.12 (11th Cir. 1986) (courts have the inherent power "enter a finding of contempt."); Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (11th Cir. 2002) (Courts have inherent authority to impose sanctions on a party acting in bad faith). Accordingly, the Court's reliance on Jove to define "willfulness" is not misplaced.

[10] Plaintiffs also argue that they were "surprised" by the Court's failure to follow the law by relying solely on its inherent authority, but not Federal Rule of Civil Procedure Rule 37(e), to dismiss Plaintiffs' case. Dkt. No. 304 at 3. Plaintiffs confuse the issues here, and this argument is inapposite. Rule 37(e) applies to instances where a party fails to preserve electronically

(citations and quotations omitted). Rule 60(b) motions are not intended to function as another appeal. <u>Dial HD, Inc.</u>, 2024 WL 2802976, at *5. Truly, the only way Plaintiffs' Rule 60(b) motion could be granted is for the Court to ignore the text of Rule 60(b) and the legions of cases applying it. Accordingly, Plaintiffs' motion for relief from judgment, dkt. no. 304, is **DENIED**.[11] As a result, Plaintiffs' motion for judicial notice of adjudicative facts, dkt. no. 317, is **DENIED as moot**.[12]

---

stored information (ESI). Fed. R. Civ. P. 37. Although the Court acknowledges that Plaintiffs failed to preserve ESI, <u>see</u> dkt. no. 280 at 3-4, 12-13, Plaintiffs' case was not dismissed for this reason. The Court dismissed Plaintiffs' case under its inherent authority to sanction because Plaintiffs acted in bad faith by fabricating electronic evidence. Dkt. Nos. 268, 280.

[11] Plaintiffs also argue that the Court committed legal error by dismissing their professional negligence, informed consent, and punitive damages claims and their pending Rule 60 motion relating to a partial summary judgment order. Dkt. No. 304 at 24-26. Not so. The Court utilized its inherent power to dismiss Plaintiffs' case <u>in full</u>—the clerk was directed to terminate all pending motions, close the case, and enter the judgment of dismissal. Dkt. No. 280 at 56; <u>see also</u> <u>Oniha v. Delta Air Lines, Inc.</u>, No. 21-13532, 2022 WL 580933, at *2 (11th Cir. Feb. 25, 2022).

[12] In this motion, Plaintiffs expressly request the Court "take judicial notice" of "documentary evidence/medical records." Dkt. No. 318 at 1. Because the Court has denied Plaintiffs' Rule 60(b) motion, there is no need for the Court to take judicial notice. Alternatively, to the extent Plaintiffs intended to supplement their Rule 60(b) motion with newly discovered evidence, <u>see</u> Federal Rule of Civil Procedure 60(b)(2), the motion is **DENIED**. Again, "a Rule 60(b) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." <u>Terrell</u>, 98 F.4th at 1357. Here, Plaintiffs are attempting to relitigate old matters. Indeed, they expressly state in their motion that they previously brought this evidence "to this Court's attention in multiple briefs filed on the docket." Dkt. No. 318 at 7; <u>id.</u> at 10 (Plaintiffs requesting the Court take judicial notice of "supplementary documentary evidence previously

## II.  Defendants' Motion for Taxable Costs, Nontaxable Costs, and Attorney's Fees

Having denied Plaintiffs' motions, the Court turns to Defendants' motions for the award of taxable costs, nontaxable costs, and attorney's fees. Dkt. Nos. 302, 303. The Court first assesses the amount of Defendants' costs that are taxable against Plaintiffs. Then, the Court assesses the amount of nontaxable costs and attorney's fees levied against Plaintiffs.

### A. Taxable Costs

#### i.  Legal Authority

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Although Rule 54 creates a presumption that a prevailing party is entitled to costs, "the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." Marx v. Gen. Revenue Corp., 568 U.S. 371, 377 (2013); see also Chapman v. Al Transp., 229 F.3d 1012, 1038 (11th Cir. 2000) (Rule 54

---

filed on the docket"). Moreover, to the extent Plaintiffs did not previously present such evidence to the Court, they provide no explanation for not doing so, even though the evidence has been in their possession since at least the close of discovery on March 1, 2023. Dkt. No. 141 at 2; see also Dkt. No. 318 at 1 (Plaintiffs' stating the evidence to which they point was "produced by the Defendants").

"establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise."). A district court has some discretion to award less than the "full amount of costs incurred by the prevailing party," but this discretion is not "unfettered." Chapman, 229 F.3d at 1039. "To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." Id.

"[A] court may only tax costs as authorized by statute." United States E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000) (citation omitted). Courts look to 28 U.S.C. § 1920 to identify what costs are taxable against the losing party. Id. (referencing § 1920 to identify what costs are taxable). This statute authorizes the Court to tax the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

### ii.  Analysis

Rule 54(d) authorizes an award of costs against a "prevailing party" in litigation. Fed. R. Civ. P. 54. "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist., 489 U.S. 782, 791 (1989); see also Perez v. Miami-Dade Cnty., 186 F. App'x 936, 937 (11th Cir. 2006) (applying § 1920 and stating "[a]bsent a contrary legislative directive, a 'prevailing party' is one who prevails on 'any significant issue' and thereby achieves some of the benefits sought by bringing suit." (citation omitted)). Because Plaintiffs' suit against Defendants was dismissed in its entirety, Defendants "prevail[ed] on a[] significant issue" and therefore are a "prevailing party." Perez, 186 F. App'x at 937 (citation and quotations omitted).

As discussed supra, the only costs taxable against a party are those authorized by statute, specifically 28 U.S.C § 1920. W&O, Inc., 213 F.3d at 620. Defendants request costs for the following: deposition transcripts, deposition videos, hearing transcripts, exemplification and copying. Dkt. No. 302 at 3.

### (a)  Deposition Costs

"Taxation of deposition costs is authorized by § 1920(2)." W&O Inc., 213 F.3d at 620 (citation omitted). However, when "the deposition costs were merely incurred for convenience, to aid in

thorough preparation, or for purposes of investigation only, the costs are not recoverable." Id. (citation and quotations omitted). Thus, "[t]he question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially 'necessarily obtained for use in the case.'" Id. (quoting Newman v. A.E. Staley Mfg. Co., 648 F.2d 330, 337 (5th Cir. Unit B 1981)). Typically, the Eleventh Circuit has allowed the taxing of costs for "depositions submitted by parties in support of their summary judgment motions," id. at 621 (citation and quotations omitted), depositions of parties to the case when it was "reasonably necessary," such as being used for impeachment purposes, id. at 622, and depositions of individuals who were on the losing party's witness list, id. at 621.

Defendants seek costs amounting to $9,280.30 for transcripts of depositions that were "necessarily obtained for use in the case." Dkt. No. 302 at 4. To the extent Plaintiffs specifically address the issue of taxable costs, they broadly assert their "categorical[] object[ion] to each and every cost item identified" by Defendants and contend that Defendants "did not undertake the task of providing this Court with details showing whether a deposition or hearing transcript or other related costs would or would not have been incurred in the absence of the sanctioned conduct." Dkt. No. 306 at 8. Plaintiffs do not otherwise address why Defendants' deposition transcript costs are not taxable.

The Court approves Defendants' request for deposition transcript costs in the amount of $9,280.30 and concludes that the associated depositions were "necessarily obtained for use in the case." W&O Inc., 213 F.3d at 620 (citation omitted). As a preliminary matter, "a deposition taken within the proper bounds of discovery will normally be deemed to be 'necessarily obtained for use in the case' and its costs will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged." Stalvey v. United States, No. 5:18-CV-00019, 2020 WL 4207118, at *4 (S.D. Ga. July 22, 2020) (quoting Helms v. Wal-Mart Stores, Inc., 808 F. Supp. 1568, 1571 (N.D. Ga. 1992); George R. Hall, Inc. v. Superior Trucking Co., Inc., 532 F. Supp. 985, 994 (N.D. Ga. 1982)). Plaintiffs made no such objection. Furthermore, "in general, all parties 'require at least one copy of each original deposition' taken in the case, regardless of who took the deposition," so "the costs of the deposition transcript and at least one copy thereof may be taxed to the losing party." Id. (quoting DiCecco v. Dillard House, Inc., 149 F.R.D. 239, 242-43 (N.D. Ga. 1993)).

The depositions and transcripts for Plaintiffs Cedrick and Tamara Frazier, Defendant Stevenson, Charles Greene, M.D., and Angela Donaldson, M.D., were necessary to the case, as evidenced by the fact that they were submitted with Defendants' partial motion for summary judgment, dkt. nos. 181, 181-2, 181-3, 181-4,

181-13, 181-14, and were discussed in pertinent filings like the Court's order granting partial summary judgment, see, e.g., dkt. no. 238 at 1–4, Defendants' motion for dismissal sanctions, see, e.g., dkt. no. 184 at 2 n.1–2, the Magistrate Judge's R&R, see, e.g., dkt. no. 268 at 9–12, and the Court's order adopting the R&R and dismissing Plaintiffs' suit, dkt. no. 280 at 16–17.

Moreover, the Court finds that review of the deposition transcripts for Dr. David Lesser, Dr. Sanjeet S. Grewal, Dr. Joseph Sirven, Dr. Ryan Crooks, Dr. Greene, and Dr. Donaldson were necessary to the case.[13] These doctors were Plaintiff Cedrick Frazier's subsequent ER, ENT, and neurology physicians and could attest to Plaintiff's relevant history and symptoms, as well as standards of care in the medical field. In a medical malpractice case, one would be hard pressed to find deposition testimony more "necessary" for the parties to review and reference than that of a plaintiff's treating physicians.

The deposition transcript costs for Jim Stafford, Suzette Mikula, M.D., Kathryn Crous, RN, BSN, Faar Ajir, M.D., and Margaret L. Dennis, M.D., were also necessary to the case because they were

---

[13] Defendants did not submit Drs. Lesser, Grewal, Siven, or Crooks's deposition transcripts in connection with their motion for partial summary judgment. However, Defendants referenced their testimony in response to Plaintiffs' motion to quash subpoenas, so it still played a pertinent role in the motions practice in this case. Dkt. Nos. 159, 160-1 at 1–2. Furthermore, experts on both sides reviewed Drs. Grewal, Sirven, and Crooks's transcripts and Plaintiffs filed it with the Court. Dkt. No. 196-2.

Plaintiffs' proposed expert witnesses. Taxation of the deposition costs for these witnesses is in accordance with Eleventh Circuit precedent. W&O Inc., 213 F.3d at 621 (citing Murphy v. City of Flagler Beach, 761 F.2d 622, 631 (11th Cir. 1985)). Additionally, taxing these costs is proper because, by identifying these witnesses, Plaintiffs indicated that Defendants "might need the deposition transcripts to cross-examine" them "and that the information those people had on the subject matter of this suit was not so irrelevant or unimportant that their depositions were outside the bounds of discovery." W&O Inc., 213 F.3d at 621 (citation and quotations omitted).

The remaining deposition transcript costs requested by Defendants includes Joni Brooker, Department Support Coordinator at SGPA-ENT, Amy Williamson, Medical Support Assistant at SGPA-ENT, and Nancy Lorenz, SGHS's former compliance officer. The Court finds that these depositions, too, were "wholly or partially 'necessarily obtained for use in the case.'" Id. at 620 (citation omitted). Ms. Brooker and Ms. Williamson's deposition testimonies were directly relevant to whether Mr. Frazier fabricated the video. Indeed, Defendants' motion for dismissal sanctions states these women testified that they work at SGPA-ENT and "Mr. Frazier's video was not, and could not have been taken" there. Dkt. No. 184 at 3 n.3. Lastly, obtaining a copy of Ms. Lorenz's deposition transcript was necessary because she was deposed by Plaintiffs. Dkt. No. 302

at 9. Because Defendants defended the deposition, obtaining a copy of the transcript was "'necessarily obtained for use in the case.'" W&O Inc., 213 F.3d at 620 (citation omitted).

In sum, the Court determines that Defendants are entitled to the costs for the transcripts of depositions necessarily obtained for use in this case. From the outset, this case presented multiple factually dense disputes, which were only exacerbated by the subsequent issue of Plaintiffs' fabricated video. Cf. Salvador v. Brico, LLC, 796 F. App'x 654, 656 (11th Cir. 2020) (affirming district court's decision to not tax deposition costs because the facts of the case "were, for the most part, undisputed," the "case was focused on a legal question," and it was not shown the transcripts were necessary). Defendants have sufficiently demonstrated that the deposition transcript costs were not "merely incurred" for convenience, thorough preparation, or investigation; instead, the transcripts were "necessarily obtained for use" in motions practice and to adequately defend against Plaintiffs' allegations. W&O Inc., 213 F.3d at 620 (citation and quotations omitted). Accordingly, Defendants' request for deposition transcript costs is **GRANTED**. Thus, Defendants may tax $9,280.30, in total, against Plaintiffs.[14]

---

[14] Defendants attach invoices to support the following calculation:

**(b)  Video Costs**

Defendants request $4,640.00 for the video deposition costs incurred in this case. "[V]ideotaped depositions are taxable under § 1920(2) ('Fees for . . . electronically recorded transcripts')." Stalvey, 2020 WL 4207118, at *4. Defendants direct the Court to Morrison v. Reichhold Chemicals, Inc., where the Eleventh Circuit held that "when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation," then "it is appropriate under § 1920 to award the cost of conducting the deposition in the manner

| Deposition Costs | |
|---|---|
| **Deposed Party** | **Cost** |
| Cedrick Frazier | $749.15 |
| Tamara Frazier | $749.15 |
| Sherman A. Stevenson M.D. | $777.65 |
| Joni Brooker | $369.80 |
| Amy Williamson | $369.80 |
| Jim Stafford | $2,082.40 |
| David Lesser, M.D. | $192.00 |
| Charles Green, M.D. | $353.10 |
| Ryan Crooks, M.D. | $229.60 |
| Sanjeet S. Grewal | $278.50 |
| Joseph I. Sirven, M.D. | $434.45 |
| Angela Donaldson, M.D. | $413.85 |
| Nancy Lorenz | $31.15 |
| Suzette Mikula, M.D. | $721.55 |
| Kathryn Crous, RN, BSN | $552.75 |
| Faar Ajir, M.D. | $515.40 |
| Margaret L. Dennis, D.M.D. | $460.00 |
| **Total** | **$9,280.30** |

Dkt. No 282-2.

noticed" if the copies were "'necessarily obtained for use in the case.'" 97 F.3d 460, 465 (11th Cir. 1996) (quoting 28 U.S.C. § 1920(2)). "Morrison is somewhat outdated because 28 U.S.C. § 1920 was subsequently amended to include costs for 'electronically recorded transcripts;' however, the reasoning underlying Morrison still applies today." Stalvey, 2020 WL 4207118, at *4.

Put more simply, there are two requirements to tax the cost of video recordings of depositions: (1) "a party must have provided notice that the deposition would be recorded by nonstenographic means (or by both stenographic and nonstenographic means), and there must not have been any objection raised at that time by the other party to that method of recordation" and (2) "the party seeking the taxation of fees must offer an 'explanation of why it was necessary to obtain a copy of the video tapes for use in the case.'" Tsavaris v. Savannah L. Sch., LLC, No. 4:18-CV-125, 2021 WL 261272, at *5 (S.D. Ga. Jan. 26, 2021) (citing Morrison, 97 F.3d at 465) (quoting Stalvey, 2020 WL 4207118, at *4). Importantly, when "a prevailing party seeks recovery of costs for both a videotape and a stenographic transcript, the prevailing party bears the burden of proving that both methods were necessary." Lindley v. Fed. Deposit Ins. Corp., No. 4:11-CV-147, 2012 WL 13005931, at *5 (S.D. Ga. July 30, 2012).

Defendants seek costs for the video depositions of Plaintiffs Cedrick and Tamara Frazier, Defendants Sherman Stevenson, M.D., Amy Williamson, Jim Stafford, Charles Greene, M.D., Sanjeet S. Grewal, Joseph I. Sirven, M.D., Suzette Mikula, M.D., and Kathryn Crous, RN, BSN. Dkt. No. 302. Defendants submit that each of the videoed depositions were noticed in advance and no objection was made by either party. Id. at 12. Several docket entries include motions with depositions and the requisite video notices attached. See, e.g., Dkt. Nos. 65-1 at 75, 181-3 at 55, 181-13 at 35, 181-14 at 94, 196-2 at 54, id. at 97 (notices of video depositions). Plaintiffs do not dispute that proper notice was given and that they did not object, nor did they present evidence to the contrary. Thus, the Court finds this first requirement to tax the costs of video depositions is satisfied.

Turning to the second requirement, Defendants argue that obtaining a copy of the video for these depositions "was necessary for potential impeachment, to show the jury the complex medical issues in the case, and to combat the perjury the Court has found the Plaintiffs committed in their depositions and at the evidentiary hearing on the Motion for Dismissal Sanctions."[15] Dkt.

---

[15] The Court emphasizes that while it concluded Plaintiffs fabricated evidence and acted in bad faith, at no point in its dismissal order, or in the Magistrate Judge's R&R, was there an explicit finding of perjury. Dkt. Nos. 268, 280.

No. 302 at 12. Defendants' contention that the video depositions are necessary to explain the medical issues in the case demonstrates that the costs of video depositions for the medical professionals deposed—Dr. Sherman Stevenson, Dr. Charles Greene, Dr. Sanjeet S. Grewal, Dr. Joseph I. Sirven, Dr. Suzette Mikula, M.D., and Nurse Kathryn Crous—are taxable to Plaintiffs.

However, Defendants fail to explain why the video depositions for Plaintiffs Cedrick and Tamara Frazier, Amy Williamson, and Jim Stafford were reasonably necessary for use in the case. None of these deponents were medical professionals whose video depositions might be necessary to "show the jury the complex medical issues in the case." Dkt. No. 302 at 12. Further, even if these video depositions would be useful in impeaching Plaintiffs' testimony, Defendants give no explanation as to why obtaining the video footage of these deponents, in addition to the written transcripts of their depositions, was necessary. W&O Inc., 213 F.3d at 620; see also Tsavaris, 2021 WL 261272, at *5 ("Defendants do not, however, explain why it would be necessary for them to have video footage—in addition to a stenographic transcript—of Plaintiff's deposition in order to impeach her at trial."); Lindley, 2012 WL 13005931, at *5 ("[T]he FDIC-R does not indicate why it was necessary to obtain a video and stenographic transcript of Zacharias's deposition."). Accordingly, the costs for the video depositions of Plaintiffs Cedrick and Tamara Frazier, Amy

27

Williamson, and Jim Stafford are not taxable in this case. Thus, the Court **GRANTS WITH MODIFICATION** Defendants' request—the costs of video depositions amounting to $2,041.00 is taxable to Plaintiffs.[16]

(c) **Hearings Transcript Costs**

Defendants seek $140.00 for the cost of the transcript of the evidentiary hearing on Defendants' motion for dismissal sanctions.[17] Dkt. Nos. 269, 302. Specifically, Defendants argue that obtaining a copy of the transcript was "necessary for use in this case and was not obtained merely for convenience of counsel."

---

[16] Attached to Defendants' motion are invoices to support the following:

| Deposed Party | Cost |
|---|---|
| Sherman A. Stevenson M.D. | $150.00 |
| Charles Greene, M.D. | $275.00 |
| Sanjeet S. Grewal, M.D. | $278.50 |
| Joseph I. Sirven, M.D. | $275.00 |
| Suzette Mikula, M.D. | $637.50 |
| Kathryn Crous, RN BSN | $425.00 |
| **Total** | **$2,041.00** |

Dkt. No. 282-2.

[17] Defendants provide an invoice to support the following:

| Evidentiary Hearing Transcript Costs | |
|---|---|
| **Party Owed** | **Cost** |
| (Court Reporter) Debra Gilbert | $140.00 |

Dkt. No. 282-3.

Dkt. No. 302 at 13. Plaintiffs argue that Defendants "did not undertake the task of providing this Court with details showing whether a deposition or hearing transcript or other related costs would or would not have been incurred in the absence of the sanctioned conduct." Dkt. No. 306 at 8.

Section 1920(2) authorizes "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."[18] Defendants incurred this cost in order to adequately respond to Plaintiffs' objections to the Magistrate Judge's R&R addressing Defendants' motion for sanctions of dismissal. W&O Inc., 213 F.3d at 620. Thus, Defendants' use of the hearing transcript is a far cry from mere "convenience" or simple "preparation"—it was pertinent to Defendants' ability to pursue their motion to dismiss for sanctions and is a properly taxable

---

[18] Defendants direct the Court to Dennis v. Waffle House, Inc. where a district court found that it could "tax as costs the "'[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.'" No. 1:03-CV-2421, 2006 WL 8431236, at *3 (N.D. Ga. May 17, 2006) (quoting 28 U.S.C. § 1920(2) (1978)). The Court notes that § 1920 was amended in 2008.

cost.[19] Id. Accordingly, Defendants' request for the hearing transcript cost amounting to $140.00 is **GRANTED**.[20]

**(d)  Exemplification Costs**

"Fees for exemplification and the costs of making copies of any materials" are taxable if "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); Matter of Skanska USA Civil S.E. Inc., 700 F. Supp. 3d 1032, 1043 (N.D. Fla. 2023). The Eleventh Circuit has defined "exemplification" in § 1920(4) to mean "'an official transcript of a public record, authenticated as a true copy for use as evidence,' and not the broader and common connotation that includes 'a showing or illustrating by example.'" Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc., 249 F.3d 1293, 1297

---

[19] Plaintiffs' argument relies on the standard set forth in Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017). In Goodyear, the United States Supreme Court addressed the scope of sanctions requiring a litigant who acted in bad faith to pay the innocent party's legal fees. Id. at 103. The Court held that an order to pay the innocent party's legal fees is limited to "the fees that party would not have incurred but for the bad faith." Id. at 104. Plaintiffs' reliance on this standard is misplaced. Defendants' request for deposition and hearing transcript costs is pursuant to the Court's *statutory* authority to award costs to a prevailing party in any litigation. Put differently, Defendants are not asking for these costs as a sanction against Plaintiffs, so Goodyear does not govern this specific request. The Court addresses the applicability of Goodyear to Defendants' request for the sanction of attorney's fees infra.

[20] The Court notes that even if the cost of the hearing transcript was not taxed pursuant to § 1920, it would be awarded via the Court's inherent authority to shift costs "incurred because of the misconduct at issue." Chambers, 501 U.S. at 45. But for Plaintiffs' misconduct of fabricating the YouCut video, the sanctions hearing would not have occurred, and Defendants would not have incurred the transcript cost.

(11th Cir. 2001) (first quoting Black's Law Dictionary 593 (7th ed. 1999), then quoting Webster's Third New Int'l Dictionary 795 (1981)).

Defendants seek $2,436.39 for the cost of obtaining and making copies of records.[21] "[L]ike with depositions, in evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." W&O, Inc., 213 F.3d at 623. The Court concludes that in a case such as this where the central issue is a claim for medical malpractice, Defendants could reasonably believe that it was necessary to procure copies of Plaintiff

---

[21] Defendants attached invoices to their motion to support the following:

| Payee | Source | Amount |
|---|---|---|
| Ciox Health | Mayo Clinic | $828.23 |
| Ciox Health | Mayo Clinic | $47.17 |
| Ciox Health | Mayo Clinic | $3.00 |
| Ciox Health | Mayo Clinic | $653.00 |
| ScanSTAT | UF Health Jacksonville | $17.00 |
| ScanSTAT | UF Health Jacksonville | $17.00 |
| ScanSTAT | UF Health Jacksonville | $85.50 |
| James W. Greene, MD | James W. Greene, MD | $60.00 |
| Sharecare Health Data | Millenium Physician Group | $69.49 |
| Baptist Health | Baptist North Medical Campus | $422.00 |
| Baptist Health | Baptist Beaches Medical Center | $164.00 |
| MetLife | MetLife | $40.00 |
| Winn-Dixie | Winn Dixie (Pharmacy Records) | $30.00 |
| | **TOTAL: $2,436.39** | |

Dkt. No. 282-4.

Frazier's medical records. Obtaining such records was all the more important in a case such as this where the precise location of treatment was an issue.

This determination is supported by the fact that other district courts in the Eleventh Circuit routinely award costs for copies of medical records. See, e.g., Sanford v. Omni Hotels Mgmt. Corp., No. 3:16-CV-1578, 2020 WL 5260191 (M.D. Fla. Aug. 19, 2020) (awarding costs under § 1920(4) for copies of medical records obtained from plaintiff's medical providers), report and recommendation adopted as modified by 2020 WL 5255122 (Sept. 3, 2020);[22] Thelan v. Somatics, LLC, No. 8:20-CV-1724, 2023 WL 7411309 (M.D. Fla. Sept. 18, 2023) (awarding costs under § 1920(4) for copies of plaintiff's medical records), report and recommendation adopted by No. 8:20-CV-1724-TPB-JSS, 2024 WL 69571 (Jan. 5, 2024); Steffens v. Nocco, No. 8:19-CV-1940, 2022 WL 1462144 (M.D. Fla. Apr. 21, 2022) (awarding costs associated with subpoenaing and photocopying medical records under § 1920(4) because they were "necessarily obtained for use in the case"), report and recommendation adopted by 2022 WL 1459551 (May 9, 2022); Brown v. Davis, No. 3:13-CV-915, 2017 WL 5514212 (M.D. Fla. Oct. 23, 2017) (awarding costs under § 1920(4) for exemplification and copies of

---

[22] The district court in Sanford did not modify the taxable costs portion of the magistrate judge's report and recommendation. Sanford, 2020 WL 5255122, at *1.

papers that included "medical records relating to the care and treatment of [p]laintiff"), <u>report and recommendation adopted by</u> 2017 WL 5495154 (Nov. 16, 2017). Accordingly, Defendants' request for $2,436.39 in costs for exemplification and costs of copies of Plaintiff Frazier's medical records is **GRANTED**.

## B. Attorney's Fees and Nontaxable Costs

### i.   Legal Authority

Federal courts have "'inherent powers,' not conferred by rule or statute," to help manage their affairs and dispose of cases. <u>Goodyear</u>, 581 U.S. at 107 (citation and quotations omitted). A federal court's inherent authority "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" <u>Id.</u> (quoting <u>Chambers</u>, 501 U.S. at 44–45). "[O]ne permissible sanction is an 'assessment of attorney's fees,'" where a party who has acted in bad faith must "reimburse legal fees and costs incurred by the other side." <u>Id.</u> (quoting <u>Chambers</u>, 501 U.S. at 45). In civil cases, these sanctions "must be compensatory rather than punitive in nature." <u>Id.</u> This means that a fee award can only "redress the wrong party 'for losses sustained,'" but cannot "impose an additional amount as punishment for the sanctioned party's misbehavior." <u>Id.</u> at 108 (citation omitted). Accordingly, the Court can only shift attorney's fees "incurred because of the misconduct at issue." <u>Id.</u> This requires the Court to establish a "causal link[] between the litigant's

misbehavior and legal fees paid by the opposing party." Id. In other words, the complaining party can "only recover 'the portion of his fees that he would not have paid but for' the misconduct." Id. at 109 (quoting Fox v. Vice, 563 U.S. 826, 836 (2011)).

The assessment of nontaxable costs, such as expert-witness fees, "is undoubtedly within a court's inherent power." Wachovia Bank v. Tien, 406 F. App'x 378, 383 (11th Cir. 2010) (quotations and citations omitted); Landfall 2, Inc. v. Datascore-AI, LLC, No. 22-cv-80801, 2024 WL 693088 (S.D. Fla. Jan. 30, 2024) ("However, it does appear that nontaxable expenses and costs are available as a sanction in response to bad-faith conduct."), report and recommendation adopted by 2024 WL 691919 (Feb. 20, 2024). Federal Rule of Civil Procedure 54 provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A).

### ii. Analysis

Although the "so-called 'American Rule' prohibits fee shifting in most cases," there are some "narrowly defined circumstances" when a federal court has the "inherent power to assess attorney's fees against counsel." Chambers, 501 U.S. at 45 (citation and quotations omitted). Courts have this power "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 46 (citation and quotations omitted).

Thus, if the Court finds "'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." Id. (citation omitted). Additionally, the assessment of nontaxable costs "is undoubtedly within a court's inherent power." Wachovia Bank v. Tien, 406 F. App'x 378, 383 (11th Cir. 2010) (quotations and citations omitted).

Defendants request that they be awarded a total of $465,164.19, consisting of $333,728.00 in fees and $131,436.19 in costs, both in connection with defending the case in this Court.[23] Dkt. No. 303 at 5. Plaintiffs argue that Defendants fail to show the necessary causal link between all the fees they seek and Plaintiffs' misconduct. Id. at 12–17. In large part, Plaintiffs contest Defendants' argument that this suit was initiated in bad faith such that a blanket award in Defendants' favor may be proper. Dkt. No. 303 at 3.

Defendants contend that the Court should shift all their fees "in one fell swoop" because Plaintiffs' insistence that the YouCut

---

[23] In their opening brief, Defendants noted that they moved for attorney's fees for their appellate work in the Court of Appeals for the Eleventh Circuit. Dkt. No. 302 at 5. At the time the opening brief was filed with this Court, the Eleventh Circuit had not yet ruled on Defendants' request for fees. Id. Subsequently, the circuit included an award for Defendants' appellate costs but denied Defendants' request for attorney's fees. Dkt. No. 310 at 8. Thus, the Court does not duplicate any appellate costs awarded by the Eleventh Circuit in this Order.

video was recorded and edited *before* they initiated this action
means the entire litigation was brought in bad faith. Goodyear,
581 U.S. at 110; Dkt. No. 309 at 5. In other words, Defendants
argue Plaintiffs planned to use the fabricated video from the very
beginning. Defendants' argument does not carry the day, however.
Although Plaintiffs filed suit in February 2021, they did not
produce the YouCut video as part of discovery until July 2021.
Dkt. Nos. 1, 53 at 6, 268 at 5. In fact, the YouCut video was not
mentioned in any of the docketed case filings before July 15, 2021,
nor was it referenced in the billable time entries Defendants
submitted in support of their fees request for time billed before
that date. Dkt. Nos. 268 at 16 n.6, 288-3. Thus, Defendants fail
to show that this is an "exceptional case[]" where "every cost of
defense is attributable only to sanctioned behavior" such that a
"blanket award" of fees is appropriate. Goodyear, 581 U.S. at 110.
Instead, the Court's "fundamental job is to determine whether a
given legal fee—say, for taking a deposition or drafting a motion—
would or would not have been incurred in the absence of the
sanctioned conduct." Id.

Defendants' fee requests can be divided into three time
periods: (1) fees before July 15, 2021 (the date the fabricated
video was produced in discovery), (2) fees between July 15, 2021,
and December 7, 2021 (the period between when Plaintiffs produced
the fabricated video and when Plaintiffs filed their second amended

complaint referencing the video), and (3) fees after December 7, 2021 (the date Plaintiffs filed their second amended complaint referencing the fabricated video in support of their claims). Each is addressed in turn below.

**(a)  Fees Incurred Before July 15, 2021**

Defendants' fees incurred prior to July 15, 2021, the date Plaintiffs produced the fabricated video during discovery, are excluded from an award of attorney's fees here. Defendants fail to demonstrate that, prior to that date, they would not have incurred any fees "but for" Plaintiffs' misconduct. Goodyear, 581 U.S. at 109.

**(b)  Fees Incurred Between July 15, 2021 and December 7, 2021**

Next, the Court assesses Defendants' requested fees for the time period after Plaintiffs produced the YouCut video but before Plaintiffs filed their second amended complaint. Between July 15, 2021 and December 6, 2021, Plaintiffs injected bad faith into the proceedings by introducing a fabricated video. However, Plaintiffs' misconduct was not yet an integral part of the case because the second amended complaint had not been filed. Thus, Defendants are entitled to an award of attorney's fees for the period of July 15, 2021 through December 7, 2021 only to the extent their fees "would not have been incurred in the absence of the sanctioned conduct." Goodyear, 581 U.S. at 110.

To ascertain which fees are properly attributed to Plaintiffs' sanctioned conduct, the Court relies on the itemized entries of Defendants' billable time. Dkt. Nos. 288-2, 288-3. The Court finds such fees include those associated with Defendants' efforts to review the metadata on the YouCut video, brief the motion to compel the underlying phone data, and pursue spoliation sanctions. Dkt. Nos. 288-3 at 9–14, 17–18, 29–35, 37–39, 41, 46–50, 52–53, 55–59, 61–64, 67–71, 73–78, 87–89. These entries amount to 56.5 hours billed. The total requested award for this period is $11,754.40.[24]

**(c)  Fees Incurred After December 7, 2021**

Upon a thorough review of the events in this case, the Court concludes that there is a "midpoint of [the] suit" where Plaintiffs' misconduct became so entangled in the proceedings that it is proper "to shift all of [Defendants'] fees" "in one fell swoop." Goodyear, 581 U.S. at 110. This proverbial "point of no return" occurred on December 7, 2021, when Plaintiffs filed their

---

[24] The calculation for time entries related to the YouCut video during the July 15 to December 7, 2021 timeframe is as follows:

| Timekeeper | Hours | Amount Billed |
|---|---|---|
| N. Daniel Lovein (Attorney) | 5.3 | $1,137.50 |
| Steven P. Bristol (Attorney) | 51.0 | $10,598.90 |
| Nina Leonard (Nurse Paralegal) | 0.2 | $18.00 |
| **Total Fee Requested** | $11,754.40 | |

Dkt. Nos. 288-2, 288-3.

second amended complaint. Dkt. No. 77. Therein, Plaintiffs repeatedly make explicit reference to the fabricated video in support of their claims. Id. ¶¶ 42, 44, 116-17. Indeed, Plaintiffs go so far as to reincorporate their reliance on this fabricated video in every claim asserted. Id. ¶¶ 64, 81, 87, 90, 96, 100, 107, 114, 122, 125, 130, 136. Thus, the Court finds that beginning on December 7, 2021 and throughout the remainder of the litigation, Plaintiffs' "entire course of conduct" was grounded in bad faith. Goodyear, 581 U.S. at 110 (citation and quotation omitted). Accordingly, Defendants' fees from December 7, 2021 onward relate to Plaintiffs' "fraudulent and brazenly unethical" conduct. Id. (citation and quotation omitted). During this time frame, Defense counsel billed 1,216.8 hours, amounting to a total requested fee of $211,998.80.[25]

---

[25] The calculation for total awarded time entries for the post-December 7, 2021 timeframe is as follows:

| Timekeeper | Hours | Amount Billed |
|---|---|---|
| N. Daniel Lovein (Attorney) | 145.8 | $36,334.50 |
| Steven P. Bristol (Attorney) | 833.5 | $150,895.80 |
| William Mann (Attorney) | 1.5 | $300.00 |
| Matthew Balcer (Attorney) | 1.1 | $203.50 |
| Ben-Allen Dunn (Attorney) | 9.3 | $837.00 |
| Mary Matthews (Attorney) | 4.0 | $800.00 |
| Michael Whitehead (Attorney) | 24.4 | $4,880.00 |
| Kaytlyn Courson (Paralegal) | 56.1 | $5,049.00 |
| Nina Leonard (Nurse Paralegal) | 104.8 | $9,432.00 |
| Desiree Crews (Nurse Paralegal) | 34.9 | $3,141.00 |
| Marianne Stanfield (Nurse Paralegal) | 1.4 | $126.00 |

In summary, Defendant's attorney's fees incurred prior to July 15, 2021 are excluded from a fee award; attorney's fees incurred between July 15 and December 7, 2021 are narrowed to only those fees properly attributed to Plaintiff's sanctionable conduct; and attorney's fees incurred after December 7, 2021 are shifted in one fell swoop. Thus, at this point, Defendants' requested attorney's fees amount of $333,728.00 has been reduced to $223,753.20 to subtract the fees which "would not have been incurred in the absence of the sanctioned conduct." Goodyear, 581 U.S. at 110. The Court now must determine whether those qualifying fees are reasonable. As explained below, a line-by-line review of every minute expended by every professional involved requires a modest trim of the $223,753.20 amount.

**(d)    Lodestar Calculation: Reasonableness of Fees**

"The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam) (quoting Hensley, 461 U.S. at 433). "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." Id.

| Total Fee Requested | $211,998.80 |
|---|---|

Dkt. Nos. 288-3–8.

(citing <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565–66 (1986)). In this District, the fee applicant must "file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation." S.D. Ga. L.R. 54.2(c).

"In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the [twelve <u>Johnson</u>] factors." <u>Bivins</u>, 548 F.3d at 1350 (citing <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717–19 (5th Cir. 1974)).[26] The <u>Johnson</u> factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 1350 n.2; <u>Hensley</u>, 461 U.S. at 430 n.2 (citing the <u>Johnson</u> factors). "The <u>Johnson</u> factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying

---

[26] <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981).

reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation." Blanchard v. Bergeron, 489 U.S. 87, 94 (1989). The Court now assesses the reasonableness of the fees requested, taking the two figures of the lodestar in turn.

**(1)  Hourly Rate**

"[T]he applicant for attorney's fees has the burden of showing that the requested rate is in line with prevailing market rates." Norman, 836 F.2d at 1299 (citation omitted). "Satisfactory evidence at a minimum is *more than the affidavit of the attorney performing the work*," and instead, in line "with the goal of obtaining objectivity," such evidence "must speak to rates actually billed and paid in similar lawsuits." Id. (emphasis added) (citation omitted). Evidence of rates can be presented "through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." Id.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299. Importantly, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" ACLU of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (quoting Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994)). The "relevant legal community" is the district in which this case was brought,

here, the Southern District of Georgia, Brunswick Division. <u>See</u> <u>Norman</u>, 836 F.2d at 1299.

"In evaluating comparability of market rates," the court considers the <u>Johnson</u> factors; particularly relevant are "the nature and length of the professional relationship with the client and the customary fee for similar work in the community." <u>Gowen</u> <u>Oil Co. v. Abraham</u>, 511 F. App'x 930, 935 (11th Cir. 2013) (citing <u>Norman</u>, 836 F.2d at 1299-1300) (discussing <u>Johnson</u>, 488 F.2d at 717-19). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." <u>Norman</u>, 836 F.2d at 1299.

### a. Senior Attorneys

Defense counsels' law firm charged an hourly rate of $215 for partners Steven Bristol and Daniel Lovein for work done in 2021-2022. Dkt. Nos. 288-2, 288-3. In 2022, attorney Lovein's hourly rate increased to $250, and attorney Bristol discounted his hourly rate to approximately $180.[27] Dkt. Nos. 288-4, 288-5. The 2022 average rates remained steady into 2023 and 2024. Dkt. Nos. 288-6, 288-7, 288-8.[28] Defendants also seek an hourly rate of $200 for

---

[27] This rate does not reflect one point in time of attorney Bristol's billable hours in 2022-2024. Instead, it is derived from the average of all 2022-2024 billable time entries in this case for attorney Bristol.

[28] The Court uses the average rates reflected in the bills because "an agreed-upon rate is relevant evidence to determine the fee rate." <u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332, 1337 (11th Cir. 2001). Indeed, an attorney's billing rate

partner William Mann, another senior-level attorney involved in this matter. Dkt. No. 288-6 at 13.

As evidence of the requested fees, Defendants provide an affidavit from Steven Bristol, one of the seniormost attorneys in the matter, attesting to the amount of fees owed and the reasonableness of the hourly fees requested. Dkt. Nos. 284-1, 288-1. Specifically, Mr. Bristol avers that the rates charged for him and Daniel Lovein are reasonable and commensurate with the rate of other partners who have similar years of experience. Dkt. No. 288-1 at 3. However, Defendants provide no evidence with respect to the rate requested for partner William Mann. Id. Aside from Mr. Bristol's affidavit, Defendants provide no other evidence of rates billed and paid in similar cases or other objective evidence such as expert opinions or affidavits from lawyers under similar circumstances. Norman, 836 F.2d at 1200. As a result, "the Court thus must rely primarily on its own expertise to calculate the appropriate hourly rates."[29] Munoz v. Diaz, No. 4:22-CV-9, 2023 WL 139732, at *6 (S.D. Ga. Jan. 9, 2023); Aetna Grp. USA, Inc. v. AIDCO Int'l, Inc., 432 F. App'x 842, 842-43 (11th Cir. 2011)

---

"is powerful, and perhaps the best, evidence of his market rate." Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000).

[29] This does not mean the submitted affidavits "will not be given *any* weight." Munoz, 2023 WL 139732, at *6 n.5. "The Court gives *some* consideration" to this evidence "but will rely more heavily on its own objective expertise." Id.

("Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee . . . the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." (citation and quotation omitted) (alterations adopted)).

A review of the rates deemed reasonable in the Southern District of Georgia—and the Brunswick market—reveals that rates of $180, $200, $215, and $250 per hour are reasonable. See Gowen Oil Co. v. Abraham, No. 210-cv-157, 2012 WL 1098568, at *5 n.12 (S.D. Ga. Mar. 30, 2012) (capping Brunswick market rates at $375 per hour but, ultimately, concluding that using Brunswick rates would result in an increase in the contested, requested amount), aff'd, 511 F. App'x at 936; Del Rosario v. King & Prince Seafood Corp., No. 2:04-cv-036, 2010 WL 11519378, at *6 (S.D. Ga. July 15, 2010) (holding an hourly rate of $300 reasonable for a complex case in the Southern District for work performed as early as 2004); Kennedy v. R.V. Corp., No. 2:19-cv-092, 2021 WL 744160 at *4 (S.D. Ga. Feb. 25, 2021) (finding that "$350 per hour is a reasonable hourly rate for Plaintiff's counsel [rather than the requested $400 hourly rate] in the Southern District of Georgia"); Jackson v. Jump, No. CV 212-135, 2014 WL 10558844, at *3 (S.D. Ga. Sept. 30, 2014) (concluding that the undisputed hourly rates of $225-$250 for partners in Brunswick, Georgia, were reasonable to apply in the lodestar calculation). Furthermore, the Court's docket shows that

45

the attorneys have practiced law in this Court for a number of years.

In addition to the Court finding these rates reasonable for experienced attorneys in the Brunswick legal market, the Court bases this finding on (1) the strength of the professional relationship with the client from the beginning of this case to the end, dkt. nos. 288-2 at 1 (showing counsel's involvement dating back to receipt of initial complaint); 13 (reflecting involvement of Defendants' counsel dating back to filing of initial answer in May 2021), (2) the labor-intensive and time-consuming efforts to address Plaintiffs' fabricated YouCut video, dkt. nos. 268 (detailing the steps Defendants took to address their concerns about the YouCut video beginning in 2021); 52 (reflecting initial concerns about YouCut video were raised in 2021); 91 at 22 (raising challenges to YouCut video in 2022); 208-1 at 11 (alleging that Plaintiffs fabricated the YouCut video and stating Defendants' intent to pursue "all available remedies" in 2023), (3) the unique nature of this case owing to Plaintiffs' sanctioned conduct, and (4) fee awards in other cases in this market. Furthermore, although not a dispositive consideration, the Court notes that Plaintiffs do not object to the rates charges by Defendants' counsel Steven Bristol, Daniel Lovein, or William Mann. Accordingly, the Court concludes that the hourly rate of $200 for William Mann, the 2021 hourly rate of $215 for Steven Bristol and Daniel Lovein, and the

46

average 2022–2024 hourly rates of $180 for Steven Bristol and $250 for Daniel Lovein are reasonable.

### b. Junior Attorneys

Next, Defendants' counsel's law firm charged an hourly rate of $200 for associate attorneys Mary Matthews and Michael Whitehead, an hourly rate of $185 for associate attorney Matthew Balcer, and an hourly rate of $90 for associate attorney Benn-Allen Dunn. Dkt. Nos. 288-3 at 101, 288-4 at 12, 288-5 at 27.[30] Plaintiffs do not voice objections to Defendants' hourly rates. Other than the attorneys' time entries and Mr. Bristol's affidavit affirming that the associate attorneys' rates are commensurate with their years of experience, Defendants do not provide additional evidence that the rates are reasonable. Dkt. No. 288-1 at 3. Thus, the Court relies on its own expertise to determine whether these fees are reasonable. See Aetna Grp. USA, Inc., 432 F. App'x at 842–43; Munoz, 2023 WL 139732, at *6.

The Court finds that the requested hourly rate of $90 for Ben-Allen Dunn is reasonable. However, the Court reduces the requested hourly rate of $200 for Mary Matthews and Michael Whitehead and the rate of $185 for Matthew Balcer to an hourly rate of $175.

---

[30] Though the timesheets also reflect a small amount of time billed by another attorney, Hannah Patton, Defendants do not request fees for her work on this case. Compare Dkt. No. 288-6 at 23 with Dkt. No. 288 at 2.

47

As stated in Mr. Bristol's affidavit, the rates charged for the associate attorneys' work corresponds with their years of experience. Dkt. No. 288-1. Thus, it is logical for junior attorneys to have lower hourly rates than their more senior counterparts addressed <u>supra</u>. However, the requested hourly rates of $185 and $200 for junior attorneys Balcer, Matthews, and Whitehead exceeds the hourly rate for a more senior attorney in this case. <u>See</u> <u>supra</u> Section II.B.ii.(d)(1)(a) (Steve Bristol's 2022–2024 average rate was approximately $180). Defendants provide no explanation or evidence to support why identical rates between junior associates and partners "are reasonable and commensurate with their years of experience." Dkt. No. 288-1 at 3. Accordingly, the Court reduces the hourly rate for attorneys Balcer, Matthews, and Whitehead to $175.

The hourly rates of $175 and $90 for associate attorneys are reasonable with respect to the prevailing market rate in the Southern District of Georgia. <u>See, e.g.</u>, <u>Gowen Oil Co.</u>, 2012 WL 1098568, at *5 n.12 (agreeing with counsel that $200 per hour for associates is "in line with the prevailing rates" in Brunswick, Georgia); <u>Milie v. City of Savannah</u>, No. 4:18-cv-117, 2020 WL 4041118, at *5 (S.D. Ga. July 16, 2020) (concluding that $225 per hour is a reasonable rate for associates in Savannah in the Southern District of Georgia). Additionally, the Court accounts for the unique nature of this case, particularly that Plaintiffs

willfully fabricated evidence in bad faith. Dkt. Nos. 268, 280. Thus, the Court finds the hourly rate of $175 for attorneys Balcer, Matthews, and Whitehead, as well as the hourly rate of $90 for attorney Dunn, are reasonable for the Brunswick, Georgia, market.[31]

### c. Paralegals

Lastly, Defendants seek an hourly rate of $90 for one paralegal and three nurse paralegals.[32] Dkt. No. 288 at 2. Generally, "paralegal time is recoverable as part of an 'award for attorney's fees and expenses, but *only to the extent that the paralegal performs work traditionally done by an attorney*.'" Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) (emphasis in original) (alterations adopted) (quoting Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. Unit B 1982)).

The Court's survey of the rates deemed reasonable in the Brunswick area reveals the prevailing market rate for paralegals is between $75–$85. See, e.g., Del Rosario, 2010 WL 11519378, at *7 (finding that a reasonable hourly rate for paralegal services in Brunswick was $75); Gowen Oil Co., 2012 WL 1098568, at *5 n.12

---

[31] The Court takes judicial notice of the fact that Mr. Ben-Allen Dunn was admitted to the Southern District of Georgia in December 2022. Thus, his lower hourly rate reflects his experience relative to the other associates.

[32] "Nurse consultants" or "nurse paralegals" are often responsible for "assembly and summarization of medical records." Savin ex rel. Savin v. Sec'y of Health & Hum. Servs., No. 99-537V, 2008 WL 2066611, at *5 (Fed. Cl. Apr. 22, 2008), aff'd, 85 Fed. Cl. 313 (2008).

(agreeing with counsel that a reasonable hourly rate for "non-lawyers" was $80); Jackson, 2014 WL 10558844, at *3 (finding the undisputed rate of $85 per hour was reasonable for paralegal services).

Although Defendants' requested rate for paralegal services is only marginally higher than the rates approved in prior cases, Defendants "fail to present any evidence as to the respective levels of experience" of their paralegals or to demonstrate that their paralegals "possess[] some extraordinary qualifications or expertise," such as medical training or knowledge. Milie, 2020 WL 4041118, at *6. Instead, Defendants simply attach the billable hour entries for this matter. See Dkt. Nos. 288-2, 288-3. Because Defendants have "the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and have failed to meet that burden, the Court finds it proper to reduce the hourly rate for paralegal Kaytlyn Courson and nurse paralegals Nina Leonard, Desiree Crews, and Marianne Stanfield to $85. Norman, 836 F.2d at 1299. This rate best aligns with the Brunswick market and accounts for the Court's inability to assess the paralegal staff's relative experience and expertise.

### (2) Hours Expended

Next, the Court determines whether the number of hours expended is reasonable. "[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be

conscionably billed and not the least time in which it might theoretically have been done." <u>Norman</u>, 836 F.2d at 1306. Whether hours were reasonably expended can depend on the type of task and who performs it—an attorney or a paralegal. For instance, both attorneys and paralegals may perform "actual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence," albeit at different hourly rates. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 n.10 (1989).

However, the Court excludes hours found to be "excessive, redundant, or otherwise unnecessary." <u>Resolution Trust Corp. v. Hallmark Builders Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993). "If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." <u>Norman</u>, 836 F.2d at 1304 (first citing <u>Hill v. Seaboard Coast Line R. Co.</u>, 767 F.2d 771, 775 (11th Cir. 1985); then citing <u>Fitzpatrick v. IRS</u>, 665 F.2d 327, 332-33 (11th Cir. 1982)). In general, courts disallow hours for "purely clerical or secretarial tasks . . . regardless of who performs them." <u>Missouri</u>, 491 U.S. at 288 n.10; <u>see also</u> <u>Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Co.</u>, 278 F. Supp. 2d 1301, 1321 (M.D. Fla. 2003). Courts also exclude hours supported by time entries that "indicate a lack of proper billing judgment." <u>Barnes</u>, 168

F.3d at 428. For example, excessive block billing and overly vague time entries "prevent the Court from being able to calculate with any precision the number of hours [an attorney] devoted to a particular task." N.S. v. Comm'r of Soc. Sec., 742 F. Supp. 3d 1338, 1348 (M.D. Ga. 2024) (internal quotation marks and citation omitted). The Court "may consider its own knowledge and experience concerning reasonable and proper fees," and "the decision to prune hours is left to the discretion of the court." Jackson v. Corr. Corp. of Am., No. CV 311-111, 2014 WL 575719, at *2 (S.D. Ga. Feb. 11, 2014).

Fee opponents have an obligation to make "specific and reasonably precise" objections to the hours they wish to exclude. Barnes, 168 F.3d at 428. "[A] fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal." Scelta v. Delicatessen Support Servs., 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (emphasis added) (citing Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir. 1997)). Plaintiffs did not object to any specific hours as were "unreasonable or unnecessary" in this case. Norman, 836 F.2d at 1301. Still, Defendants must meet their burden to document the hours for which they seek fees. Id. at 1302-03; see also Barnes, 168 F.3d at 429 (The Eleventh Circuit's "decisions contemplate a task-by-task examination of the hours billed.").

Thus, the Court reviews the billing entries to determine if any hours should be excluded as excessive, redundant, or unnecessary.

### a. Attorneys' Hours

Upon thorough review of each time entry, the Court finds the following entries are purely clerical or secretarial in nature: (1) December 16, 2021, entry for "picking up" records by attorney Bristol for 0.2 hours, dkt. no. 288-3 at 98, (2) February 3, 2022, entry for "preparation of scheduling calendar" by attorney Lovein for 0.3 hours, dkt. no. 288-4 at 11, (3) February 25, 2022, entry for scheduling telephonic status conference with the Magistrate Judge's chambers by attorney Bristol for 0.1 hours, id. at 20, (4) March 16, 2022, entry for "dropping off" imaging for expert review by attorney Bristol for 0.2 hours, id. at 31, (5) March 22, 2022, entries related to rescheduling a deposition by attorney Bristol for 0.2 hours, id. at 34, (6) April 4, 2022, entries for calling the Magistrate Judge's chambers to schedule telephonic status conference by attorney Bristol for 0.3 hours, id. at 43, (7) April 22, 2022, entry for "[m]aking arrangements" for Plaintiff to get his cellphone by attorney Bristol for 0.1 hours, id. at 20, (8) May 2, 2022, entry for scheduling correspondence related to the summary judgment hearing by attorney Lovein for 0.1 hours, id. at 54, (9) July 13, 2022, entry for scheduling a deposition by attorney Bristol for 0.1 hours, dkt. no. 288-5 at 3, (10) October 21, 2022, entry for scheduling with an expert witness

by attorney Bristol for 0.2 hours, id. at 49, (11) December 5, 2022, entry for deposition coordination with the court reporter by attorney Bristol for 0.2 hours, id. at 76, (12) February 28, 2023, entry for scheduling a deposition by attorney Bristol for 0.2 hours, dkt. no. 288-6 at 16–17, (13) April 21, 2023, entry for emailing exhibits to the court reporter by attorney Bristol for 0.2 hours, id. at 36, (14) September 1, 2023, entry for emailing with the Magistrate Judge's chambers by attorney Bristol for 0.2 hours, dkt. no. 288-7 at 10, (15) September 13, 2023, entry for correspondence with chambers "regarding time allocated for argument" by attorney Lovein for 0.2 hours, id. at 12, (16) October 5, 2023, entry for calling the Magistrate Judge's chambers for a status update by attorney Bristol for 0.2 hours, id. at 19, and (17) November 10, 2023, entry for ordering a copy of transcript by attorney Bristol for 0.2 hours, id. at 28.

The Court finds it appropriate to exclude many of these time entries because calendaring and scheduling are "secretarial" tasks. See, e.g., Milie, 2020 WL 4041118, at *9; B&F Sys., Inc. v. LeBlanc, No. 7:07-CV-192, 2012 WL 2529191, at *10 (M.D. Ga. June 29, 2012) (specifically excluding time for scheduling communications with "the undersigned's chambers"), aff'd, 519 F. App'x 537 (11th Cir. 2013); Marriott v. D&D Tractor & Truck Serv., Inc., No. 6:09-CV-975, 2012 WL 2127731, at *2 (M.D. Fla. May 1, 2012) ("Work related solely to scheduling of mediation and

54

depositions generally is clerical or secretarial time that is not compensable." (alterations adopted) (internal quotation marks and citation omitted)), report and recommendation adopted by 2012 WL 2127724 (June 12, 2012). The other entries involve document or record organization, rather than fact discovery or document review for production. Kennedy, 2021 WL 744160, at *5 ("Such secretarial or clerical tasks clearly include filing or mailing documents [and] organizing files." (citations omitted)).

Also, the Court finds the following entries are overly vague such that the Court cannot reasonably deduce what particular task was completed: (1) February 28, 2023, entry for "trial preparation" by attorney Lovein for 1.0 hour, dkt. no. 288-6 at 17, and (2) September 18, 2023, entry for hearing preparation and attendance by attorney Lovein for 9.5 hours, dkt. no. 288-7 at 16. The latter entry constitutes block billing, and the Court reduces it to 3.5 hours to align with other partners' time. See id. Similarly, the Court finds that the time billed to the client exceeded the time worked on two occasions. Accordingly, attorney Bristol's May 30, 2023, entry is reduced from two hours to 1.6 hours, and his November 8, 2023, entry is reduced from one hour to 0.7 hours. Dkt. Nos. 288-6 at 40, 288-7 at 27.

With these few exclusions, the Court finds the hours expended are reasonable for this case. Defendants' counsel proactively wrote-off inevitably duplicative hours; this indicates proper

billing judgment. <u>See generally</u> Dkt. Nos. 288-2-288-8. In fact, counsel wrote-off or reduced the hours billed to Defendants on at least 427 occasions during the relevant time frame. <u>See</u> <u>id.</u> In addition, counsel eliminated one entry in its submission to the Court, resulting in a reduction of 0.2 hours for attorney Lovein's requested fees. Dkt. No. 288-7 at 13. Thus, the Court finds that 1,065 hours billed by the attorneys are reasonably included in the fee award.

### b. Paralegals' Hours

Upon thorough review of each time entry, the Court finds the following entries relate to secretarial communication or scheduling tasks: (1) December 9, 2021, entry for scheduling correspondence with an expert witness by paralegal Courson for 0.1 hours, dkt. no. 288-3 at 94, (2) December 20, 2021, entry for scheduling telephone conference with a potential fact witness by paralegal Courson for 0.2 hours, <u>id.</u> at 99, (3) December 20, 2021, entry for scheduling correspondence with an expert witness by paralegal Courson for 0.1 hours, <u>id.</u> at 100, (4) December 22, 2021, entry for scheduling telephone conference with a potential fact witness by paralegal Courson for 0.1 hours, <u>id.</u> at 101, (5) January 6, 2022, entry for scheduling correspondence with an expert witness by paralegal Courson for 0.1 hours, dkt. no. 288-4 at 1, (6) January 6, 2022, entry for scheduling correspondence with an expert witness by paralegal Courson for 0.1 hours, <u>id.</u>, (7) January

26, 2022, entry for scheduling telephone conference with a potential fact witness by paralegal Courson for 0.3 hours, id. at 7, (8) March 22, 2022, entry for scheduling correspondence with an expert witness by paralegal Courson for 0.1 hours, id. at 34, (9) December 13, 2022, entry for scheduling communication with Veritext regarding an upcoming deposition for 0.2 hours, dkt. no. 288-5 at 79, (10) March 7, 2023, entry for correspondence with the court reporter for upcoming deposition by paralegal Courson for 0.5 hours, dkt. no. 288-6 at 19, (11) July 13, 2023, correspondence with the court reporter for upcoming deposition by paralegal Courson for 0.2 hours, dkt. no. 288-7 at 2, (12) August 21, 2023, entries for communication sending a Zoom link for a deposition by paralegal Courson for 0.3 hours, id. at 5, and (13) August 23, 2023 correspondence with the court reporter for upcoming deposition by paralegal Courson for 0.2 hours, id. at 7.

The following entries relating to case and document management are clerical in nature: (1) January 19, 2022, entry for Bates numbering documents by paralegal Courson for 0.1 hours, dkt. no. 288-4 at 4, (2) January 20, 2022, entries for preparation to send deposition transcripts and related telephone conference by paralegal Courson for 0.2 hours, id., (3) January 27, 2022, entries for preparation to send deposition transcripts and related telephone conference by paralegal Courson for 1.2 hours, id. at 7–8, (4) January 31, 2022, entry for file sharing correspondence by

paralegal Courson for 0.1 hours, id. at 9, (5) February 2, 2022, entry for Bates numbering documents by paralegal Courson for 0.1 hours, id. at 10, (6) February 21, 2022, entry relating to records invoice by paralegal Courson for 0.1 hours, id. at 19, (7) March 7, 2022, entry for Bates numbering documents by paralegal Courson for 0.2 hours, id. at 24, (8) March 7, 2022, entry for correspondence requesting a password by paralegal Courson for 0.1 hours, id., (9) March 30, 2022, entry for document extraction by paralegal Crews for 0.3 hours, id. at 38, (10) April 4, 2022, entry for indexing records by paralegal Leonard for 0.3 hours, id. at 42, (11) July 13, 2022, entry for Bates numbering documents by paralegal Courson for 0.1 hours, dkt. no. 288-5 at 3, (12) August 12, 2022, entries for telephone conferences with expert witnesses relating to the upload of reports for their review by paralegal Courson for 0.6 hours, id. at 18–19, (13) August 17, 2022, entries for telephone conferences with expert witnesses relating to the upload of reports and scheduling availability by paralegal Courson for 0.6 hours, id. at 21–22, (14) August 22, 2022, entries for telephone conferences with expert witnesses related to the upload of deposition transcripts by paralegal Courson for 1.9 hours, id. at 24–25, (15) August 26, 2022, entries for telephone conferences with an expert witnesses related to the upload of deposition transcripts by paralegal Courson for 0.2 hours, id. at 29, (16) August 30, 2022, entries for telephone conferences with

58

expert witnesses related to the upload of deposition transcripts by paralegal Courson for 0.2 hours, id. at 31, (17) September 12, 2022, entries for telephone conferences with expert witnesses related to the upload of documents and payment by paralegal Courson for 0.6 hours, id. at 34–35, (18) September 21, 2022, entries for telephone conferences with expert witnesses related to the upload of documents by paralegal Courson for 0.7 hours, id. at 37, (19) September 23, 2022, entries for telephone conferences with expert witnesses related to the upload of deposition transcripts and related preparation of those transcripts by paralegal Courson for 1.9 hours, id. at 39, (20) October 20, 2022, entry for telephone conference regarding expert witness payment by paralegal Courson for 0.4, id. at 48, (21) March 22, 2023, entry for extraction of documents by paralegal Leonard for 3.0 hours, dkt. no. 288-6 at 25, (22) May 8, 2023, entries for communication to expert witness related to the upload of videos and related preparation of those videos by paralegal Courson for 2.2 hours, id. at 40–41, and (23) June 8, 2023, entries for communication with expert witnesses related to the upload of deposition transcripts and related preparation of those transcripts by paralegal Courson for 0.4 hours, id. at 47. Finally, the Court finds that the time billed to the client exceeded the time worked on one occasion; paralegal Crews's April 11, 2022 entry will be reduced from three hours to 2.5 hours. Dkt. No. 288-4 at 46–47.

As with the attorneys' hours expended, Defendants' counsel proactively wrote-off inevitably duplicative hours for the paralegals. See generally Dkt. Nos. 288-2–288-8. Specifically, counsel wrote-off or reduced the hours billed to Defendants on 52 occasions during the relevant time frame. See id. In addition, counsel eliminated nine paralegal entries in its requested fee award—which amounts to an additional 2.2 hours written-off. Dkt. No. 288-5 at 42–44. Thus, with the exclusions above, the Court finds that the 179.4 hours billed by paralegals are reasonably included in the fee award.

### (3)  Lodestar Calculation

The Court concludes the hours billed for this case, subject to the reductions discussed supra, reflect "conscionably billed" time and professional billing judgment. Norman, 836 F.2d at 1306. In summary, the Court finds it appropriate to impose an "across-the-board" reduction in the paralegal staff's hourly fee to $85 per hour in the absence of explanation of their rates, such as years of experience or any specialized qualifications. See Bivins, 548 F.3d at 1350 (approving "across-the-board" reduction). The Court does so, in part, to be consistent with courts in this District. E.g., Milie, 2020 WL 4041118, at *6 (reducing hourly rate for seven paralegals where the plaintiffs "fail[ed] to present any evidence as to the respective levels of experience"). Likewise, the Court reduces the junior attorneys' rates to $175 as to not

exceed the more senior partner's discounted average rate on the case. The Court also finds several time entries to relate to non-billable duplicative, clerical, or secretarial tasks and reduces the time billed by 28.4 hours. Based on the resulting calculation, the Court awards Defendants **$217,609.50** in reasonable attorney's fees.[33]

---

[33] The lodestar calculation is as follows:

| | | Reasonable Rate* | Reasonable Hours | Lodestar Calculation |
|---|---|---|---|---|
| **Timekeeper – Attorneys** | | | | |
| N. Daniel Lovein | 2021 | $215.00 | 8.6 | $1,849.00 |
| | 2022-24 | $250.00 | 134.9 | $33,725.00 |
| Steve P. Bristol | 2021 | $200.00 | 93.5 | $18,700.00 |
| | 2022-24 | $180.00 | 787.9 | $141,822.00 |
| William Mann | | $200.00 | 1.5 | $300.00 |
| Matthew Balcer | | $175.00 | 1.1 | $192.50 |
| Ben-Allen Dunn | | $90.00 | 9.3 | $837.00 |
| Mary Matthews | | $175.00 | 4.0 | $700.00 |
| Michael Whitehead | | $175.00 | 24.2 | $4,235.00 |
| **Timekeeper – Paralegals** | | | | |
| Kaytlyn Courson | | $85.00 | 41.7 | $3,544.50 |
| Nina Leonard | | $85.00 | 101.7 | $8,644.50 |
| Desiree Crews | | $85.00 | 34.6 | $2,941.00 |
| Marianne Stanfield | | $85.00 | 1.4 | $119.00 |
| **Total Fee Award**   $217,609.50 | | | | |

*The Court is not aware of what factors may have occasioned the rate changes for attorneys Lovein and Bristol. Nevertheless, the rates for both Mr. Lovein and Mr. Bristol are reasonable.

**(e)  Nontaxable Costs**

Just as a federal court can rely on its inherent power to impose attorney's fees against the losing party after a finding of bad faith, so too may the Court award the cost of nontaxable expenses to the prevailing party. Martins v. Royal Caribbean Cruises, Ltd. (Martins I), 431 F. Supp. 3d 1355, 1364, 1366–67 (S.D. Fla. June 7, 2019). The assessment of nontaxable costs "is undoubtedly within a court's inherent power." Wachovia Bank, 406 F. App'x at 383 (quotations and citations omitted); Landfall 2, Inc. v. Datascore-AI, LLC, No. 22-cv-80801, 2024 WL 693088, at *5 (S.D. Fla. Jan. 30, 2024) ("However, it does appear that nontaxable expenses and costs are available as a sanction in response to bad-faith conduct."), report and recommendation adopted by 2024 WL 691919 (Feb. 20, 2024). Critically, costs awarded as part of a sanction must be "a direct response to the harm that the bad faith conduct caused." Wachovia Bank, 406 F. App'x at 383.

Federal Rule of Civil Procedure 54 provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Defendants have so moved. Dkt. No. 303. "Because they are nontaxable costs, the Court need not determine whether they are specifically authorized by statute." Martins v. Royal Caribbean Cruises, Ltd. ("Martins II"), No. 15-21124-CIV, 2019 WL

13488435, at *7 (S.D. Fla. Sept. 6, 2019). Additionally, Plaintiffs "ha[ve] not challenged any specific nontaxable cost for which [Defendants] seek[] reimbursement." Id. Thus, all that remains is for the Court to "find that the costs" Defendants submitted "were reasonably necessary to defend the claims during the relevant time period,"[34] id., and that the costs were "a direct response to the harm that the bad-faith conduct caused," Wachovia Bank, 406 F. App'x at 383.

Defendants request an award of nontaxable costs in the amount of $131,436.19. Dkt. No. 288 at 3–4. To support this request, Defendants submitted a recap of cost details which identifies costs paid for expert services, professional services, medical record fees, court reporting fees, and overnight shipping fees for FedEx and UPS. Dkt. No. 288-9. Plaintiffs have lodged no specific objections to Defendants' requested award. Dkt. No. 305. Even so, the Court will undertake the duty of reviewing every entry requested.

Defendants contend that $111,171.04 of their nontaxable costs is attributable to expert services or expert witnesses. Dkt. No.

---

[34] As noted supra, Plaintiffs did not inject bad faith into this case until July 15, 2021, when they turned over the fabricated YouCut video in discovery. Thus, Defendants are entitled to nontaxable costs incurred only after that point. Nevertheless, the only itemized expenses identified by Defendants occurred after July 15, 2021, so the Court need not eliminate any costs due to this time limitation. Dkt. No. 288.

288. Defendants request costs for both forensic experts and medical experts utilized in the case. In light of Plaintiffs' fabricated video, the Court finds that the award for costs associated with both parties' forensics experts, Jim Stafford and Mulholland Forensics, were reasonably necessary to the defense and ultimate dismissal of this case and were only incurred because Plaintiffs acted in bad faith. See, e.g., id. at 1, 8, 11–12.

The same cannot be said of Defendants' requested costs for the expert services provided by ENT of North Georgia, Wesley Whatley, M.D., Daniel Winkel, M.D., John Morgan, M.D., Suzette Mikula, M.D., Margaret Dennis, D.M.D., Faar Ajir, M.D., and other medical providers. See, e.g., Dkt. No. 288-9 at 1, 5, 8–9, 11–13. Although these costs may have been reasonably necessary to defend against the underlying medical malpractice allegations in this case, Defendants do not show how these costs are also a "direct response to the harm that the bad faith conduct caused." Wachovia Bank, 406 F. App'x at 383.[35] In this case, the Court's award of attorney's fees and costs is a sanction rooted in the Court's inherent authority. As a result, the amount of fees *and* costs

---

[35] Based on the records received, it is not possible for the Court to determine when the services that underlie these costs were rendered. This differs from records submitted in support of attorney's fees. There, the Court can ascertain the exact date when the services billed were rendered.

awarded must be attributable to the bad faith that Plaintiffs injected into the case. Id.

Defendants also seek to include hotel expenses, e.g., id. at 3, 12, overnight FedEx and UPS expenses, id. at 5–7, "professional services fees," e.g., id. at 5, 7, and surveillance fees, e.g., id. at 2. However, "the records submitted to the Court do not provide sufficient information to determine the reasonableness of these charges." Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc., No. 5:11-CV-221, 2013 WL 3816660, at *6 (M.D. Ga. July 22, 2013). Indeed, neither Defendants' briefs nor timesheet descriptions explain the purpose of these costs and why these expenditures were reasonably necessary to defending the claims in this case. Accordingly, Defendants' request to claim charges for medical experts, hotels, FedEx and UPS, and "professional fees," as nontaxable expenses is **DENIED**. Plumbers & Pipefitters Union, 2013 WL 3816660, at *6.

Defendants' recap of cost details also identifies several deposition expenses and medical record expenses. See generally Dkt. No. 288-9. However, as discussed in Section II.A.ii, these are taxable costs that the Court already awarded to Defendants. Moreover, the recap identifies several costs that are duplicative of expenses the Court already included in its award. Compare Dkt. No. 288-9 at 2 (requesting $1,498.30 for court reporting services) with Dkt. No. 282-2 at 1 (reflecting $1,498.30 in court reporting

services for Plaintiffs' depositions). <u>See also, e.g.</u>, Dkt. Nos. 282-2 at 10 (billing Defendants $353.10 for deposition costs), 288-9 at 7 (reflecting deposition expenses of $353.10), 288-9 at 1 (listing $47.17 expense for Ciox medical record), 282-4 at 2 (identifying $47.17 expense for Ciox medical record), 288-9 at 13 (showing $596.40 expense for Veritext deposition), 282-2 at 6 (reflecting $596.40 expense for Veritext deposition).

The Court **GRANTS with modification** Defendants' request for nontaxable costs. Defendants initially requested $131,436.19 in nontaxable expenses. Based on a review of the records submitted to support this request, the Court finds that Defendants have only demonstrated that $17,300 in costs were reasonably necessary to Defendants' defense of this case and are attributable to Plaintiffs' bad faith conduct. As such, **$17,300** shall be awarded as nontaxable costs.[36]

---

[36] This value is displayed in the following:

| Nontaxable Expense | Amount |
|---|---|
| Mulholland Forensics | $5,000.00 |
| Mulholland Forensics | $2,000.00 |
| Mulholland Forensics | $3,500.00 |
| Eclipse Recording (Jim Stafford) | $3,800.00 |
| Eclipse Recording (Jim Stafford) | $3,000.00 |
| **Total** | **$17,300.00** |

**CONCLUSION**

For the reasons stated above, Plaintiffs' motion for relief from the order of dismissal and judgment, dkt. no. 304, and motion for judicial notice of adjudicative facts of certified medical records, dkt. no. 318, are **DENIED**. Defendants' motions to tax costs against Plaintiffs, dkt. no. 302, and for attorney's fees and other nontaxable costs, dkt. no. 303, are **GRANTED with modification**. Plaintiffs are hereby **ORDERED** to pay Defendants **$217,609.50** in attorney's fees and **$17,300.00** in nontaxable costs, and taxable costs are hereby **TAXED** against Plaintiffs in the amount of **$13,897.69** ($9,280.30 for deposition transcripts, $2,041.00 for deposition videos, $140.00 for the hearing transcript, and $2,436.39 for exemplification and records).

**SO ORDERED**, this 7th day of August, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA