**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

|  |  |  |
|---|---|---|
| CEDRIC AND TAMARA FRAZIER, | | |
| Plaintiffs, | | CIVIL ACTION NO.: 2:21-cv-21 |
| v. | | |
| SOUTHEAST GEORGIA HEALTH SYSTEM, INC.; COOPERATIVE HEALTHCARE SERVICES, INC. d/b/a SOUTHEAST GEORGIA PHYSICIAN ASSOCIATES—Ear, Nose & Throat; and SHERMAN A. STEVENSON, M.D., | | |
| Defendants. | | |

**O R D E R**

The Court **DENIES** Plaintiffs Cedric Frazier (at times, "Mr. Frazier") and Tamara Frazier's "Motion for Disqualification of District Judge Lisa Godbey Wood Pursuant to 28 USC §§ 144 and 455," (doc. 333), which Judge Wood (the presiding judge in the case) transferred to the Undersigned for review and disposition, (doc. 334), as well as Plaintiffs' "Motion for Signed Order by Chief Justice [sic] R. Stan Baker that Judge Wood is No Longer Assigned to Case, Clarification of Judge Wood's Authority to Transfer the Motion Before Disqualifying Herself, and Clarification of the Chief Justice's [sic] Authority for Plenary Review of Motion for Disqualification," (doc. 337).   The Court reviewed the entirety of the record, including the briefs on these motions, (see docs. 339, 341, 343 & 346).   That review did not reveal any plausible claim that Judge Wood is biased or prejudiced against Plaintiffs.   Rather, Plaintiffs' request for

disqualification appears to stem from their dissatisfaction with the outcome of their case and not any legitimate claims against the objective process that led to that outcome.

**BACKGROUND**

**I.      Procedural History Through and Including Appeal**

This is a medical malpractice case arising out of Mr. Frazier's septoplasty performed by Defendant Dr. Sherman Stevenson.  Mr. Frazier and his wife (collectively, "Plaintiffs") brought claims against Dr. Stevenson, as well as Southeast Georgia Health System, Inc. ("SGHS"), and Cooperative Healthcare Services, Inc. ("CHS"), for negligence, negligence per se, and loss of consortium.  (See doc. 1.)  Since the filing of the case in this Court in 2021, it has been assigned to Judge Lisa Godbey Wood.  In December 2021, the Court granted Plaintiffs leave to amend their Complaint to add new claims of administrative negligence, gross negligence, fabricated and altered medical records, fraud and constructive fraud, violations of the federal Health Insurance Portability and Accountability Act ("HIPAA") and Georgia state law involving the failure to provide Mr. Frazier with his complete medical records (O.C.G.A. § 31-33-2), and punitive damages.  (Doc. 76, p. 1.)  This amended complaint also indicated that Mr. Frazier had made a video recording of one of his post-operative visits with Dr. Stevenson and that this recording supported Plaintiffs' claims. (See id. at pp. 9, 23.)

In March 2023, Defendants filed a Motion for Dismissal Sanctions, claiming that the video clip was fraudulent.  (Doc. 184.)  The Magistrate Judge held an evidentiary hearing on the motion and issued a lengthy report and recommendation, finding that the video was indeed fraudulent and recommending the sanction of dismissal with prejudice.  (See doc. 268 (Magistrate Judge's forty-

six-page Report and Recommendation).)  In her own fifty-six-page Order, Judge Wood conducted a *de novo* review and ultimately adopted the recommendation of dismissal.  (Doc. 280.)

Plaintiffs appealed the dismissal, and a three-judge panel of the Eleventh Circuit Court of Appeals unanimously affirmed the Court's decision to dismiss Plaintiffs' suit as a sanction.  See Frazier v. Se. Ga Health Sys., Inc., et al., No. 24-10976 (11th Cir.) (doc. 27-1).  The Eleventh Circuit found that "the magistrate judge and [Judge Wood] [had] comprehensively set out the relevant facts and conducted a thorough analysis" in their written rulings finding that Plaintiffs had fabricated evidence and that the lawsuit should therefore be dismissed.  (Doc. 299, p. 2 (copy of appellate opinion docketed in this case).)  The appellate court also held that "the evidence was clear" and it "amply support[ed] the district court's finding that the video was not created where and when the Fraziers testified it was made or showed what it purported to show."  (Id. at p. 5.)

On April 21, 2025, the Supreme Court of the United States denied Plaintiffs' petition for a writ of certiorari.  (Doc. 323.)

## II.     Plaintiffs' Allegations that Defendants Falsified Mr. Frazier's Medical Records

When Plaintiffs amended their Complaint in December 2021, the new claims they added were premised on their belief that Defendants had fabricated and backdated medical records dated February 6, 2020, and February 25, 2020, relating to Mr. Frazier's post-operative office visits and post-operative treatment.  (See doc. 77.)  Defendants filed a Motion for Partial Summary Judgment, seeking dismissal of, *inter alia*, these claims related to the alleged medical record fabrication and backdating.  (Doc. 182.)   On August 31, 2023, the Court entered an Order addressing the motion and dismissing those claims with prejudice.  (See doc. 238.)  On September 14, 2023—four days before the previously-scheduled hearing on Defendants' Motion for

Sanctions—Plaintiffs filed a "Motion for Relief from and Clarification of the Order [Dismissing the Medical Record-Related Claims]." (Doc. 245.)  The following day, Plaintiffs filed an amended version of that motion.  (Doc. 246.)  These motions were still pending when the Magistrate Judge issued his Report and Recommendation on Defendants' Motion for Sanctions, (doc. 268), and when Judge Wood entered her dismissal Order, (doc. 280).  The dismissal Order directed the Clerk to terminate all pending motions and to close the case.  (Id. at p. 56.)  Accordingly, Plaintiffs' Motion and Amended Motion "for Relief from and Clarification of the Order [Dismissing the Medical Record-Related Claims]" were terminated.  Plaintiffs thereafter filed their appeal (described above).

## III.    Post-Appeal Activity

Following the Eleventh Circuit's affirmance of the dismissal, Defendants filed motions (with this Court) to tax costs against Plaintiffs and for attorneys' fees and other nontaxable costs. (Docs. 302 & 303.)  Plaintiffs filed responses in opposition to those motions but also began filing various other motions of their own, including a motion under Federal Rule of Civil Procedure 60(b) for relief from the Court's dismissal and judgment, (doc. 304), and a "Motion for Judicial Notice of Adjudicative Facts of Certified Medical Records Produced by the Defendants, Including 1/21/2020 Failed Sponge Count and Operative Report, Admittedly False and Backdated 2/6/2020 Record, FMLA/METLIFE Forms Dated 2/5/2020, 2/20/2020 and 2/25/2020 and Memorandum of Law in Support, and Notice of Filing of Documents Proving Admitted Felonies and Modification of Records by Defendants During the Pendency of this Litigation," (hereinafter the "motion for judicial notice of adjudicative facts").  (Doc. 318.)  In an August 7, 2025, omnibus Order, Judge Wood thoroughly reviewed, analyzed and rejected Plaintiffs' Motion for Reconsideration of the

Judgment, (see doc. 324, pp. 6–15), and granted, with some modifications, Defendant's motions for attorneys' fees, taxable costs, and nontaxable costs, (id. at pp. 16–66.)  In light of the denial of the motion for relief from the dismissal and judgment, the Court denied the motion for judicial notice of adjudicative facts as moot.  (Id. at p. 15.)

Plaintiffs then filed a Motion for Reconsideration of that August 7, 2025, omnibus Order, (doc. 325), and, a few weeks later, they filed a "Motion for Stay of Court's Ruling on Reconsideration 59(e) Denying Rule 60(b) Relief until after Findings Issued by Georgia Composite Medical Board in Late 2025," (doc. 328).  Those motions remain pending because, one month later, Plaintiffs filed the at-issue "Motion for Disqualification of District Judge Lisa Godbey Wood Pursuant to 28 USC §§ 144 and 455," (doc. 333), which has been transferred to the Undersigned for review and disposition, (doc. 334).  In response to the Motion for Disqualification, Judge Wood entered an Order stating that, "[w]hile the undersigned may be entitled to rule on the motion, in order to promote the utmost confidence in the Court and all its decisions, the undersigned refers the motion to the Chief Judge of the District, for plenary consideration of the motion."  (Id. at p. 1.)  She also stated that, "[i]n making this referral, the undersigned in no way expresses a conclusion about whether any of the allegations are accurate or sufficient, no[r] does the referral express a conclusion that the motion is timely or made in good faith."  (Id. at pp. 1–2.)

Plaintiffs then filed a "Motion for Signed Order by Chief Justice [sic] R. Stan Baker that Judge Wood is No Longer Assigned to Case, Clarification of Judge Wood's Authority to Transfer the Motion Before Disqualifying Herself, and Clarification of the Chief Justice's [sic] Authority for Plenary Review of Motion for Disqualification" (hereinafter, the "Motion for Clarification").  (Doc. 337.)  In the Motion for Clarification, Plaintiffs assert that "Judge Wood, as the trial judge,

5

must determine whether the facts alleged are legally sufficient to mandate disqualification" and they thus question the legality and efficacy of her Order transferring the case to the undersigned. (Id. at p. 1.)  Plaintiffs dedicate most of their brief, however, to re-arguing their claimed grounds for disqualification of Judge Wood.  (See generally id.)  Defendants have responded to both the Motion for Disqualification and the Motion for Clarification.  (Docs. 339 & 341.)  Plaintiffs have filed replies.  (Docs. 343 & 346.)

**STANDARDS OF REVIEW**

Plaintiffs explicitly bring their Motion for Disqualification pursuant to 28 USC §§ 144 and 455.  (Doc. 333.)  While these Sections are similar in some aspects, there are important distinctions.

Under Section 144,

> [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C.A. § 144.  Section 144 further requires that the affidavit "state the facts and the reasons for the belief that bias or prejudice exists" and that it "be accompanied by a certificate of counsel of record stating it is made in good faith."  Id.

Turning to Section 455, while a portion of Section 455 overlaps somewhat with Section 144, Section 455 also contains additional grounds for disqualification.  See generally 28 U.S.C. § 455.  Similarly to Section 144, under subsection (a) of Section 455, a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and, under subsection (b)(1) of Section 455, disqualification is required in circumstances where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary

facts concerning the proceeding." Subsections (b)(2) through (5) of Section 455 require disqualification in certain, more specific circumstances. The specific sub-subsections within Subsection (b)(5) that Plaintiffs claim are relevant here provide that a judge is disqualified where:

> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> > (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
> >
> > . . .
> >
> > (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
> >
> > (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Id. § 455(b)(5)(i, iii–iv).

## DISCUSSION

### I.        Motion for Clarification

In their Motion for Clarification, Plaintiffs question the Undersigned's authority to rule on their Motion for Disqualification of Judge Wood, and they claim clarification is necessary regarding the extent to which the matter has been transferred to the Undersigned. (See doc. 337.)

First, as to the request for "clarification," as the transferring Order made clear, Judge Wood only transferred to the Undersigned the limited task of reviewing and disposing of the Motion for Disqualification. (Doc. 334.) Upon the entry of the present Order—which finds, for the reasons explained in the sections below, that there are no grounds for Judge Wood's disqualification—the matter will be transferred back to Judge Wood for disposition of the other pending motions in the case.

Plaintiffs also seek "clarification" of the Undersigned's authority to rule on the Motion for Disqualification, claiming that Judge Wood was required to rule on the Motion for Disqualification herself.  (Doc. 337.)  Plaintiffs seek disqualification based on Section 144 and, alternatively, Section 455.  (See doc. 333.)  Section 144 explicitly permits the transfer of a disqualification motion to a judge other than the challenged (presiding) judge.  28 U.S.C. § 144.  Section 455, however, does not explicitly permit the transfer of a disqualification motion and, as a result, some courts have held that a motion to disqualify a district judge under that section must be decided by the very judge whose disqualification is sought.  See, e.g., Cohee v. McDade, 472 F. Supp. 2d 1082, 1084 (S.D. Ill. 2006); Schurz Communs. v. FCC, 982 F.2d 1057, 1059 (7th Cir. 1992) (Posner, J.); Doe v. United States, No. 24-CV-2460-KKM-NHA, 2025 WL 2083419, at *1 n.1 (M.D. Fla. Mar. 4, 2025); Harpo v. Intermark Mgmt. Corp., No. 1:21-CV-87, 2023 WL 5949435, at *1 (S.D. Ga. Aug. 28, 2023).  A bevy of other courts, however, have held that nothing in Section 455 precludes a judge from transferring a motion to disqualify so that it may be decided by another judge.  See, e.g., United States v. Craig, 853 F. Supp. 1413, 1414–15 (S.D. Fla. 1994) ("Section 455 is silent concerning procedure.  It does not bar transfer of a recusal motion for determination by another judge.  In fact, courts have acknowledged that the challenged judge may either opt to refer the matter to another judge for decision or rule on it himself.") (citing Levitt v. Univ. of Texas, 847 F.2d 221, 226 (5th Cir.), cert. denied, 488 U.S. 984 (1988); United States v. Heldt, 668 F.2d 1238, 1271 (D.C. Cir. 1981), cert. denied sub nom. Hubbard v. United States, 456 U.S. 926 (1982)); Guthrie v. Wells Fargo Home Mortgage NA, No. 1:13-CV-4226-RWS, 2015 WL 1401660, at *3 (N.D. Ga. Mar. 26, 2015) (motions to recuse under Section 455 "may be referred to a judicial colleague for review"); Sabatier v. Suntrust Bank, No. 06-20418-CIV, 2009 WL

2430892, at *1 (S.D. Fla. Aug. 7, 2009) (motions to recuse, even those brought pursuant to Section 455, may be referred to the chief judge of the district); In re Sanders, 540 B.R. 911, 916 (Bankr. S.D. Fla. 2015) ("A judge faced with a recusal motion could, in the judge's discretion, leave the motion to a different judge to decide.").

There is no binding authority prohibiting a judge in the Southern District of Georgia from referring (or "transferring") a motion for disqualification under Section 455 to another judge.[1] Much less, Plaintiffs have not cited, and the Court is not aware of, any authority that prevents such referral when the moving party invokes *both* Section 455 *and* Section 144—as Plaintiffs have done here.  In referring the Motion for Disqualification to the Undersigned, Judge Wood acknowledged that the motion had been brought pursuant to both Section 144 and Section 455, and she stated that the referral was being made "to promote the utmost confidence in the Court and all its decisions." (See doc. 334, p. 1.)  Such an abundance of caution is not unreasonable given that Plaintiffs have asserted that Judge Wood has exhibited pervasive bias and given that they claim they have taken such actions as "fil[ing] a complaint with the Eleventh U.S. [sic] Circuit Court of Appeals' Judicial Council on October 31, 2025," (doc. 337, pp. 2–3).  Plaintiffs have previously complained (in their appellate brief) that Judge Wood has lacked impartiality in this case.  (Doc. 311-1, p. 42 (suggesting to Eleventh Circuit panel that Judge Wood's failure to address the allegedly falsified

---

[1] In In re Evergreen Sec., Ltd., 570 F.3d 1257, 1278 (11th Cir. 2009), a three-judge panel of the Eleventh Circuit Court of Appeals addressed the issue of whether a judge committed error by *not* transferring a motion for his recusal pursuant to Section 455 to another judge (and instead deciding it himself).  In finding that it was not error for the judge to decide the motion himself, the Court of Appeals panel stated that "Section 455(a) places the burden to decide recusal on the judge who is the subject of the Motion," and noted that "judges routinely preside over motions for their own recusal." Id.  The panel did not, however, address whether it is error for a judge to transfer a motion to recuse to the chief judge of the district, particularly where that transfer is made in the interest of curtailing ongoing complaints that the judge's decisions are being influenced by partiality or bias.

medical record in the dismissal Order showed lack of "appearance of impartiality and justice").)

Referring the Motion for Disqualification curtails Plaintiffs' ability to once again argue—if Judge Wood denied the Motion for Disqualification—that her decision was invalid because it was tainted by the bias forming the basis of their Motion.  Finally, Plaintiffs will suffer no prejudice from the Undersigned ruling on the Motion because, regardless of whether the Undersigned would have the authority to disqualify Judge Wood under Section 455, the Undersigned finds (as explained below) that the facts do *not* warrant recusal or disqualification.[2]

In light of the foregoing, and in light of the determinations and rulings made in this Order, the Court **DENIES** Plaintiffs' Motion for Clarification.  (Doc. 337.)

## II.     Motion for Disqualification

### A.     Plaintiffs' Alleged Grounds for Disqualification

Plaintiffs present three grounds for disqualification: (1) Judge Wood's brother and sister-in-law are affiliated with one of the Defendants; (2) some of Judge Wood's former law clerks have gone on to work for the firm representing Defendants; and (3) the way Judge Wood has handled the case demonstrates a personal bias against Plaintiffs and a "deep-seated favoritism towards the [D]efendants."  (Doc. 333, pp. 2–3.)

As to the first ground, according to Plaintiffs, Judge Wood's brother, Dr. Godbey, is the Chief of Pathology for Southeast Georgia Health System.  (Doc. 333-1, p. 2.)  Plaintiffs speculate that the pathology department *could* have been involved in this case—if something had been removed from Mr. Frazier's nasal cavity and then sent to the pathology department for analysis

---

[2] Additionally, should Plaintiffs seek to have Judge Wood rule on their arguments, they can re-raise the Section 455 aspect of their motion before her Honor after receiving this Order.

and a report.  But there is no evidence that any such pathology report was ever requested, much less made, regarding Mr. Frazier's at-issue surgery or post-operative care.  (See id. at p. 4–5; see also doc. 181-14, pp. 168–70, 185–97 (surgeon's deposition testimony denying that anything was removed from Mr. Frazier's nasal cavity that was (or should or would have been) sent to the pathology department).)  Plaintiffs also assert that, because Judge Wood's brother once served on a hospital peer review committee with Defendant Dr. Stevenson, "[i]t is impossible to know the extent of information shared with the Judge, including facts Dr. Stevenson might have shared with Dr. Godbey, private communications Dr. Godbey may have had with his sister, Judge Wood, or if his role at the hospital gave Judge Godbey Wood some personal knowledge of disputed facts that were not in evidence." (Docs. 333-1, p. 5.)  Plaintiffs also claim that Judge Wood's sister-in-law serves as secretary of the board of directors for the Southeast Georgia Health System Foundation, which is not a party to this case and which, Plaintiffs admit, is a "separate entity [from Defendant SGHS] that raises awareness and support for [Defendant SGHS]." (Id. at p. 2.)

Plaintiffs' second ground for disqualification is that some of Judge Wood's former law clerks and/or interns have gone on to work for the law firm representing the Defendants in this case. (See id. at p. 8.)  Plaintiffs provide press releases in support, which the Court has reviewed, and which indicate the following.  First, one of Judge Wood's former law clerks was hired by the law firm sometime prior to October 21, 2020 (according to a press release published on that date). (Doc. 333-3, p. 1.)  Second, another associate attorney at the firm, who was hired by the law firm sometime prior to January 6, 2021, was apparently a former "judicial intern" (at some unspecified time) for Judge Wood. (See id. at p. 3.)  Lastly, at some point prior to November 18, 2021, the law firm's Atlanta office (which does not appear to be involved in this case) hired an attorney who

previously had worked as an "intern" (at some unspecified time) for Judge Wood.  (Id. at pp. 5, 9.) For reference, this action was filed on February 25, 2021.  (See doc. 1.)  There is no evidence that any of these attorneys have ever worked on this case while employed by the law firm (or, for that matter, while serving as a clerk or intern to Judge Wood).

Finally, Plaintiffs' most heavily relied-upon ground for disqualification is their claim that the way Judge Wood has handled the case demonstrates a personal bias against them and a "deep-seated favoritism towards the [D]efendants." (Doc. 333, p. 2.)  They rely most specifically on two statements made by Judge Wood in a July 22, 2022, Order denying Defendants' Motion for Summary Judgment, (doc. 131).  Therein, in addressing Defendants' argument that "Mr. Frazier, like Defendants, was actually a Georgia resident at the time he filed the complaint—which would defeat diversity jurisdiction," Judge Wood made the following statements that are now relied upon by Plaintiffs:

- "Noting that voting in a state where one is not a citizen is voter fraud, Defendants argue that Mr. Frazier's vote establishes, at least as of November 3, 2020, that he still considered himself a Georgia citizen.  Typically, voting in Georgia would be a powerful indicator that Frazier was a Georgia domiciliary as of that date—***since he would presumably deny that he committed a felony***." (Id. at p. 11 (internal record citations omitted) (emphasis added to specific statement relied upon by Plaintiffs).)

- [In response to Defendants' argument that Mr. Frazier's statements about his domicile were self-serving and thus subject to judicial scrutiny, the Court noted:] "Mr. Frazier's arguments are not self-serving in important ways.  First, Mr. Frazier's statements might serve him well in this lawsuit, but they might prove to be non-self-serving overall, as

***his statements may indicate that he violated both voting and tax laws***.” (Id. at p. 13 (emphasis added to specific statement relied upon by Plaintiffs).)

In the Motion for Disqualification, Plaintiffs theorize that these statements were made by Judge Wood in order to “provide [herself] with leverage to portray [them] as fraudsters” later in the case. (Doc. 333-1, p. 9.) Plaintiffs also take the opportunity to point out that, despite making this “smear” about them, Judge Wood “refuse[d] to investigate and acknowledge how Dr. Stevenson [and others affiliated with the Defendants] may have committed a felony when they may have violated criminal healthcare laws” in the way they handled medical records related to this case. (Id. at p. 10 (adding that “[t]his is a smear against me, but this Court refuses to smear the defendants”).) Indeed, most of Plaintiffs’ arguments on this third ground for disqualification focus on how Judge Wood “ignored” the evidence they had previously presented about the alleged falsification of medical records and instead dismissed the entire case upon finding that Plaintiffs had fabricated critical video footage. (See id. at pp. 10–17.) They also claim that “the Court” frequently contradicted itself and showed favoritism toward Defendants, but almost all the quoted material that Plaintiffs rely on for that claim comes from Orders that were drafted and signed by the Magistrate Judge, not by Judge Wood. (See doc. 333-1, pp. 13–14 (quoting docs. 58, 224 & 268); see also doc. 333, p. 10 (quoting doc. 222).)

**B.      Disqualification is not Required under Section 144**

Plaintiffs appear to have satisfied the certificate of good faith requirement under Section 144. The Court assumes without deciding that Plaintiffs’ affidavit was timely filed.[3]   Even

---

[3]  The Court has reservations regarding whether the affidavit was actually timely filed. “[C]ourts in the Eleventh Circuit require parties to act with due diligence in filing such an affidavit under [Section] 144.” Middlebrooks v. City of Macon-Bibb Cnty., No. 5:23-CV-00083-TES, 2024 WL 555884, at *6 (M.D. Ga.

assuming, however, that the affidavit was timely filed, for the reasons explained below, the allegations contained within the affidavit are not legally sufficient to warrant Judge Wood's disqualification.

To be entitled to disqualification of the presiding judge pursuant to Section 144, a party must show that the presiding judge "has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.  As recently explained by an Eleventh Circuit Court of Appeals panel,

> [d]isqualification [under Section 144] is only required when the alleged bias is personal in nature, that is, stemming from an extra-judicial source.  Loranger v. Stierheim, 10 F.3d 776, 780 (11th Cir. 1994).  Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  Liteky v. United States, 510 U.S. 540, 555 (1994).  Likewise, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Id.

In re DeBose, No. 25-12205, 2025 WL 3714595, at *1 (11th Cir. Nov. 7, 2025).  As a general matter, disqualification is not required when the challenged conduct consists of "judicial rulings,

---

Feb. 12, 2024), aff'd, No. 24-10705, 2025 WL 753377 (11th Cir. Mar. 10, 2025) ("When it comes to disqualification of a judge under § 144, its timeliness provision requires a party to raise her hand 'promptly'—'at the earliest possible moment after learning facts giving rise to a belief of a demonstration of bias or prejudice indicating disqualification.'") (quoting United States v. Cerrella, 529 F. Supp. 1373, 1377 (S.D. Fla. Jan. 21, 1982)).  Here, Plaintiffs' primary argument for recusal is that the Court's prior rulings in this case (and its statements in those rulings) exhibited pervasive bias against them.  Yet almost all the rulings they point to as evidence were issued years ago and, following those rulings, Plaintiffs continued to litigate without moving for disqualification.  (See doc. 58 (Order entered 9/22/21); doc. 131 (Order entered 7/22/22); doc. 222 (Order entered 6/21/23); doc. 224 (Order entered 6/22/23); and doc. 268 (Report and Recommendation entered 11/8/23).)  Indeed, after the Eleventh Circuit affirmed the dismissal Order and remanded the case, Plaintiffs continued to seek relief from the Court and did not claim that Judge Wood's disqualification was necessary until after receiving post-judgment rulings they deemed dissatisfactory.  (See docs. 304 & 318.)  Moreover, based on Plaintiffs' own allegations and evidence, defense counsel's firm hired (and announced the hiring of) Judge Wood's former clerks and interns years ago and, similarly, there is no indication that Judge Wood's relatives' associations with Defendant SGHS are recent developments (nor that they have not been publicly known).

14

routine trial administration efforts, and ordinary admonishments[.]"   Liteky, 510 U.S. at 556. Adverse judicial rulings most often form the "proper grounds for appeal, not for recusal."   Id. at 555.

The Undersigned has thoroughly reviewed the rulings (including the relevant statements within those rulings) put at issue by Plaintiffs as well as various other written rulings in the case, (see, e.g., docs. 58, 131, 222, 224, 238, 268, 280 & 324), and has not observed any "deep-seated favoritism or antagonism" that might provide grounds for recusal pursuant to Section 144.  See Liteky, 510 U.S. at 555.  Indeed, many of the complained-of rulings were not made by Judge Wood.  Moreover, judicial rulings, by their very nature, can be judgmental.  Requiring a judge to recuse anytime that she makes a ruling adverse to a party would be nonsensical.

The only Order by Judge Wood that Plaintiffs claim shows antagonism against them and which involves something other than the dismissal sanction is the July 22, 2022, Order denying Defendants' Motion for Summary Judgment, (doc. 131), which has been described in Discussion Section II.A, supra.  Fundamentally, it is illogical for Plaintiffs to argue that Judge Wood's bias against them can be demonstrated by a ruling where she ruled in favor of Plaintiffs.  Moreover, the at-issue statements were made by Judge Wood as she was addressing conflicting evidence regarding Mr. Frazier's domicile (specifically, evidence concerning the state in which he had voted, the state in which he had paid taxes, and the state in which he claimed he was a citizen).  In analyzing that conflicting evidence, Judge Wood explicitly stated that she *presumed* that Mr. Frazier would *deny* that he had committed voter fraud (by voting in a state where he was not a citizen) but she also commented that—because some of the evidence conflicted with Mr. Frazier's claims about his citizenship—his statements were not necessarily self-serving because they could

15

indicate that he *may* have committed voter or tax fraud.  Judge Wood did not, however, state any belief of her own that Mr. Frazier was a liar, a felon, or otherwise a criminal.  And Plaintiffs have not pointed to any time in any later ruling where Judge Wood ever referred to or relied on these earlier comments (i.e., to say that Mr. Frazier is not to be believed because he appears to be a liar, or a felon, or a criminal).

The Supreme Court has remarked that "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards [a party]. . . But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."  Liteky, 510 U.S. at 550–51.  Here, Judge Wood's comments were completely related to the task in front of her—sorting through and weighing the conflicting evidence presented to her regarding Mr. Frazier's citizenship and making an ultimate determination in light of that evidence.  None of her comments indicated she was at all "ill disposed toward" Plaintiffs, but even if they could be so characterized, they would not warrant disqualification as the opinions and determinations she made were necessary to the completion of the task of determining Mr. Frazier's citizenship.  Additionally, Plaintiffs' arguments ignore the fact that Judge Wood made these statements when ruling in favor of Plaintiffs and denying Defendants' Motion for Summary Judgment.

Any claim that Judge Wood has a personal bias or prejudice in favor of Defendants because of her brother and sister-in-law's professional association and philanthropic association (respectively) with SGHS also falls flat.  "A judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation."  In re Moody, 755 F.3d

16

891, 895 (11th Cir. 2014) (quotation omitted). Plaintiffs have offered nothing but speculative and attenuated conspiracy theories about how Judge Wood *may* have been given some sort of inside information or otherwise been influenced by her family members. This is insufficient to merit her disqualification from the case (particularly considering the case has been dismissed, the dismissal has been unanimously affirmed on appeal, and the case has remained closed).

Likewise, the mere fact that Judge Wood has employed law clerks and judicial interns who went on to work for defense counsel's firm does not in any way indicate that she has a personal bias or prejudice in favor of the firm's clients. Plaintiffs do not even attempt to claim that any of Judge Wood's former staff members have ever worked on this case (or, for that matter, that any of them have ever worked on *any* case involving any of the Defendants).

Considering the foregoing, the Undersigned finds that Plaintiffs' affidavit is legally insufficient. Accordingly, disqualification by Judge Wood is not appropriate pursuant to 28 U.S.C. § 144.

### C.    Disqualification is not Required under Section 455

As with the affidavit filed in support of disqualification under Section 144, the Court again assumes, without deciding, that Plaintiffs' Motion to Disqualify was timely brought for purposes of Section 455.[4]

---

[4] "A motion to disqualify a [judge] under § 455(a) must be timely." United States v. Slay, 714 F.2d 1093, 1094 (11th Cir. 1983) ("Slay's counsel was aware prior to the hearing on the motion to suppress of the facts which he now contends support a § 455(a) motion. Slay's disqualification argument is therefore untimely and need not be considered by this Court on appeal.") For all the same reasons discussed with regard to Section 144 in footnote 3, supra, the Court has reservations regarding the timeliness of Plaintiffs' arguments for disqualification under Section 455.

17

### 1.  Subsection (a)

Pursuant to Section 455(a), disqualification of a judge is required "in any proceeding in which [the judge's] impartiality might reasonably be questioned."  28 U.S. C. § 455(a).  The same general standards that apply to motions pursuant to Section 144 also apply for motions pursuant to Section 455(a).  See In re DeBose, 2025 WL 3714595, at *1.  Accordingly, disqualification is not required when the challenged conduct consists of "judicial rulings, routine trial administration efforts, and ordinary admonishments[.]"  Liteky, 510 U.S. at 556.  Disqualification decisions under Section 455(a) are "extremely fact driven and must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."  In re Moody, 755 F.3d at 895 (quotation marks omitted).  The standard of review for a Section 455(a) motion "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988).  "Bias sufficient to disqualify a judge under [S]ection 455(a) . . . must stem from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties."  United States v. Bailey, 175 F.3d 966, 968 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Klayman v. City Pages, 650 F. App'x 744, 748 (11th Cir. 2016) ("If instead, the alleged bias arises from the judge's remarks or opinions during the course of judicial proceedings (and not from extrajudicial sources), the party moving for disqualification must clear a much higher hurdle.").

Plaintiffs claim that the facts here are so extreme that they trigger the exception to the "extrajudicial source" requirement; that is, they claim Judge Wood has demonstrated "such

18

pervasive bias and prejudice" during this case that she must be disqualified.  The Undersigned has thoroughly reviewed the rulings (including the relevant statements within those rulings) put at issue by Plaintiffs as well as various other written rulings in the case (for context and a full understanding of the history of the case), (see, e.g., docs. 58, 222, 224, 238, 268, 280 & 324).  That review did not uncover any appearance of partiality, much less partiality that would require disqualification pursuant to Section 455(a).  See Liteky, 510 U.S. at 555.  Additionally, most of the rulings that Plaintiffs rely on are found in Orders and Reports and Recommendation written by the Magistrate Judge, not Judge Wood.  (See docs. 58, 222, 224 & 268.)

Plaintiffs rely heavily on the general fact that the Court found they had committed fraud on the Court and dismissed their case without investigating their theory that one or more of the Defendants had also committed fraud.  Importantly, however, Judge Wood did not dismiss this case *sua sponte* or without due process.  Defendants filed a motion concerning the video that specifically sought the sanction of dismissal.  (Doc. 184.) The Magistrate Judge scheduled a hearing on that motion, gave the parties notice and time to prepare, and then allowed the parties to be heard during a thorough hearing.  (See docs. 232, 239, 247.)  At that time, Plaintiffs had not filed their own motion for sanctions regarding their own separate theory of fraud.  In her Adoption Order, Judge Wood spent ample time reviewing the Magistrate Judge's Report and Recommendation, Plaintiffs' objections thereto, and much of the record.  When Plaintiffs appealed the dismissal to the Eleventh Circuit, they challenged the fact that the Court dismissed the case without addressing their own fraud-related theory.  As explained above, the Eleventh Circuit affirmed the dismissal and found that "the evidence was clear" and "amply support[ed]" Judge Wood's ruling.  (Doc. 299, p. 2.)  It strains credulity for Plaintiffs to argue that Judge Wood's

19

decision demonstrates "such pervasive bias and prejudice" that she should be disqualified when the Eleventh Circuit has affirmed and endorsed that very decision. See Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1996) ("[U]nless there are exceptional circumstances, judicial rulings are grounds for appeal, not disqualification.").

Plaintiffs have attempted to paint a picture of a judge who has had it out against them and has antagonized them through multiple unfair and biased rulings. A review of the record reveals that, in truth, Plaintiffs are complaining about well-reasoned and thorough decisions that are a consequence of Plaintiffs' own making. Faced with Defendants' pending Motion for Sanctions of Dismissal, they chose not to file their own similar motion regarding the evidence (concerning the medical records) that they now claim the Court ignored due to some bias against them. They also have chosen to file an excessive number of motions for reconsideration as to virtually every ruling against them, and these motions continue to raise the same complaints of unfair treatment that have already been repeatedly rejected—not only by this Court but also by the Eleventh Circuit.[5] The circumstances here do not demonstrate grounds for Judge Wood's disqualification pursuant to Section 455(a).

### 2. Subsection (b)(1)

Somewhat similarly to subsection (a), subsection (b)(1) of Section 455 requires the disqualification of a presiding judge "[w]here he has a personal bias or prejudice concerning a

---

[5] The only Order by Judge Wood that Plaintiffs claim shows antagonism against them and which involves something other than the dismissal sanction is the July 22, 2022, Order denying Defendants' Motion for Summary Judgment, (doc. 131). The Court discussed the statements in that Order in Discussion Section II.A and II.B, supra. As laid out above, those statements, made in a ruling *in favor of Plaintiffs*, evidence nothing other than a jurist objectively assessing the evidence before her.

party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

While Plaintiffs do not clearly state which of their grounds for disqualification they claim satisfy this subsection, it seems that their concerns about Judge Wood's former clerks and interns would be most relevant here. It is incredibly common—if not expected—for judges of all kinds throughout the country to provide opportunities for law students and lawyers to work in their chambers, with the understanding that those individuals will likely go on to work at a law firm, perhaps even a local one that handles cases assigned to the individual's former boss. See Federal Judicial Center, *Judicial Disqualification: An Analysis of Federal Law*, p. 33 (3rd ed., August 17, 2020) (available at https://www.fjc.gov/content/348974/judicial-disqualification-analysis-federal-law-third-edition (last visited Feb. 13, 2026)) ("It is common knowledge in the profession that former law clerks practice regularly before judges for whom they once clerked."). If a judge was disqualified from a case simply because a party in that case is represented by a firm where a former intern or law clerk is employed, our judicial system would be at risk of grinding to a halt. According to the Eleventh Circuit, in this situation, "an ethical danger exists only if the law clerk knows the judge's thoughts about a specific matter and the law clerk subsequently represents one of the parties to the matter before the judge." Brown v. Brock, 169 F. App'x 579, 583 (11th Cir. 2006) (rejecting argument that having a former law clerk practice before a judge jeopardizes the perception that the judge is impartial).

Here, there is no indication that any of the specified attorneys know or even could somehow know Judge Wood's thoughts about this case. There is no evidence that any of the attorneys worked in Judge Wood's chambers at or after the time this case was filed, in February 2021.

21

Plaintiffs have not even shown that any of the attorneys who previously worked in Judge Wood's chambers have worked as counsel for any of the Defendants here, much less appeared in (or worked on) this case as counsel for Defendant. Accordingly, this theory relating to former interns and law clerks does not trigger the disqualification requirements set forth in Section 455(b)(1) (or, for that matter, in subsection (a) of Section 455). See, e.g., Crawford v. Marriott Hotel Servs., Inc., No. 1:19-CV-02687-CAP, 2020 WL 13594983, at *5 (N.D. Ga. Oct. 28, 2020), aff'd sub nom. Crawford v. Marriott Int'l, Inc., No. 21-11647, 2021 WL 5054442 (11th Cir. Nov. 1, 2021) ("For the plaintiff's motion to recuse or disqualify to succeed on this basis, there must be evidence to show that Mr. Neely worked on this case in both his capacity as a law clerk and as counsel for a party. The plaintiff does not even allege such facts—and would be unable to do so.").

Plaintiffs do not cite any specific section or subsection for their speculative claim that Judge Wood should be disqualified because her relatives may have told her things they know about this case because of their affiliations with SGHS. It seems to be brought under Section 455(b)(1)'s requirement for disqualification where a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." However, these theories are nothing more than baseless double suppositions—first, that the relatives obtained any knowledge about the disputed evidentiary facts of this case and, second, that they then disclosed any such facts to Judge Wood. Accordingly, the Court rejects this theory as a ground for disqualifying Judge Wood. See In re Moody, 755 F.3d at 895 ("A judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation.") (quotation omitted).

### 3. Subsection (b)(5)

Finally, Plaintiffs claim Judge Wood's disqualification is required pursuant to subsection (b)(5) of Section 455, which requires disqualification of a presiding judge where:

> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
>> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
>>
>> . . .
>>
>> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>>
>> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(b)(5)(i, iii–iv).

Plaintiffs have not shown that Judge Wood's brother or sister-in-law qualify as "a party to the proceeding, or an officer, director or trustee of a party," 28 U.S.C. § 455(b)(5)(i). As to Judge Wood's brother, Plaintiffs have shown, at most, that he is the chair of a medical department within Defendant SGHS, but they have not shown that this qualifies him as an officer, a member of its board of directors, or a member of its board of trustees (if it has one), as those titles have specific meanings. See, e.g., O.C.G.A. § 14-2-801, et seq. (discussing the requirements for and functions of boards of directors); O.C.G.A. § 14-2-840(a) ("A corporation has the officers described in its bylaws or appointed by the board of directors in accordance with the bylaws."); O.C.G.A. § 14-2-864(a)(1) ("'Officer' means a person who is not a director and who is holding an office described in the bylaws of the corporation or appointed by the board of directors in accordance with the bylaws of the corporation."). Indeed, as Defendants point out, the SGHS Website lists the names of SGHS's "Executive Team" (including, e.g., the "President & CEO," the "Chief Medical

Officer," and the "Chief Information Officer") and Judge Wood's brother is not listed as having a role on that Executive Team.  See https://www.sghs.org/about-us/leadership/executive-team/ (last visited Feb. 13, 2026).  Thus, Plaintiffs have shown nothing more than that Judge Wood's brother is the senior or lead *physician* in a medical department within the hospital.

As to Judge Wood's sister-in-law, Plaintiffs' own allegations and supporting documentation directly refutes their claim that she falls within Section 455(b)(5)(i).  Plaintiffs provide an organizational chart that shows that Southeast Georgia Health Foundation (the "Foundation") is a distinct nonprofit entity that is merely "affiliated" with SGHS.  (Doc. 333-2, p. 2.)  As such, Judge Wood's sister-in-law's position as secretary of the Foundation board does not qualify her as "a party to the proceeding, or an officer, director or trustee of a party," 28 U.S.C. § 455(b)(5)(i).

Finally, there is no indication that either Dr. Godbey or his wife were (or are) "likely to be a material witness in the proceeding," 28 U.S.C. § 455(b)(5)(iv), much less that Judge Wood had knowledge of any such likelihood (even if it existed).  Despite years of litigation, Plaintiffs have not pointed to any discovery or other information that in any way connects Judge Wood's brother or sister-in-law to facts underlying their claims.  For example, Plaintiffs have not pointed to any pleading, motion, or briefing that was presented to Judge Wood that would have indicated to her that her brother or the pathology department was at all connected to this case, or that her sister-in-law, by helping fundraise for the hospital, may somehow have testimony relevant to this case.  Similarly, there is no indication that Dr. Godbey or his wife "could be substantially affected by the outcome of the proceeding," id. at § 455(b)(5)(iii), (much less that Judge Wood knew of any such interest, as required by the subsection).  Even Plaintiffs themselves admit that a favorable outcome

to the Defendants would, at most, only "*indirectly* advantage" Judge Wood's family.  (Doc. 333, p. 4 (emphasis added).)  Plaintiffs fail to explain exactly how they would be advantaged, much less how they would be "substantially affected," as is required under Section 455(b)(5)(iv).

<strong>CONCLUSION</strong>

In light of the all the foregoing, Plaintiffs have failed to demonstrate that Judge Wood's disqualification is required pursuant to 28 U.S.C. § 144 or 28 U.S.C. § 455.  Accordingly, Plaintiffs' "Motion for Disqualification of District Judge Lisa Godbey Wood Pursuant to 28 USC §§ 144 and 455," (doc. 333), is **DENIED**.  Additionally, Plaintiffs' "Motion for Signed Order by Chief Justice [sic] R. Stan Baker that Judge Wood is No Longer Assigned to Case, Clarification of Judge Wood's Authority to Transfer the Motion Before Disqualifying Herself, and Clarification of the Chief Justice's [sic] Authority for Plenary Review of Motion for Disqualification," (doc. 337), is **DENIED as moot**.  Judge Lisa Godbey Wood remains the presiding judge in this case and there are no remaining issues for consideration or determination by the Undersigned.  The Court **DIRECTS** the Clerk of Court to make all necessary updates and revisions to the docket to reflect that this case remains assigned to Judge Wood.

**SO ORDERED**, this 13th day of February, 2026.

_____

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA